LATHAM & WATKINS LLP
GARY S. FEINERMAN (admitted *pro hac vice*)
KATHRYN K. GEORGE (admitted *pro hac vice*)
ROBERT C. COLLINS III (admitted *pro hac vice*)
330 N. Wabash Ave., Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
gary.feinerman@lw.com
katie.george@lw.com

GIBSON, DUNN & CRUTCHER LLP
CHRISTOPHER CHORBA, SBN 216692
DIANA FEINSTEIN, SBN 302626
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:    (213) 229-7396
Facsimile:    (213) 229-6396
cchorba@gibsondunn.com
dfeinstein@gibsondunn.com

LAUREN R. GOLDMAN (admitted *pro hac vice*)
MICHAEL BRANDON (admitted *pro hac vice*)
200 Park Avenue, New York, NY 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035
lgoldman@gibsondunn.com
mbrandon@gibsondunn.com

*Attorneys for Defendant Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| NATALIE DELGADO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:23-cv-04181-SI<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO DISQUALIFY EXPERT RITA SINGH**<br><br>Action Filed:  August 16, 2023<br>Trial Date:  None Set<br>Judge Susan Illston |

Gibson, Dunn &
Crutcher LLP

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendant Meta Platforms, Inc. ("Meta") hereby respectfully moves this Court for an Order (1) disqualifying Plaintiff's expert, Dr. Rita Singh, and (2) prohibiting Plaintiff and her counsel from relying on Dr. Singh's work product.

As set forth in the accompanying Memorandum of Points and Authorities herein, Dr. Singh previously entered into a confidential relationship with Meta during which Meta's outside counsel disclosed confidential attorney work product relevant to the current litigation. Accordingly, Meta moves this Court to disqualify Dr. Singh as an expert witness for Plaintiff and prohibit Plaintiff from relying on any work product that Dr. Singh has created in this case.

Pursuant to guidance from the Court concerning the ongoing government shutdown, Meta understands that the Court will take the motion under submission absent notice to the contrary and thus has not noticed a motion hearing date.

Dated: November 7, 2025

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Diana M. Feinstein*
    Diana M. Feinstein

LATHAM & WATKINS LLP

By: */s/ Gary S. Feinerman*
    Gary S. Feinerman

*Attorneys for Meta Platforms, Inc.*

Gibson, Dunn &
Crutcher LLP

-1-

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

In Spring 2024, approximately 18 months ago, Meta's counsel contacted Dr. Rita Singh about the possibility of retaining her as Meta's testifying expert in this case.  Dr. Singh expressed interest, confirmed that she had no conflicts of interest or prior involvement in the case, and participated in a retention interview with Meta's counsel.  During that discussion–which Meta's counsel reasonably believed was confidential—Meta's counsel disclosed attorney work product, including counsel's assessment of key allegations and details about Meta's anticipated litigation strategy, potential defenses, assessment of each side's strengths and vulnerabilities, and expert strategies.  Dr. Singh then proceeded to review the pleadings and other documents provided by Meta's counsel with reference to the theories and strategic considerations discussed during the retention interview, which Meta's counsel would not have shared had there been any suggestion that Dr. Singh may ultimately have a conflict or be retained by Plaintiff's counsel.  Meta and Dr. Singh then had further discussions via email over approximately three months, all clearly contemplating that  Dr. Singh may be hired to testify for Meta in this litigation.  Based on Dr. Singh's input during those discussions and subsequent email correspondence about the case, Meta ultimately decided in May 2024 to formally retain her and authorized its counsel to finalize the engagement.  In June 2024, Meta's counsel was preparing to send a formal retention letter when Dr. Singh identified a last-minute potential conflict with a different, pending BIPA case in which she had already been retained as a testifying expert.

Two weeks ago, Meta learned for the first time that notwithstanding her prior confidential, substantive discussions with Meta, Plaintiff has retained Dr. Singh as a testifying expert in this case.  Meta immediately raised this conflict with Plaintiff's counsel, who has refused to confirm whether he made conflicts inquiries or was otherwise aware of Dr. Singh's prior substantive discussions with Meta's counsel about this litigation.  Plaintiff's counsel has also refused to provide any information whatsoever about when and how Plaintiff came to engage Dr. Singh.

