LATHAM & WATKINS LLP
GARY S. FEINERMAN (admitted pro hac vice)
KATHRYN K. GEORGE (admitted pro hac vice)
ROBERT C. COLLINS III (admitted pro hac vice)
330 N. Wabash Ave., Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
gary.feinerman@lw.com
katie.george@lw.com

GIBSON, DUNN & CRUTCHER LLP
CHRISTOPHER CHORBA, SBN 216692
DIANA FEINSTEIN, SBN 302626
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:    (213) 229-7396
Facsimile:    (213) 229-6396
cchorba@gibsondunn.com
dfeinstein@gibsondunn.com

LAUREN R. GOLDMAN (admitted *pro hac vice*)
MICHAEL BRANDON (admitted *pro hac vice*)
200 Park Avenue, New York, NY 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035
lgoldman@gibsondunn.com
mbrandon@gibsondunn.com

*Attorneys for Defendant Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| NATALIE DELGADO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:23-cv-04181-SI<br><br>**DECLARATION OF DIANA M. FEINSTEIN IN SUPPORT OF META PLATFORMS, INC.'S MOTION TO DISQUALIFY EXPERT RITA SINGH**<br><br>Action Filed:  August 16, 2023<br>Trial Date:  None Set<br>Judge Susan Illston |

I, Diana M. Feinstein, hereby declare as follows:

1.      I am an attorney licensed to practice in the States of California and New York.  I am a partner at the law firm Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), counsel of record for Defendant Meta Platforms, Inc. ("Meta") in this action, which arises under the Illinois Biometric Information Privacy Act ("BIPA").  I have personal knowledge of the facts stated below and, if called as a witness, I could and would testify competently thereto.  I submit this declaration in support of Meta's Motion to Disqualify Expert Rita Singh (the "Motion").

2.      Because the communications with Meta and the experts Meta has considered retaining in this litigation are confidential and protected by the attorney-client privilege and work product doctrine, and because I have no intention of waiving and affirmatively declare I am not waiving any such protections, I have identified the communications by subject matter only.  *Kane v. Chobani, Inc.*, 2013 WL 3991107, at *10 n.5 (N.D. Cal. Aug. 2, 2013) (confirming that party moving for expert disqualification based on disclosure of confidential work product "is not required to disclose the actual information contended to be confidential" (citation and internal quotation marks omitted)).

3.      Meta, through its counsel at Gibson Dunn, began reaching out to potential technical experts in connection with this litigation in or around March 2024.

4.      On March 20, 2024, Gibson Dunn contacted Dr. Rita Singh of Carnegie Mellon University to discuss the possibility of retaining her as an expert for Meta in this litigation.

5.      A true and correct copy of Gibson Dunn's March 20, 2024 email is attached hereto as **Exhibit 1**.

6.      Later that day, Dr. Singh responded to Gibson Dunn's email, expressing interest in the engagement and suggesting a call the following day.

7.      A true and correct copy of Dr. Singh's March 20, 2024 response to Gibson Dunn's email is attached hereto as **Exhibit 2.**

8.      On March 21, 2024, Gibson Dunn and Dr. Singh participated in a videoconference via Zoom.  I personally participated in that videoconference as one of Meta's attorneys.

9.      At the outset of that videoconference, in order to confirm the absence of a conflict that could implicate Meta's confidences, I asked whether Dr. Singh had previously been involved in this

Gibson, Dunn &
Crutcher LLP

-1-

FEINSTEIN DECL. ISO MOT. TO DISQUALIFY R. SINGH
CASE NO. 3:23-CV-04181-SI

case; whether she had been contacted by Plaintiff's counsel in any capacity; and whether she had any other potential conflicts of interest that would prevent her from providing an opinion in this case. Dr. Singh confirmed that she had not been involved in this case or contacted by Plaintiff's counsel, and she advised that she believed she had no conflicts of interest.

