LATHAM & WATKINS LLP
GARY S. FEINERMAN (admitted *pro hac vice*)
KATHRYN K. GEORGE (admitted *pro hac vice*)
ROBERT C. COLLINS III (admitted *pro hac vice*)
330 N. Wabash Ave., Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
gary.feinerman@lw.com
katie.george@lw.com

GIBSON, DUNN & CRUTCHER LLP
CHRISTOPHER CHORBA, SBN 216692
DIANA FEINSTEIN, SBN 302626
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:     (213) 229-7396
Facsimile:     (213) 229-6396
cchorba@gibsondunn.com
dfeinstein@gibsondunn.com

LAUREN R. GOLDMAN (admitted *pro hac vice*)
MICHAEL BRANDON (admitted *pro hac vice*)
200 Park Avenue, New York, NY 10166
Telephone:     (212) 351-4000
Facsimile:     (212) 351-4035
lgoldman@gibsondunn.com
mbrandon@gibsondunn.com

*Attorneys for Defendant Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| NATALIE DELGADO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:23-cv-04181-SI<br><br>**DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY EXPERT RITA SINGH**<br><br>Action Filed:  August 16, 2023<br>Trial Date:  None Set<br>Judge Susan Illston |

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

      A.     Meta Reasonably Believed Its Relationship With Dr. Singh
           Was Confidential. ..................................................................................................... 4

      B.     Meta Shared Relevant, Confidential Information
           With Dr. Singh. ...................................................................................................... 10

      C.     Fundamental Fairness and Policy Considerations
           Support Disqualification. ....................................................................................... 14

CONCLUSION ............................................................................................................................. 15

Gibson, Dunn &
Crutcher LLP

META PLATFORMS, INC.'S REPLY ISO MOTION TO DISQUALIFY R. SINGH
CASE NO. 3:23-CV-04181-SI

# TABLE OF AUTHORITIES

**Cases**

*AstraZeneca Pharms., LP v. Teva Pharms. USA, Inc.*,
2007 WL 4292384 (D.N.J. Dec. 4, 2007) ................................................................................. 5

*Chan v. ArcSoft, Inc.*,
2023 WL 5068495 (N.D. Cal. Aug. 8, 2023) ......................................................................... 9, 12

*Cooper v. Quora, Inc.*,
2020 WL 7408231 (N.D. Cal. July 15, 2020) ...................................................................... 5, 8, 10

*Doe v. Rockingham Cnty. Sch. Bd.*,
2023 WL 6617333 (W.D. Va. Oct. 10, 2023) .............................................................................. 12

*Finisar Corp. v. Nistica, Inc.*,
2015 U.S. Dist. LEXIS 94975 (N.D. Cal. July 21, 2015) .............................................................. 9

*Hewlett-Packard Co. v. EMC Corp.*,
330 F. Supp. 2d 1087 (N.D. Cal. 2004) ............................................................................... 5, 7, 9

*Hickman v. Taylor*,
329 U.S. 495 (1947) ...................................................................................................................... 12

*In re Incretin Mimetics Prods. Liab. Litig.*,
2015 WL 1499167 (S.D. Cal. Apr. 1, 2015) .................................................................................. 8

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
2022 WL 393208 (N.D. Cal. Feb. 9, 2022) ....................................................................... 8, 14, 15

*Kane v. Chobani, Inc.*,
2013 WL 3991107 (N.D. Cal. Aug. 2, 2013) ..................................................................... passim

*Larson v. Rourick*,
284 F. Supp. 2d 1155 (N.D. Iowa 2003) ..................................................................................... 10

*Lifewatch Serv. Inc. v. Braemer Inc.*,
2010 WL 3909483 (N.D. Ill. Sept. 28, 2010) ............................................................................... 9

*Packet Intel. LLC v. Juniper Networks Inc.*,
2020 WL 4001460 (N.D. Cal. July 15, 2020) .................................................................. 6, 11, 14

*Pellerin v. Honeywell Int'l Inc.*,
2012 WL 112539 (S.D. Cal. Jan. 12, 2012) ............................................................................... 8, 9

*Rhodes v. E.I. Du Pont De Nemours and Co.*,
558 F. Supp. 2d 660 (S.D. W. Va. 2008) ..................................................................................... 11

*Staley v. Gilead Scis., Inc.*,
2022 WL 3013120 (N.D. Cal. July 29, 2022) ............................................................................ 5, 7

Gibson, Dunn &
Crutcher LLP

META PLATFORMS, INC.'S REPLY ISO MOTION TO DISQUALIFY R. SINGH
CASE NO. 3:23-CV-04181-SI

**INTRODUCTION**

Plaintiff's arguments distill down to a single, erroneous proposition: Meta's Motion to Disqualify (ECF No. 120) should not be granted because Meta has not pointed to *specific* portions of Dr. Singh's report that are *directly* traceable to confidential information that is otherwise unavailable in discovery and that Dr. Singh received from Meta in the course of a confidential relationship. Those arguments must fail because they misapprehend the facts and invite the Court to misapply the law, including for the following reasons:

***Prejudice/Taint.*** Meta is not required to identify discrete parts of the record that have demonstrably been infected by Dr. Singh's conflict, nor establish that any of her opinions can be definitively traced back to confidential information from outside the discovery record. Plaintiff's contrary argument is foreclosed by the case law and common sense. The law provides that disqualification is appropriate—regardless of whether identifiable prejudice can be shown—where a party has disclosed relevant confidential information to an adversary's expert pursuant to a relationship that the party reasonably believed to be confidential. These two "confidential relationship"/"confidential information" prongs are the only necessary showings, and Meta's Motion and supporting materials more than suffice to establish both.