This District's case law provides that a party's expert witness should be disqualified where (1) the expert had a confidential relationship with the party's adversary, regardless of whether that relationship ultimately led to a formal engagement, and (2) the adversary shared with the expert

confidential information relevant to the subject litigation. Dr. Singh's relationship with Meta was indisputably confidential and discussions had advanced to the point where Meta had made the decision to engage her and was preparing to do so as of the time Dr. Singh identified the issue arising from her work in a different case that precluded her from serving as Meta's expert in this case. Dr. Singh's discussions with Meta give rise to a conflict that requires her disqualification as Plaintiff's expert in this litigation.

In short, having received attorney work product from Meta's counsel, Dr. Singh was not at liberty to essentially switch sides and join Plaintiff's team. On these indisputable facts, disqualification is necessary to protect the fairness and integrity of the adversarial process.

## II.    FACTUAL BACKGROUND

This case concerns allegations that Meta "captured," "collected," "received," or "otherwise obtained" Plaintiff's "voiceprints and related biometric information" in violation of Illinois's Biometric Information Privacy Act ("BIPA"). Compl. ¶¶ 178-179. The merits of Plaintiff's claims turn primarily on a core disputed issue, namely, whether the voice recordings Meta has received via Facebook and Messenger are "capable of being used to identify" Plaintiff. ECF No. 78 at 6-7. Meta contends that it does not have the ability to identify Plaintiff based on the voice recordings she uploaded through Facebook and/or Messenger. ECF No. 94 at 3-5. Plaintiff contends otherwise. ECF No. 78 at 7. The Court has recognized that this is a "fundamental issue" that the parties must address, ECF No. 80 at 3-4, and Meta has been preparing to file an early summary judgment motion addressing this threshold issue, ECF No. 94 at 3-4; ECF No. 101.

Given the importance of this issue, Meta began searching for potential experts more than 18 months ago. In March 2024, Meta's outside counsel contacted Dr. Singh to explore the possibility of retaining her as a testifying expert for Meta in this case. Feinstein Decl. ¶¶ 3-4. Dr. Singh is a professional who works at a major university and has been retained as a testifying expert in multiple other cases. Dr. Singh expressed interest in the engagement and scheduled a call with Meta's counsel the next day. *Id.* ¶¶ 6-7 & Ex. 2. During that call, Meta's counsel first confirmed that Dr. Singh had no prior involvement in this case, had not been contacted by Plaintiff's counsel, and had no conflicts of interest that would prevent her from testifying on Meta's behalf. Feinstein Decl. ¶¶ 8-9. Meta's

Gibson, Dunn &
Crutcher LLP

MOTION TO DISQUALIFY R. SINGH
CASE NO. 3:23-CV-04181-SI

counsel then conducted a retention interview that covered—among other topics—the specific allegations in this case, information Meta's counsel uncovered during its fact investigation, details about Meta's anticipated litigation strategy, defense arguments, and attorney mental impressions as to the strengths and weaknesses in each side's factual and legal theories. *Id.* ¶¶ 10-12. Dr. Singh asked (and Meta's counsel answered) several questions regarding technologies potentially implicated by Plaintiff's allegations, and they discussed the ways in which the relevant facts could be brought to bear on Meta's expert case. *Id.*

Meta's counsel followed up after the call to provide Dr. Singh with a copy of the pleadings and certain ancillary materials that she had requested. Feinstein Decl. ¶¶ 13, 16 & Ex. 3 at 8. Dr. Singh reviewed the materials, advised that she was comfortable proceeding with the engagement, and briefly described the initial steps she would take to dive more deeply into the facts if formally retained. Feinstein Decl. ¶ 14 & Ex. 3 at 7-8. Meta's counsel advised Dr. Singh that she was a top candidate among the potential experts Meta was exploring, asked that she await Meta's further follow-up, and remained in touch for several weeks as it completed additional diligence. Ex. 3 at 6-7.