10.     Given Dr. Singh's confirmation that she had no prior involvement in the case or contact with Plaintiff's counsel or other conflicts, I used the remainder of our videoconference to conduct a retention interview to assess Dr. Singh's fit as a potential expert for Meta in this case. During that interview, I gathered information about Dr. Singh's credentials and testifying experience, among other topics. I then shared with her certain information relevant to Meta's assessment of the case. That information included Gibson Dunn's assessment of key allegations in Plaintiff's complaint, findings uncovered during Gibson Dunn's fact investigation into Meta's internal practices, anticipated arguments that Plaintiff might make and Meta's potential defense arguments, strategies for explaining Meta's contentions and relevant facts in terms that would be understandable to the factfinder, and Gibson Dunn's mental impressions as to the strengths and weaknesses of Meta's and Plaintiff's respective cases.

11.     In discussing Dr. Singh's credentials and testifying experience, which included her service as an expert or consultant on several prior and/or active litigation matters, I reasonably expected that Dr. Singh understood the confidential nature of our discussions concerning this case and reasonably believed there was no risk of disclosure of Gibson Dunn and Meta's work product to opposing counsel. Had I believed there was any risk that Dr. Singh was conflicted or might not maintain the information as confidential, I would not have proceeded with the interview and certainly would not have shared the information we discussed during the interview.

12.     During the retention interview, Dr. Singh asked certain questions about potential Meta voice-related technologies that could be implicated by Plaintiff's claims. I answered with the facts as Gibson Dunn understood them based on our privileged investigation in this case, and I also shared Gibson Dunn's assessment of the relevance of these technologies. I discussed with Dr. Singh the ways in which the facts I disclosed could be used to develop Meta's expert theories in this case. I also discussed with her the expert arguments that Meta anticipated developing to rebut not only Plaintiff's

allegations, but also some of the theories Meta anticipated Plaintiff might develop and advance in this case.

13. After the videoconference concluded, Gibson Dunn provided Dr. Singh by email with a copy of the pleadings and a patent referenced therein, both of which were discussed with reference to Meta's theories and strategic considerations during the retention interview.

14. Dr. Singh responded to Gibson Dunn's follow-up email that day confirming that she had reviewed the materials. She advised that she was "ok with this engagement" and described the initial fact development steps that she would seek to take if and when formally retained as Meta's expert in this case.

15. Based on these discussions, Gibson Dunn advised Dr. Singh on April 22, 2024, that Meta was strongly considering retaining her and asked for additional time to complete Meta's expert diligence.

16. A true and correct copy of an email thread reflecting Gibson Dunn's written correspondence with Dr. Singh between March 21, 2024 and June 11, 2024 (including the correspondence referenced in Paragraphs 13-15) is attached hereto as **Exhibit 3.**

17. Gibson Dunn ultimately recommended that Meta retain Dr. Singh as its testifying expert in this litigation, and on May 30, 2024, Meta's in-house counsel authorized Gibson Dunn to formally retain Dr. Singh and requested that Gibson Dunn set up a meeting to introduce her to the in-house counsel group.

18. Gibson Dunn emailed Dr. Singh on June 3, 2024, to set up the introductory meeting and further discuss the expert role. Dr. Singh and Gibson Dunn exchanged multiple rounds of follow-up emails over the next three days and ultimately scheduled a June 11, 2024 call with Meta's in-house counsel and a June 10, 2024 pre-call via videoconference with the Gibson Dunn team. Gibson Dunn intended these calls to be strictly *pro forma* given that Meta had already made the decision to formally engage Dr. Singh.

19. Gibson Dunn's correspondence with Dr. Singh on June 3-6, 2024 is included in the attached Exhibit 3.

20. Gibson Dunn and Dr. Singh participated in the scheduled pre-call on June 10 via

Zoom. I personally participated in that videoconference as one of Meta's attorneys. During that pre-call, I reiterated the information discussed with Dr. Singh during the retention interview on March 21, including with respect to the legal theories, affirmative themes, and defenses that Meta intended to develop using expert testimony and the particular arguments that Gibson Dunn anticipated would be central to the case.