***Confidential Relationship.*** Plaintiff insists that Meta could not reasonably have believed that its relationship with Dr. Singh was confidential. Her arguments on this point attempt to rewrite the facts in an effort to downplay the significance of Meta's discussions with her. But Meta's evidence confirms—and Plaintiff has not meaningfully refuted—that Meta's counsel initiated the relationship specifically to explore whether Dr. Singh would be a suitable expert witness for Meta in this litigation and proceeded to vet her as a serious candidate over several months. It also confirms that Dr. Singh expressed her interest in the engagement and agreed to accept it if Meta wished to formalize it; that Meta in fact made the formal decision to retain her; and that Meta was preparing to do so when she abruptly identified the purported conflict involving her other matter. Plaintiff ignores these key facts and disputes others without providing any competent contradictory evidence, while seeking to hold Meta to a substantially more demanding standard than this District's law requires.

META PLATFORMS, INC.'S REPLY ISO MOTION TO DISQUALIFY R. SINGH
CASE NO. 3:23-CV-04181-SI

Gibson, Dunn & Crutcher LLP

***Confidential Information.*** Plaintiff contends that the information Meta's counsel disclosed to Dr. Singh is not confidential, notwithstanding that Meta has provided a sworn declaration from its counsel confirming that the information included counsel's assessment of the facts, arguments, and legal theories in this litigation, among other topics. But that information is classic work product, which constitutes confidential information for purposes of the disqualification test. Plaintiff initially faults Meta for not disclosing in more granular detail the substance of the confidential attorney work product that Meta conveyed to Dr. Singh—but of course, were Meta to do so, such disclosure could risk Meta's work product protection as to the underlying materials and Plaintiff's counsel would presumably argue waiver. The subject-matter-level descriptions that Meta has provided for its communications with Dr. Singh are appropriate and entirely consistent with Meta's stated position that the underlying information reflects and would reveal confidential attorney work product, which remains true today.[1]

Plaintiff's remaining arguments on the "confidential information" prong are based entirely on Dr. Singh's own purported recollection of her discussions with Meta's counsel. But the relevant legal inquiry is whether the communications *actually* amounted to attorney work product or other confidential information—not whether Dr. Singh recognized them as such.[2] Dr. Singh (a non-lawyer) is substantially less well-situated than Meta's counsel to assess whether the discussions reflected protected work product—counsel's assessment of the facts, Plaintiff's claims, and potential defenses—and her failure to correctly do so does not refute the evidence Meta has provided. In short, Dr. Singh's after-the-fact assessment (even granting its sincerity) is not responsive to the question that matters, which is whether *Meta* reasonably believed the relationship to be confidential.

***Information Omitted from Plaintiff's Opposition.*** Plaintiff's Opposition materials are equally

---

[1] The law does not require Meta to waive such protections as a condition of its disqualification motion, and Meta does not do so here. However, given that Plaintiff's submission includes a declaration that places the underlying communications directly in issue, Meta is contemporaneously filing a motion for leave to submit more detailed materials describing those communications, including contemporaneous call notes, for *in camera* review pending the Court's confirmation that the submission will not be construed as a waiver of any work product or other protections.

[2] Dr. Singh's declaration nevertheless materially conflicts with Meta's counsel's declaration with respect to certain facts, and Plaintiff's counsel acknowledges as much. Because Plaintiff's submission introduces new assertions that Meta did not reasonably foresee, Meta is supplementing this submission with a narrow further counsel declaration to clarify the record on the new information Plaintiff has put before the Court. *See* Feinstein Decl. IFSO Mot. to Disqual. ("Supp. Feinstein Decl.") ¶¶ 5-8.

noteworthy for the facts and arguments they do *not* include.  Plaintiff's counsel still has not confirmed the basic facts necessary for Meta and the Court to understand how it came to be that Plaintiff retained an expert with an obvious potential conflict *specific to this litigation*, then failed to  raise the conflict at any point.   The Opposition fills in minor details that Plaintiff's counsel repeatedly refused to answer during the meet-and-confer process that led to Meta's Motion—specifically, the fact that Plaintiff first contacted Dr. Singh sometime in February 2025 and retained Dr. Singh in March 2025, ECF No. 123-1 ("K. Green Decl.") ¶ 11—but includes no information about whether Plaintiff's counsel actually checked for and identified the obvious conflict at issue here.

As a matter of basic conflict check protocols, Plaintiff's counsel should have learned of Dr. Singh's prior discussions with Meta's counsel in this case by February 2025, and certainly by no later than March.  *Id.*  The facts suggest one of two things: either  Plaintiff's counsel failed to conduct basic conflict checks with an expert who is purportedly key to Plaintiff's case and whose field is allegedly very small (substantially increasing the likelihood that she may have been previously approached by Meta) or Plaintiff's counsel and Dr. Singh did conduct a conflict check and were aware of the problem, and Plaintiff's counsel failed to approach Meta to clear or otherwise address the conflict.  Under either fact pattern, Plaintiff's counsel's failure to identify and timely raise the conflict cannot be considered reasonable.  Meta is equally burdened by the delays and potential hardships that this issue is imposing on the parties, but *Meta* was not the party that was in a position to avoid this outcome.  Disqualification will ensure that Meta is not disadvantaged by any conflict and that Plaintiff's counsel is not unjustly rewarded for leaving this issue to sit until this late date.