In late May 2024, Meta decided to proceed with engaging Dr. Singh as its testifying technical expert in this case. Feinstein Decl. ¶ 17. Meta's counsel scheduled a call for June 11, 2024 to introduce Dr. Singh to Meta's in-house attorneys as a final step before formalizing the engagement with a retention letter. Feinstein Decl. ¶¶ 18-19 & Ex. 3 at 3-7. Dr. Singh and Meta's counsel then participated in a June 10 pre-call to align on next steps and ensure that she was prepared for the client discussion. Feinstein Decl. ¶¶ 20-21. During that pre-call, Meta's counsel once again reviewed its case strategy with Dr. Singh—reiterating the information discussed during the initial retention interview and subsequent correspondence-—to ensure that nothing had changed in Dr. Singh's understanding since their prior discussions. *Id.* The next day, mere hours before the final call with Meta's in-house attorneys, Dr. Singh informed Meta's counsel that she was involved in a different pending BIPA case in which she would need to review source code from a purported competitor of Meta's, and that she believed she may be disqualified from that matter if retained to testify for Meta in this case. *Id.* ¶¶ 23-24 & Ex. 3 at 1. Meta's counsel understood from that communication that Dr. Singh could not serve

Gibson, Dunn &
Crutcher LLP

3

as Meta's expert in this case and so pursued (and ultimately retained) a different expert.  Feinstein Decl. ¶ 25.

On October 23, 2025 Plaintiff served its technical expert report in this case, authored by Dr. Singh. *Id.* ¶¶ 26-27.  That report went to the core issue the parties are disputing—which Meta discussed with Dr. Singh—and covered multiple issues that she inquired about during her conversation with Meta's counsel. *Id.* ¶¶ 9-12.  Neither Dr. Singh nor Plaintiff's counsel contacted Meta at any point to acknowledge Dr. Singh's prior discussions with Meta's counsel in this case or to otherwise address the obvious conflict of interest.  *Id.* ¶¶ 26-27.

Meta's counsel promptly contacted Plaintiff's counsel to determine when Plaintiff's counsel and Dr. Singh first communicated about this case, when Plaintiff's counsel retained Dr. Singh, whether Plaintiff's counsel had asked if she was familiar with this litigation upon that initial outreach (including based on prior discussions with Meta's counsel), and what steps Plaintiff's counsel took to ensure that she did not divulge any protected work product or other confidential information she received from Meta's counsel during their discussions in early 2024.  *Id.* ¶¶ 28, 32 & Ex. 4 at 7-8.  Plaintiff's counsel has repeatedly refused to provide answers to any of these basic questions.  Ex. 4 at 2, 4, 6.  Meta accordingly has been left with no reasonable alternative except to seek her disqualification as an expert in this case.

### III.    LEGAL STANDARD

The Court has "the inherent power to disqualify expert witnesses to protect the integrity of the adversary process, protect privileges that otherwise may be breached, and promote public confidence in the legal system." *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004) (citing *Campbell Ind. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980)).  In considering whether to disqualify an expert that has begun developing a relationship with an adversary, the Court considers whether "(1) the adversary had a confidential relationship with the expert and (2) the adversary disclosed confidential information to the expert that is relevant to the current litigation." *Kane v. Chobani, Inc.*, 2013 WL 3991107, at *5 (N.D. Cal. Aug. 2, 2013) (quoting *Hewlett-Packard*, 330 F. Supp. 2d at 1092).  The existence or non-existence of a formal retention agreement is not dispositive— the focus "is not on whether the expert was retained per se[,] but whether there was a relationship that

would permit the litigant reasonably to expect that any communications would be maintained in confidence." *Staley v. Gilead Scis., Inc.*, 2022 WL 3013120, at *2 (N.D. Cal. July 29, 2022) (quoting *Hewlett-Packard*, 330 F. Supp. 2d at 1093); *see also Veazey v. Hubbard*, 2008 WL 5188847, at *5 (D. Haw. Dec. 11, 2008) ("The party seeking disqualification need not show that it actually retained the expert."). Where these two factors are satisfied, disqualification is warranted so long as the relief "would be fair to the affected party and would promote the integrity of the legal process." *Chobani*, 2013 WL 3991107, at *5 (citation omitted).