21. Dr. Singh confirmed during that June 10 videoconference that her views on the central issues had not changed and indicated that she remained willing and able to serve as Meta's expert in this case.

22. Later in the day on June 10, Gibson Dunn sent Dr. Singh a follow-up email to confirm which other BIPA matters she was then involved in as an expert witness.

23. Dr. Singh responded to Gibson Dunn's follow-up email on June 11, less than an hour before the scheduled call with Meta's in-house attorneys. Dr. Singh stated in that email that one of the ongoing cases in which she had been retained as an expert is a BIPA matter involving one of Meta's competitors. Dr. Singh represented that she believed she would likely be disqualified as an expert in that case if she were to work with Meta in this litigation.

24. Gibson Dunn's correspondence with Dr. Singh on June 10-11, 2024 is included in the attached Exhibit 3.

25. Based on Dr. Singh's representations regarding her case conflicts, Gibson Dunn believed that she could not serve as Meta's expert in this matter and so ultimately retained a different testifying expert.

26. Gibson Dunn and Meta did not learn until they were served with Plaintiff's expert report on the October 23, 2025 service deadline that Dr. Singh had been retained by Plaintiff's counsel to serve as Plaintiff's testifying expert in this litigation.

27. Upon review of Plaintiff's expert report, I immediately recognized Dr. Singh by name and identified the conflict of interest given the above-described discussions that occurred over the course of three months with Dr. Singh.

28. I emailed Kevin Green, counsel for Plaintiff in this case, to investigate the conflict on October 27, 2025. I specifically inquired about when Plaintiff's counsel was first in touch with

Gibson, Dunn &
Crutcher LLP

4

Dr. Singh in connection with this case, how and when Plaintiff came to engage Dr. Singh in this case, whether and to what extent Plaintiff had Dr. Singh check for conflicts, and what steps Plaintiff's counsel had taken to ensure that Dr. Singh did not divulge any work product or other confidential information she had learned from Gibson Dunn relevant to this case.

29.     Plaintiff's counsel responded on October 28, 2025, by refusing to provide information responsive to any of Meta's questions.

30.     I reiterated my questions about the conflict in a further email to Plaintiff's counsel on October 29, 2025.  Plaintiff's counsel sent a response on October 31, 2025, advising that he would not answer because he considered the information "privileged, irrelevant to any legitimate effort to disqualify Dr. Singh, or both."  He nevertheless maintained that the parties were "not at an impasse."

31.     To provide context for Meta's position, I responded to Plaintiff's counsel again on November 3, 2025.  In that email, I provided the basic, non-privileged  facts relating to Gibson Dunn's discussions with Dr. Singh in March through June 2024.  I also reiterated my questions regarding Plaintiff's retention of Dr. Singh.

32.     A true and correct copy of my correspondence with Plaintiff's counsel from October 27 through November 6, 2025 is attached hereto as **Exhibit 4**.

33.     To date, Plaintiff's counsel has continued to refuse to provide any information responsive to the questions in my October 27, 2025 email regarding Dr. Singh's conflict of interest.

34.     On November 6, 2025, I participated in a meet and confer with Plaintiff's counsel via Zoom, where I explained that Meta intended to move to disqualify Dr. Singh for the reasons previously set forth in my October 29 and November 3 emails.  I also explained that given the upcoming deadline for Meta to serve a rebuttal expert report, Meta would need to seek a stay of certain deadlines pending resolution of the Motion.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 7th day of November 2025 in Los Angeles, California.

/s/ Diana M. Feinstein
Diana M. Feinstein

Gibson, Dunn &
Crutcher LLP

5

FEINSTEIN DECL. ISO MOT. TO DISQUALIFY R. SINGH
CASE NO. 3:23-CV-04181-SI