### ARGUMENT

The facts and evidence that Meta has put before the Court confirm that relief is necessary and appropriate under District law, which requires showing only that (1) "it was reasonable for [Meta] to believe that a confidential relationship existed" with Dr. Singh and (2) Meta "disclosed confidential information to [Dr. Singh] that is relevant to the current litigation."  *Kane v. Chobani, Inc.*, 2013 WL 3991107, at *5 (N.D. Cal. Aug. 2, 2013).  Plaintiff's Opposition is not to the contrary.  The Opposition elaborates on the discovery and litigation record while dramatically  downplaying  the  facts  around

Gibson, Dunn & Crutcher LLP

META PLATFORMS, INC.'S REPLY ISO MOTION TO DISQUALIFY R. SINGH
CASE NO. 3:23-CV-04181-SI

Meta's discussions with Dr. Singh—the intended takeaway presumably being that those discussions are no cause for concern because they never yielded a formal retention agreement or caused any specific, demonstrable harm to Meta. Plaintiff's arguments are irreconcilable with the facts and foreclosed by the case law on every issue relevant to Meta's Motion.

### A.    Meta Reasonably Believed Its Relationship With Dr. Singh Was Confidential.

Meta's evidence confirms that, based on the pertinent facts and circumstances, "it was reasonable for [Meta] to believe that a confidential relationship existed" with Dr. Singh. *Chobani*, 2013 WL 3991107, at *5. Those facts and circumstances included the posture and purpose of Meta's discussions with a seasoned expert, which were expressly directed to the highly likely possibility that Meta would retain her as its expert. ECF No. 120-2 ("Feinstein Decl.") ¶¶ 3-4, 8-12. Meta's counsel knew that Dr. Singh had served as an expert in several prior cases and therefore understood that she appreciated the confidential nature of advanced vetting discussions. This understanding was solidified when, at the outset of the initial retention interview, Dr. Singh confirmed to Meta's counsel that she had no connection to Plaintiff's counsel or any other apparent conflicts, a routine step undertaken by counsel and experts or other litigation professionals in contemplation of a confidential relationship. *Id.* ¶¶ 8-9. Against that backdrop, Meta's counsel disclosed attorney work product, *see infra at pp. 7-8*, which counsel would never have done had counsel not reasonably understood the relationship to be confidential, Feinstein Decl. ¶¶ 10-12. Dr. Singh provided her reactions to the theories Meta's counsel raised with her as potential affirmative and defensive arguments and confirmed her interest in the engagement. *Id.* ¶ 14, Ex. 3 at 7-8.[3] This discussion was sufficient to persuade Meta to retain Dr. Singh, and Meta's counsel was preparing to formalize the engagement with a retention letter when, as a final step in the process, Meta's counsel and Dr. Singh engaged in yet another substantive discussion to confirm alignment on case strategy. Meta's counsel reasonably believed by this final step discussion that a confidential relationship had formed. It was only then that Dr. Singh raised the purported issue she believed would result in her disqualification from a separate BIPA case for which she had previously failed to identify any conflicts. *Id.* ¶¶ 17-19, 23-25, Ex. 3 at 1.

---

[3] Except as otherwise noted, all "Ex." citations herein refer to the Exhibits to the November 7, 2024 Declaration of Diana M. Feinstein in Support of Meta's Motion (ECF No. 120-2).

Gibson, Dunn & Crutcher LLP

4

META PLATFORMS, INC.'S REPLY ISO MOTION TO DISQUALIFY R. SINGH
CASE NO. 3:23-CV-04181-SI

Under such circumstances, it was entirely reasonable for Meta's counsel to believe that its relationship with Dr. Singh was confidential. *Eee e.g.*, *Cooper v. Quora, Inc.*, 2020 WL 7408231, at *3 (N.D. Cal. July 15, 2020). Although Plaintiff's submission indicates that Dr. Singh may not have appreciated as much, the operative question is not whether Dr. Singh *subjectively* recognized what should have been apparent to her as an experienced expert witness. The question instead is whether "it was reasonable *for [Meta]* to believe that a confidential relationship existed." *Chobani*, 2013 WL 3991107, at *5 (emphasis added). The answer to that question is "yes" under a straightforward application of the law that Meta cites and Plaintiff's Opposition acknowledges. *See* Opp. 5.

Plaintiff cites factors that courts in this District sometimes consider in assessing whether a party's expectation of confidentiality was reasonable and misleadingly implies that they represent an enumerated, comprehensive list. Nevertheless, as Plaintiff acknowledges, none is legally dispositive. *See* Opp. 14-15. Meta is not required to satisfy each and every factor to demonstrate that it reasonably believed its relationship was confidential, but even so, Meta *has* addressed the most relevant factors, which show that a confidential relationship existed. *See e.g.*, *Cooper*, 2020 WL 7408231, at *1-3; *AstraZeneca Pharms., LP v. Teva Pharms. USA, Inc.*, 2007 WL 4292384, at *2 (D.N.J. Dec. 4, 2007) ("The 'objectively reasonable belief' standard is not a high hurdle to clear."). And Plaintiff omits other factors that courts consider and that further tip the scales in Meta's favor. Meta reiterates those points again while addressing the other non-dispositive factors here for avoidance of doubt:

***Retention Agreement.*** Though Plaintiff fails to mention as much, the law is clear that no formal retention or confidentiality agreement is necessary to demonstrate that a confidential relationship exists.[4] *See Staley v. Gilead Scis., Inc.*, 2022 WL 3013120, at *2 (N.D. Cal. July 29, 2022); *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1096 (N.D. Cal. 2004). This principle reflects that– while the existence of a formal agreement might place the existence of a confidential relationship beyond dispute, in practice it is standard for counsel to exchange confidences with a prospective expert as a necessary precursor to determining whether to enter into such an agreement in the first place. *See*

---

[4] Were this reality otherwise, there would be no need for the well-developed strain of disqualification case law that governs this motion, as any violations of a party's confidential relationship with an expert could be resolved with resort to contract law.