## IV.    ARGUMENT

Plaintiff's counsel has retained a testifying expert, Dr. Singh, who previously engaged with Meta at length about serving as Meta's expert on the technical issues at the heart of this case. Dr. Singh's prior conversations with Meta included discussions about the parties' respective theories, Meta's investigation of the underlying facts, and Meta's defense strategies—all of which Meta shared with Dr. Singh on the understanding that she was not working with Plaintiff's counsel, would not work with Plaintiff's counsel, and would otherwise maintain the information as confidential. These facts demonstrate that disqualification is not only appropriate, but necessary and consistent with well-settled case law in which courts have routinely disqualified experts who received confidential information from the retaining party's adversary. *See Chobani*, 2013 WL 3991107, at *6 (disqualifying party's expert who engaged in confidential discussions with party's adversary in related case); *Cooper v. Quora, Inc.*, 2020 WL 7408231, at *3 (N.D. Cal. July 15, 2020) (disqualifying conflicted expert and prohibiting counsel from relying on expert's work); *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 2022 WL 393208, at *4-6 (N.D. Cal. Feb. 9, 2022) (similar); *M&T Bank v. Worldwide Supply LLC*, 2022 WL 16743689, at *5 (D.N.J. June 28, 2022) (disqualifying expert despite insistence that she did not recall adversary's confidential information); *Calendar Rsch. LLC v. StubHub, Inc.*, 2017 WL 10378337, at *5 (C.D. Cal. Sept. 22, 2017) (similar).

### A.    Meta Reasonably Believed Its Relationship With Dr. Singh Was Confidential.

The "confidential relationship" prong of the two-part disqualification test is satisfied here. The relevant inquiry is whether "it was reasonable for [Meta] to believe that a confidential relationship existed, and, if so, whether the relationship developed into a matter sufficiently substantial to make

disqualification or some other judicial remedy appropriate." *Chobani*, 2013 WL 3991107, at \*5. The existence of a formal retention or confidentiality agreement is not necessary, *Staley*, 2022 WL 3013120, at \*2; *Hewlett-Packard*, 330 F. Supp. 2d at 1096 (confirming that "a party may have a reasonable expectation that a confidential relationship exists even absent a formal agreement"), and courts regularly find that a confidential relationship exists between a party and a prospective expert based simply on the fact that litigation strategy was discussed. *See, e.g.*, *Cooper*, 2020 WL 7408231, at \*2 (concluding it was "apparent that a confidential relationship existed" given counsel's "discussion of litigation strategy" in a single substantive conversation with expert later retained by the other side); *see also AstraZeneca Pharms., LP v. Teva Pharms. USA, Inc.*, 2007 WL 4292384, at \*2 (D.N.J. Dec. 4, 2007) ("The 'objectively reasonable belief' standard is not a high hurdle to clear.").

Meta's extensive discussions with Dr. Singh gave rise to a confidential relationship. Those conversations went well beyond mere introductions and surface-level discussions concerning publicly available information. Feinstein Decl. ¶¶ 9-12. They explored the core theories, defenses, and sensitivities on which Meta has focused in this case and had progressed to the point where Meta had decided to formally engage Dr. Singh—which Meta of course would not have done had it not so thoroughly vetted its core theories and defense arguments with her. *Id.* ¶¶ 9-15 & Ex. 3. Meta's counsel reasonably understood that the information it shared with Dr. Singh would be maintained as confidential, particularly given that she is an experienced expert who is not new to litigation and confirmed at the outset of discussions that she was not conflicted. Feinstein Decl. ¶¶ 10-11. Meta's counsel would never have shared this information with Dr. Singh if they thought she would share it with Plaintiff's counsel in this case. *Id.* These basic facts confirm that "it was reasonable … to believe that a confidential relationship existed" and that the relationship had "developed" to a "substantial" degree, such that disqualification is appropriate. *Chobani*, 2013 WL 3991107, at \*5; *accord, e.g.*, *Cooper*, 2020 WL 7408231, at \*2 (disqualifying expert based on single sufficiently substantive call with adversary's counsel); *M&T Bank*, 2022 WL 16743689, at \*4 (disqualifying expert and finding objectively reasonable expectation of confidential relationship where counsel attested to discussing sensitive, confidential matters, including defendants' theory of the case and "counsel's own perceptions").