META PLATFORMS, INC.'S REPLY ISO MOTION TO DISQUALIFY R. SINGH
CASE NO. 3:23-cv-04181-si

Gibson, Dunn & Crutcher LLP

Supp. Feinstein Decl. ¶ 6.  And although no formal agreement yet existed between Dr. Singh and Meta, the parties were poised to take that step: By the parties' second meeting, Dr. Singh had conveyed her willingness to accept the retention as Meta's expert in the event Meta wished to proceed with it, and Meta was actively preparing to formalize the retention when Dr. Singh identified the issue she believed presented a conflict for her in a separate case.  Singh Decl. ¶¶ 16, 27.  These undisputed facts concerning the parties' discussions and course of conduct, including Dr. Singh's confirmation that she would be willing to accept the retention, confirm that there was at least an informal agreement or meeting of the minds regarding Dr. Singh's retention as Meta's expert.  At minimum, these facts confirm that Meta's counsel reasonably believed there to be one—and that is all that matters for purposes of this analysis.

*Disclosure of Work Product.*  Meta's disclosure of attorney work product to Dr. Singh confirms that Meta's counsel believed that the relationship was confidential.  *Infra* Section II; Mot. 5-6.  Contrary to Plaintiff's submission, Opp. 17, Meta's argument is not that the disclosure of such work product *in and of itself* created a confidential relationship where none would otherwise exist.  Rather–consistent with Plaintiff's acknowledgment of the relevance of this factor–Meta's argument is that the confidential nature of the information shared reflected counsel's reasonable understanding that the communications would be maintained in confidence by all parties to the discussion.

*Whether Expert Would Be Called as a Witness by the Moving Party.*  Although Plaintiff ignores this factor (which is drawn from the cases she cites), courts in this District assessing whether a party reasonably believed a relationship to be confidential also look to "whether the expert is to be called as a witness in the underlying case."  *Packet Intel. LLC v. Juniper Networks Inc.*, 2020 WL 4001460, at *2 (N.D. Cal. July 15, 2020).  Meta has confirmed—and neither Plaintiff nor Dr. Singh has refuted—that Meta's discussions with Dr. Singh were expressly in contemplation of her retention in a testifying expert role.  Feinstein Decl. ¶¶ 4, 10-12, 17; *see* Singh Decl. ¶¶ 13, 19, 24-25.

*Whether Party or Expert Shared the Confidential Information at Issue.*  As Plaintiff also ignores, courts assessing a party's expectation of confidentiality also look in certain cases to "whether alleged confidential communications were from expert to party or vice-versa."  *Packet Intel.*, 2020 WL 4001460, at *2.  This consideration, too, cuts in Meta's favor.  The submissions supporting Meta's

Gibson, Dunn & Crutcher LLP

META PLATFORMS, INC.'S REPLY ISO MOTION TO DISQUALIFY R. SINGH
CASE NO. 3:23-CV-04181-SI

Motion reflect that *it* shared confidential information, which demonstrates and reinforces counsel's understanding regarding confidentiality. *See infra* Section II.B.

***Formal NDA or Protective Order or Confidentiality Instructions.*** As noted above and in Meta's Motion, no formal non-disclosure agreement is required to establish a confidential relationship between a party and a potential expert. *Staley*, 2022 WL 3013120, at *2; *Hewlett-Packard*, 330 F. Supp. 2d at 1096. That makes sense, as a contrary rule would effectively force parties to "lock up" potential experts using NDAs before proceeding to vet them—even if the parties had no way to know whether the experts would ultimately be helpful to them. Meanwhile, experts who refused to sign NDAs for fear of being locked up could never be vetted for retention. This is precisely the outcome that disqualification law seeks to avoid. *Chobani*, 2013 WL 3991107, at *7. And Plaintiff cites to no authority—nor is Meta aware of any—suggesting that Meta should have negotiated a protective order with its own potential expert before sharing the information necessary to ascertain her suitability. Supp. Feinstein Decl. ¶6. Finally, insofar as Plaintiff claims Meta's counsel needed to make clear that Dr. Singh should not relay their discussions to Plaintiff's counsel, it was certainly reasonable for Meta's counsel to believe it had done so by expressly confirming that Dr. Singh—a seasoned expert—was not in discussions with Plaintiff's counsel prior to disclosing information to her. Feinstein Decl. ¶¶ 9-11.

***Number of Meetings.*** Meta's evidence confirms—and Plaintiff apparently does not dispute—that Meta's counsel ultimately had two substantive meetings in which counsel vetted Dr. Singh as a potential expert for Meta in this case. *Id*. ¶¶ 17-18, 20-23. A third meeting had been scheduled to introduce Dr. Singh to Meta's in-house counsel, purely as a formality, before Meta sent Dr. Singh an engagement letter. *Id*. ¶¶ 8-12, 18, 20-23. And of course, given that Meta had made the decision to retain Dr. Singh, many more meetings between Dr. Singh and Meta's counsel were reasonably foreseeable in the future. *Id.* These discussions were relatively brief in duration only because Meta's counsel used the interview time efficiently to go to the theories and issues that Meta deemed central to the case, and because counsel was quickly satisfied based on Dr. Singh's responses that she could be of affirmative help to Meta in developing the expert record on those theories and issues. Supp. Feinstein Decl. ¶ 10.