Gibson, Dunn & Crutcher LLP

6

## B.    Meta Shared Confidential Information With Dr. Singh.

The indisputable facts likewise satisfy the "confidential information" prong of the two-part disqualification test.  For purposes of that inquiry, confidential information is "information of either particular significance or that which can be readily identified as either attorney work product or within the scope of the attorney-client privilege, including discussions of a party's strategy in the litigation, a party's view of the strengths and weaknesses of each side, and the role of each of a party's experts to be hired and anticipate[d] defenses."  *Chobani*, 2013 WL 3991107, at *5 (cleaned up).  Courts consistently find disqualification appropriate where confidential information disclosed by an adversary is "relevant to the current litigation."  *Id.* at *6; *see also Cooper*, 2020 WL 7408231, at *2; *In re Xyrem*, 2022 WL 393208, at *5 (disclosure of relevant confidential information warranted disqualification regardless of whether the expert plans to use or can even purportedly remember such information).

That is precisely what has happened here.  In conversations with Dr. Singh, Meta's counsel discussed Meta's assessment of which particular allegations in this case were key and Meta's strategy for responding to them, as well as Meta's fact investigation takeaways and anticipated defenses.  Feinstein Decl. ¶¶ 10-12, 20-21.  "Such information concerning litigation strategy and anticipated defenses falls squarely within the realm of disclosed confidential information that requires expert disqualification."  *Chobani*, 2013 WL 3991107, at *6.  While the discussions focused in part on the pleadings and publicly available materials, as well as facts that Meta eventually disclosed in discovery, *see* Ex. 3 at 8, they extended well beyond non-sensitive factual information—they delved into the materials through the lens of Meta's defense strategy, with reference to expert theories that Meta has considered pursuing to rebut key allegations that Plaintiff has advanced in this case.  Feinstein Decl. ¶¶ 10-12, 20-21.  There can be no reasonable dispute that the sensitive and highly confidential information shared with Dr. Singh supports the relief Meta has requested here.  *See Chobani*, 2013 WL 3991107, at *6; *Cooper*, 2020 WL 7408231, at *2; *Aventis Pharms SA v. Amphastar Pharms., Inc.*, 2005 WL 5957795, at *2 (C.D. Cal. Mar. 25, 2005) (overruling objections to order disqualifying expert to whom other side had shared sensitive information, notwithstanding that certain information was arguably discoverable).

Plaintiff's counsel has suggested that any confidential information Meta's counsel reasonably

Gibson, Dunn & Crutcher LLP

7

disclosed to Dr. Singh should not disqualify her unless Meta can identify *specific* portions of her report that can be traced directly back to Meta's attorney work product. Ex. 4 at 4. But the law is clear that an expert who previously received a party's confidential information is subject to disqualification *regardless* of whether it can be shown that the expert actually misused the information at issue. *See In re Xyrem*, 2022 WL 393208, at *5 ("[T]he relevant legal standard concerns the fact of prior disclosure, not whether the expert can be expected to keep confidential previously disclosed information."); *Lifewatch Serv. Inc. v. Braemer Inc.*, 2010 WL 3909483, at *2 (N.D. Ill. Sept. 28, 2010) (confirming that affected party "*need not demonstrate that [the expert] actually leaked* confidential information in his possession," but rather "*need only demonstrate that he has* such information" (emphases added)).

That rule makes sense because where (as here) an expert working for an adversary has received a party's confidential information, the affected party cannot know how, where, and to what extent the conflict may have tainted or otherwise influenced the adversary's approach to the case. Here, regardless of whether Meta's work product is directly reflected in specific excerpts of Dr. Singh's report, Meta can have no assurance that the information it relayed to Dr. Singh has not otherwise been brought to bear on the report writ large or Plaintiff's other efforts to prosecute this case—including, for example, with respect to Plaintiff's discovery strategy, technical theories, and lines of questions in depositions. The law provides for disqualification as a "prophylactic" remedy where the two-part test is satisfied in contemplation of cases presenting these very facts, *see Chobani*, 2013 WL 3991107, at *15, regardless of whether discrete, identifiable parts of the record have visibly and expressly been infected by the conflict, *Braemer Inc.*, 2010 WL 3909483, at *2.

**C.** **Fundamental Fairness Considerations Support Disqualification.**

Public policy and fairness considerations further confirm that disqualification is warranted. Although those factors are not dispositive, courts assessing expert disqualification requests typically consider "whether the opposing party [who retained the expert] will be unduly burdened, especially at late stages in the litigation," as well as "other policy concerns" such as incentives to prospective experts and litigants. *Chobani*, 2013 WL 3991107, at *7. Each of these considerations supports Meta.