META PLATFORMS, INC.'S REPLY ISO MOTION TO DISQUALIFY R. SINGH
CASE NO. 3:23-CV-04181-SI

***Longstanding Relationship.***  Courts have found confidential relationships even when the expert in question had only a single retention discussion with the moving party or its attorney, including where the party ultimately decided not to retain that expert.  *Cooper*, 2020 WL 7408231, at *1, 3.  Accordingly, even if Meta does not have a longstanding relationship with Dr. Singh, nothing in the case law precludes the existence of a confidential relationship.  Moreover, Plaintiff minimizes the nature and duration of Meta's contacts with Dr. Singh, which involved numerous exchanges via email and videoconference over a period of months.  Feinstein Decl. ¶¶ 4-24.  Meta's counsel kept in active touch with Dr. Singh throughout that time period and at no point did they suggest or communicate to Dr. Singh that Meta had lost interest in retaining her as Meta's testifying expert.  *Id.*

***Fee Payment.***  This factor commonly goes hand in hand with the retention agreement factor discussed above, and adds nothing to the analysis here.  An expert who receives confidential information through a vetting process but ultimately defects to the adversary may never receive fees from the affected party, but disqualification is no less appropriate.  So too, here, the fact that Dr. Singh never ultimately followed through in rendering the services she discussed with Meta is hardly relevant to the confidential relationship analysis.

***Evidence that Expert's Specific Ideas Were Tainted.***  Plaintiff leans heavily on the notion that Dr. Singh's expert report cites to record discovery and does not *expressly* purport to rely on any otherwise undisclosed confidential information that Dr. Singh received from Meta's counsel.  But the case law is clear that a party need not demonstrate specifically how and in what ways proceedings may have been tainted in order to establish a confidential relationship or disqualifying conflict.  Rather, courts routinely confirm that an expert who previously received a party's confidential information is subject to disqualification regardless of whether it can be shown that the expert actually misused the information. *In re Xyrem (Sodium Oxybate) Antitrust Litig*., 2022 WL 393208, at *5 (N.D. Cal. Feb. 9, 2022); *In re Incretin Mimetics Prods. Liab. Litig*., 2015 WL 1499167, at *7 (S.D. Cal. Apr. 1, 2015) ("[I]t would be impossible for [the expert] to differentiate between information he obtained through his confidential consulting relationship with information otherwise obtained through discovery or outside sources."); *Pellerin v. Honeywell Int'l Inc*., 2012 WL 112539, at *3 (S.D. Cal. Jan. 12, 2012) (rejecting

contrary argument because "the human brain does not compartmentalize information in that manner"); *see also Lifewatch Serv. Inc. v. Braemer Inc.*, 2010 WL 3909483, at *2 (N.D. Ill. Sept. 28, 2010) (party "need not demonstrate that [the expert] actually leaked confidential information in his possession," but instead "need only demonstrate that he has such information"). Meta's counsel spoke to Dr. Singh about *the issues in this case*, and Dr. Singh is now offering a report about *the issues in this case*.

Moreover, it would contradict common sense to require Meta to demonstrate the ways in which the information Dr. Singh discussed with Meta's counsel may have tainted these proceedings. Where (as here) a conflicted expert has received a party's confidential information, the affected party has no way to determine how, to what degree, and in what respects the conflict may have influenced the adversary's approach to the case. That is especially true in highly technical cases like this one, in which experts commonly assist parties in shaping and directing the course of discovery. Accordingly, even if Dr. Singh were capable of "compartmentaliz[ing]" her mind for purposes of her report, *contra Pellerin*, 2012 WL 112539, at *3, Meta can have no assurances that the conflict did not taint the proceedings in other ways that are less immediately obvious and traceable—for example, by informing Plaintiff's discovery requests or lines of cross-examination for depositions. Nor can Meta be assured that proceedings will not be tainted moving forward, such as through Dr. Singh's deposition testimony or assistance with Plaintiff's opposition to Meta's forthcoming motion for summary judgment.

\*\*\*

Despite the many pages Plaintiff dedicates to misdirecting from what is relevant under this prong, there is only one question that must be answered here—and that is whether "it was reasonable for [Meta] to believe that a confidential relationship existed." *Chobani*, 2013 WL 3991107, at *5. Based on the authorities and facts discussed above and in Meta's Motion, the answer is unequivocally yes.[5] Plaintiff's cited authorities—which involve materially different facts—do not support otherwise.[6]

---

[5] Plaintiff's attempts to distinguish Meta's authorities on granular, highly case-specific grounds do not refute Meta's contentions or entitlement to relief here.