***Prejudice to Plaintiff.*** The prospective burdens on Plaintiff are not substantial at this stage of the litigation, and in all events are not undue or prejudicial. Assuming Plaintiff's counsel engaged

Gibson, Dunn &
Crutcher LLP

8

Dr. Singh after March 2024—that is, assuming Dr. Singh was truthful in her initial conflict screening discussion with Meta's counsel—Plaintiff's counsel either knew or as a matter of professional responsibility should have known that Dr. Singh had previously engaged in substance with Meta about serving as Meta's testifying expert in this case. *See In re Xyrem*, 2022 WL 393208, at *5 (finding minimal prejudice or burden to counsel that had been "aware of th[e] possible conflict at the time they sought out and retained" experts who were ultimately disqualified). Plaintiff's counsel either chose not to conduct basic conflict check inquiries, or was aware of the conflict and did nothing to alert Meta to the issue before retaining Dr. Singh and serving her expert report. *See Chobani*, 2013 WL 3991107, at *14 (emphasizing that counsel was "on notice" of expert's potential conflict based on expert's discussions with opposing counsel, and thus should have approached opposing counsel or sought clarification from court in advance). Upon learning of Dr. Singh's engagement as Plaintiff's expert when Plaintiff served her report, Meta immediately took action to investigate the conflict—including by reaching out to Plaintiff's counsel just two business days later—and could not reasonably have identified this issue or sought relief earlier, given that neither Dr. Singh nor Plaintiff's counsel provided any prior notice of her engagement.

Moreover, this case is not in the final stages of litigation. The parties are preparing for early summary judgment on narrow grounds that Meta intends to present to the Court. ECF No. 102. Briefing on that motion does not begin until early 2026, *see id.*, and to the extent Plaintiff requires an extension to obtain a report by a substitute expert, Meta is willing to work with Plaintiff's counsel to agree on accommodations that will minimize any delays to the overall case schedule. The Court has not yet set a deadline for the completion of all fact and expert discovery, so Plaintiff has significant time for any substitute expert report on affirmative issues that Plaintiff may wish to develop. On balance, these burdens are not sufficient to overcome the compelling reasons supporting Dr. Singh's disqualification. *See In re Xyrem*, 2022 WL 393208, at *5 (fact "[t]hat an expert will need to start from scratch in their review of the case" was "not a significant prejudice" to party that had retained conflicted expert); *Chobani*, 2013 WL 3991107, at *7 (no undue burden where alternative experts may be available).

***Policy considerations.*** Public policy likewise supports disqualification on the facts of this case.

Gibson, Dunn &
Crutcher LLP

9

Meta's discussions with Dr. Singh were not mere introductory conversations—they were detailed, substantive, and so advanced that Meta had approved the engagement and was in the process of preparing to send a formal retention letter just before she identified the conflict with her other case. Feinstein Decl. ¶¶ 17-18, 20-23. Disqualifying an expert whose candidacy has advanced that far will not enable parties to "lock up" potential experts through non-substantive discussions to preempt opposing counsel from using those experts. *See Chobani*, 2013 WL 3991107, at *7. It will instead properly incentivize parties to vet their experts for potential conflicts and ensure that those experts cannot "sell their opinions to the opposing parties or the highest bidder without concern about potential confidentiality of their previous consultations," which is what Dr. Singh appears to have done here. *Id.* (citation and internal quotation marks omitted); *see also In re Xyrem*, 2022 WL 393208, at *6 (balancing similar policy considerations supporting same conclusion).

## V.   CONCLUSION

Meta respectfully requests that the Court disqualify Dr. Singh from serving as Plaintiff's expert and prohibit Plaintiff's counsel from relying on her work product.

Dated: November 7, 2025                    Respectfully sumitted,


                                           GIBSON, DUNN & CRUTCHER LLP

                                           By:   */s/ Diana M. Feinstein*
                                                 Diana M. Feinstein

                                           LATHAM & WATKINS LLP

                                           By:   */s/ Gary S. Feinerman*
                                                 Gary S. Feinerman

                                           *Attorneys for Meta Platforms, Inc.*