[6] *See Hewlett-Packard*, 330 F. Supp. 2d at 1097 (counsel "[did] not maintain that he discussed anything of substantive importance to the litigation"); *Finisar Corp. v. Nistica, Inc.*, 2015 U.S. Dist. LEXIS 94975, at *6 (N.D. Cal. July 21, 2015) (expert calls did not involve "any in-depth substantive analysis of claims and defenses"); *Chan v. ArcSoft, Inc.*, 2023 WL 5068495, at *5 (N.D. Cal. Aug. 8, 2023) (counsel did not raise confidentiality with expert who "lacked any prior expert witness experience");

Gibson, Dunn & Crutcher LLP

9

META PLATFORMS, INC.'S REPLY ISO MOTION TO DISQUALIFY R. SINGH
CASE NO. 3:23-CV-04181-SI

**B.        Meta Shared Relevant, Confidential Information With Dr. Singh.**

Meta's submissions likewise confirm that the information it shared with Dr. Singh during retention interviews satisfies the "confidential information" prong of the two-part expert disqualification test. "Confidential information," for purposes of that test, expressly includes "attorney work product . . . including discussions of a party's strategy in the litigation, a party's view of the strengths and weaknesses of each side, and the role of each of a party's experts to be hired and anticipate[d] defenses." *Chobani*, 2013 WL 3991107, at *5 (cleaned up); *see also Cooper*, 2020 WL 7408231, at *2. That is precisely what Meta's counsel disclosed to Dr. Singh over the course of their discussions, as reflected in the sworn declaration of the Meta counsel who led those discussions. Feinstein Decl. ¶¶ 10-12, 20-21; Supp. Feinstein Decl. ¶¶ 7-9.

Plaintiff advances numerous attacks on the above facts. Each attack fails:

*First*, Plaintiff argues that Meta's arguments rely on "mere conclusory or *ipse dixit* assertions." Opp. 6, 19, 21-22. Respectfully, this is not a defensible reading of Meta's papers. As explained in Meta's prior submissions and again above, Meta provided subject-matter-level descriptions of its discussions with Dr. Singh in order to maintain their confidentiality and to avoid any suggestion that Meta has waived work product as to the relevant communications. Feinstein Decl. ¶ 2. That approach is entirely consistent with the procedure that parties and courts have followed in exemplar cases in which parties have sought disqualification on the basis of privileged or work product protected communications. *E.g.*, *Chobani, Inc.*, 2013 WL 3991107, at *10 n.5 (confirming that party seeking disqualification based on disclosure of confidential work product "is not required to disclose the actual information contended to be confidential"). Put simply, Meta cannot now disclose the confidential information it discussed precisely *because* it remains undisclosed confidential information. Nevertheless, now that Plaintiff has called into question Meta's characterization of its counsel's discussions with Dr. Singh, Meta is separately filing a motion for leave to submit a more detailed description of the substance of those communications for the Court's *in camera* review, pending the Court's confirmation that the submission will not be construed as a waiver of any work product or other

---

*Larson v. Rourick*, 284 F. Supp. 2d 1155, 1157 (N.D. Iowa 2003) (no conflict of interest where challenged expert merely worked at the same law firm as other attorneys previously vetted).

META PLATFORMS, INC.'S REPLY ISO MOTION TO DISQUALIFY R. SINGH
CASE NO. 3:23-CV-04181-SI

Gibson, Dunn & Crutcher LLP

protections.  In the meantime, for avoidance of doubt, Meta maintains that the communications between its counsel and potential experts in this litigation are confidential and protected by privilege and work product doctrine, and that Meta need not waive and is not waiving any such protections.

*Second*, Plaintiff's counsel relies heavily on a declaration from Dr. Singh describing her purported recollection of her discussions with Meta's counsel.  Opp. 19-20.  But even were the Court to credit that declaration, Dr. Singh's statements still do not directly contradict Meta's counsel's declaration and are not dispositive of the questions presented by Meta's Motion.  The declaration supports, at best, that Dr. Singh (1) did not appreciate that Meta's counsel believed the relationship to be confidential and (2) did not recognize that the information shared amounted to attorney work product, including with respect to factual information that counsel selected, assembled, and conveyed in specific terms based on counsel's assessment of the importance of the information to the case.  Supp. Feinstein Decl. ¶¶ 5-9, 11.  Such facts do not defeat Meta's showing that the information disclosed was in fact confidential, regardless of whether Dr. Singh—a non-lawyer—recognized it as such.

*Third*, that some of the information Meta conveyed to Dr. Singh was factual and/or publicly available in nature is irrelevant to the question presented under this prong of the disqualification test— which is whether the communications as a whole constituted attorney work product.  *Contra* Opp. 22-23.  The existing record is clear that they did, and Meta's supplemental counsel declaration provides further support and detail in order to resolve any lack of clarity introduced by Dr. Singh's declaration on this point.  As explained in that supplemental declaration, counsel conveyed to Dr. Singh the information she considered most important to the case based on her investigation, professional assessment, and privileged discussions with Meta.  Supp. Feinstein Decl. ¶ 8.  This information reflected the various themes that Meta was seeking to develop through expert discovery and therefore revealed litigation strategy.  *Id.*  That is classic work product, notwithstanding that some of the facts underlying it may have been available through discovery or public sources.  *Packet Intel.*, 2020 WL 4001460, at *3 (rejecting party's arguments that expert should not be disqualified because work performed was based on public information); *Rhodes v. E.I. Du Pont De Nemours and Co.*, 558 F. Supp. 2d 660, 671 (S.D. W. Va. 2008) ("Though some of the information received by [the expert] from

META PLATFORMS, INC.'S REPLY ISO MOTION TO DISQUALIFY R. SINGH
CASE NO. 3:23-CV-04181-SI

the [affected party] could be deemed public or discoverable information in other contexts, in this case it is privileged as protected work product.").

*Fourth*, Plaintiff suggests that any conflict implicating Dr. Singh is harmless because of the "abundant disclosures" that Meta made to Plaintiff during discovery, which Plaintiff appears to contend must necessarily have covered any confidential information Meta's counsel could have conveyed to Dr. Singh. Opp. 22-23. Meta certainly does not dispute that it has been forthcoming in discovery, but that aspect of the litigation background does not support Plaintiff's argument on the logic or the law. By way of analogy, if Meta were to obtain a copy of Plaintiff's counsel's draft opening argument two weeks before trial, Plaintiff's counsel would (correctly) claim that the draft amounted to attorney work product even though the contents ostensibly would be limited to information that had been made available in discovery. There—as here—the problem would not be the secrecy of the underlying facts, but rather the sensitivities around counsel's selection, assembly, analysis, and presentation of those facts, regardless of whether the facts are known or will be disclosed to the adversary.[7] *Hickman v. Taylor*, 329 U.S. 495 (1947); *e.g.*, *Doe v. Rockingham Cnty. Sch. Bd.*, 2023 WL 6617333, at *6 (W.D. Va. Oct. 10, 2023) (confirming that such information is "paradigmatic attorney work product").

*Fifth*, Plaintiff argues—again—that Meta must identify portions of Dr. Singh's report that are demonstrably tainted. As detailed above and in Meta's Motion, the law in fact establishes the opposite rule and provides for disqualification as a prophylactic remedy once a party has demonstrated a confidential relationship in which relevant confidential information was disclosed to the conflicted expert—regardless of whether the expert's report was identifiably infected. *See supra* at 1; Mot. 7-8.

*Finally*, the targeted arguments that Plaintiff directs toward Meta's counsel in this case are irrelevant, improper, and in all events insufficient to undermine the evidence that Meta has provided demonstrating the confidential and work product protected nature of the information conveyed to Dr.

---

[7] The sole case that Plaintiff cites for this argument does not hold otherwise. The district court there conducted a fact-specific analysis and concluded that counsel had not sufficiently described the communications that gave rise to the potential expert conflict. *Chan v. ArcSoft Inc.*, 2023 WL 5068495 (N.D. Cal. Aug. 8, 2023). But counsel in that case had neither provided sufficient facts nor offered to do so via *in camera* submission. *See id.* at *7 n.1. Here, in contrast, Meta has described its discussions with Dr. Singh at the greatest level of detail possible without risking work product waiver and is seeking to provide an *in camera* submission if helpful to the Court. *See supra* at 13.

META PLATFORMS, INC.'S REPLY ISO MOTION TO DISQUALIFY R. SINGH
CASE NO. 3:23-CV-04181-SI

Singh. *Contra* Opp. 20-21. In particular, Plaintiff: (a) suggests that Meta's counsel over characterized prior discussions with Dr. Singh during the meet and confer correspondence that Meta has put before the Court—which Meta disputes, and the facts of those discussions speak for themselves, *see* Mot. 2-4; (b) points to the presence or absence of email confidentiality designations—which is not dispositive or even persuasive, given that substantive discussions generally occurred via videoconference, *see* Feinstein Decl. ¶¶ 10-12, 20-21; (c) claims that Meta designated every single page of its written discovery responses as highly confidential–which Meta did only provisionally pending entry of a protective order before later narrowing its designations as appropriate—which Plaintiff fails to mention; and (d) cites to an inapposite CLE presentation by Meta's outside counsel relating to a different type of third party consultant—namely, outside auditors, who are differently situated from testifying expert witnesses as a matter of privilege law, Supp. Feinstein Decl. ¶ 6 n.2.

Plaintiff otherwise spills substantial ink engaging in a detailed recitation of the history of Meta's counsel's discussions with Dr. Singh. *See* Opp. 9-14, 20. That recitation is objectionable and misstates the facts in multiple respects, but all of those issues are ultimately irrelevant to the question that matters here[8]—which is whether the information Meta's counsel disclosed amounted to work product. The answer to that question is "yes," and Plaintiff has provided no competent evidence to the contrary.

*** 

In short, none of Plaintiff's arguments undermine the facts and evidence Meta provided in support of its Motion. Those record materials demonstrate that the information Meta's counsel provided to Dr. Singh constitute protected attorney work product. And to the extent Dr. Singh's declaration introduces any ambiguity or doubt, Meta's supplemental counsel declaration provides clarity and confirms that disqualification is necessary and appropriate here.

---

[8] To take one example, Plaintiff contends that Dr. Singh emailed Meta's counsel after the March 21 videoconference to advise that she was then an expert for plaintiffs in two BIPA cases, *see* Opp. 20— which is not supported by the record, but which is beside the point for purposes of the issues before this Court. Plaintiff does not and cannot dispute that Meta's counsel confirmed during the March 21 interview that Dr. Singh had not been contacted by Plaintiff's counsel and was aware of no other conflicts. Feinstein Decl. ¶¶ 9-10. If Meta did not inquire into the specifics of Dr. Singh's other cases, that simply demonstrates Meta's counsel's (correct) understanding that it was Dr. Singh's obligation— not Meta's—to identify and escalate any conflicts that may arise from those cases. That understanding was further supported by Meta's subsequent discussions with Dr. Singh about the perceived conflict involving her other case, which demonstrated that she understood how conflicts work. Ex. 3 at 1.

META PLATFORMS, INC.'S REPLY ISO MOTION TO DISQUALIFY R. SINGH
CASE NO. 3:23-CV-04181-SI

Gibson, Dunn & Crutcher LLP

### C.    Fundamental Fairness and Policy Considerations Support Disqualification.

Plaintiff's Opposition does not undermine—and, in fact, confirms—that both fundamental fairness and public policy considerations support disqualification.  As explained in Meta's Motion, Mot. 8-9, Plaintiff's counsel will not be unduly prejudiced by Dr. Singh's disqualification despite having already served her report—to the contrary, to deny disqualification on that basis would effectively allow Plaintiff's counsel a windfall for failing to timely raise a conflict he should have identified and attempted to clear in order to avoid this precise situation. *In re Xyrem*, 2022 WL 393208, at *5; Mot. 8-9.  And of course, to the extent Dr. Singh has assisted Plaintiff's counsel in other aspects of the case—for example, in shaping expert discovery–Plaintiff has already obtained such a windfall. Policy considerations likewise support disqualification on the facts presented here, as granting such relief will ensure that parties are able to engage in appropriate substantive discussions with prospective experts without insisting on NDAs or other formalities that would invite gamesmanship and increase the burdens associated with pre-retention discussions. *Chobani*, 2013 WL 3991107, at *7; Mot. 9-10.

Plaintiff's counterarguments are unavailing.  On the question of fairness, Plaintiff's only argument is that this matter "involves complex issues" in "a highly technical and specialized field," which limits the pool of potential experts and may make it difficult for Plaintiff's counsel to retain a substitute, non-conflicted expert at these "late stages." Opp. 23-24.  To be clear, the potential logistical difficulties of finding a substitute expert are no different from the burdens that *all* parties face when their experts are disqualified.  Those burdens may differ slightly in degree from case to case, but they are not unique to this matter or Plaintiff's counsel and they do not defeat the fairness considerations supporting relief here.  *See Packet Intel.*, 2020 WL 4001460, at *3 (emphasizing that "[a]ny disqualification will result in costs to the party that must retain a new expert," and rejecting such burdens as a basis on which to deny disqualification motion).

Nor can Plaintiff be heard to complain about disqualification at this stage. Opp. 24.  Plaintiff has not yet moved for class certification, and the sole discovery deadline she cites relates to early summary judgment issues, which are limited in scope. *See* ECF No. 102.  And more importantly, to the extent this dispute has arisen at a stage that is inconvenient to Plaintiff, any delay is attributable to

14

META PLATFORMS, INC.'S REPLY ISO MOTION TO DISQUALIFY R. SINGH
CASE NO. 3:23-CV-04181-SI

Plaintiff's counsel, who was the *only* party in a position many months ago to escalate this conflict and avoid the resulting disruption.[9]  Plaintiff cannot avoid disqualification on the basis of prejudice by having created the circumstances that would make disqualification prejudicial.  *See supra* at 4.

Plaintiff's public policy arguments are likewise meritless.  On that point, Plaintiff's core contention is that an order disqualifying Dr. Singh "would hinder experts' pursuit of their trade and parties' ability to select their experts," and also incentivize counsel to lock up potential experts.  Opp. 25.  But that argument mischaracterizes the facts and misstates the incentives that would flow from a disqualification order.  To be clear, Meta is not seeking to disqualify an expert based on a mere exploratory discussion that remained limited to non-privileged, non-work product information.  Mot. 9-10.  Nor would an order disqualifying Dr. Singh meaningfully alter existing incentives for other experts who testify on behalf of parties to litigation.  *See* Supp. Feinstein Decl. ¶ 9.  Meta's expectation and understanding is that the overwhelming majority of experts who testify in litigation understand the confidentiality obligations and expectations that attach to their substantive discussions with counsel— that is precisely why experts commonly immediately disclose any contact they may have had with an adversary, even if that contact is limited to other matters.  *See Chobani*, 2013 WL 3991107, at *7; Supp. Feinstein Decl. ¶9.  Granting disqualification here would merely affirm and reinforce that parties may engage in such substantive discussions with prospective experts in the absence of a formal NDA or protective order, which would in fact *promote* both parties' and experts' abilities to engage in pre-retention discussions in an efficient and productive manner.  *See In re Xyrem*, 2022 WL 393208, at *6; *Chobani*, 2013 WL 3991107, at *7.

## CONCLUSION

Meta respectfully requests that the Court disqualify Dr. Singh from serving as Plaintiff's expert and prohibit Plaintiff's counsel from relying on her work product.

---

[9] Plaintiff's counsel dispute that they were "on notice" of the conflict, *see* Opp. 24 & n.4, but tellingly, they provide no evidence to assure the Court that they did *not* previously identify the conflict or to otherwise explain how and why it came to be that the issue only arose at this time.  Meta's expectation is that counsel conducted a standard conflict check and chose not to escalate the issue after Dr. Singh disclosed it—which would be troubling in multiple respects.  The alternative is that Plaintiff's counsel simply failed to conduct a basic check for their expert's conflicts with other parties in this matter, which would be equally problematic and likewise support Meta on fundamental fairness grounds.

Gibson, Dunn & Crutcher LLP

15

Dated: November 20, 2025                    Respectfully submitted,


                                           GIBSON, DUNN & CRUTCHER LLP


                                           By:    /s/ Diana M. Feinstein
                                                  Diana M. Feinstein

                                           LATHAM & WATKINS LLP


                                           By:    /s/ Gary S. Feinerman
                                                  Gary S. Feinerman

                                           *Attorneys for Meta Platforms, Inc.*

META PLATFORMS, INC.'S REPLY ISO MOTION TO DISQUALIFY R. SINGH
CASE NO. 3:23-CV-04181-SI