LATHAM & WATKINS LLP
GARY S. FEINERMAN (admitted pro hac vice)
KATHRYN K. GEORGE (admitted pro hac vice)
ROBERT C. COLLINS III (admitted pro hac vice)
330 N. Wabash Ave., Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
gary.feinerman@lw.com
katie.george@lw.com

GIBSON, DUNN & CRUTCHER LLP
CHRISTOPHER CHORBA, SBN 216692
DIANA FEINSTEIN, SBN 302626
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:    (213) 229-7396
Facsimile:    (213) 229-6396
cchorba@gibsondunn.com
dfeinstein@gibsondunn.com

LAUREN R. GOLDMAN (admitted *pro hac vice*)
MICHAEL BRANDON (admitted *pro hac vice*)
200 Park Avenue, New York, NY 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035
lgoldman@gibsondunn.com
mbrandon@gibsondunn.com

*Attorneys for Defendant Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| NATALIE DELGADO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:23-cv-04181-SI<br><br>**DECLARATION OF DIANA M. FEINSTEIN IN FURTHER SUPPORT OF META PLATFORMS, INC.'S MOTION TO DISQUALIFY EXPERT RITA SINGH**<br><br>Action Filed:  August 16, 2023<br>Trial Date:  None Set<br>Judge Susan Illston |

Gibson, Dunn & Crutcher LLP

FEINSTEIN DECL. IN FURTHER SUPPORT OF MOT. TO DISQUALIFY R. SINGH
CASE NO. 3:23-CV-04181-SI

I, Diana M. Feinstein, hereby declare as follows:

1. I am an attorney licensed to practice in the States of California and New York. I am a partner at the law firm Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), counsel of record for Defendant Meta Platforms, Inc. ("Meta") in this action. I have personal knowledge of the facts stated below and, if called as a witness, I could and would testify competently thereto.

2. I submit this declaration in further support of Meta's Motion to Disqualify Expert Rita Singh (the "Motion") (ECF No. 120), in order to address new documentary materials and factual assertions that Plaintiff's counsel has put before the Court in Plaintiff's Opposition to the Motion (the "Opposition") (ECF No. 123) and Declaration of Rita Singh (ECF No. 123-2).

3. As I confirmed in my November 7, 2025 declaration supporting Meta's Motion, Gibson Dunn, as counsel for Meta, previously engaged in discussions with Dr. Singh about the possibility that she would serve as an expert witness for Meta in this litigation. Those interactions occurred between March and June 2024, and I personally participated in the discussions as one of Meta's attorneys.

4. My November 7, 2025 declaration contained complete and accurate high-level descriptions of my recollection of Gibson Dunn's March 21, 2024 and June 10, 2024 videoconferences with Dr. Singh, including with respect to the substance of the communications I described in terms of subject matter.[1]

5. Dr. Singh states in her declaration that I never said anything during those videoconferences to the effect of: "We need an expert who can say X" or "We need an expert who can say X because then we can do or avoid A, B, and C." Dr. Singh is correct that I did not make any statements to that effect, as those types of statements do not reflect the approach I would ordinarily take to discussions with potential expert witnesses.

---

[1] As noted in my November 7, 2025 declaration, because the communications with Meta and the experts Meta has considered retaining in this litigation are confidential and protected by the attorney-client privilege and work product doctrine, and because I have no intention of waiving and affirmatively declare I am not waiving any such protections, I have identified the communications by subject matter only consistent with this District's precedents. *Kane v. Chobani, Inc.*, 2013 WL 3991107, at *10 n.5 (N.D. Cal. Aug. 2, 2013) (party moving for expert disqualification based on disclosure of confidential work product need not disclose the protected information). That said, given that the Opposition disputes that work product was shared with Dr. Singh, Meta is simultaneously filing a motion to submit for *in camera* review a more detailed summary of the March 21 videoconference, along with contemporaneous call notes, pending confirmation that the Court will not construe the submission as a waiver of privilege or work product protection.

FEINSTEIN DECL. IN FURTHER SUPPORT OF MOT. TO DISQUALIFY R. SINGH
CASE NO. 3:23-CV-04181-SI

Gibson, Dunn &
Crutcher LLP

6.      I did, however, provide Dr. Singh with substantive information about key facts, arguments, and potential defenses in order to assess her potential fit as an affirmative expert to support Meta's case themes and theories.  I have been practicing law for 18 years, and in my experience, it is impossible to confirm whether an expert will be suitable for a particular case without explaining the case themes and anticipated or actual arguments from the opposing party, and without soliciting the expert's reactions to those arguments in order to develop them, sharing relevant facts and/or doctrinal points that may be important along the way.[2]  I do not necessarily have those substantive discussions with each and every expert I interview for a matter, as it will often be clear based on other information (e.g., information about an expert's qualifications) that an expert will not be compatible with the client's needs, but in my practice such discussions are an important component of the vetting process for experts that a client is very serious about potentially retaining.

7.      Consistent with the above, in determining whether Dr. Singh would be a good fit to serve as Meta's expert in this case, once I was comfortable based on Dr. Singh's representations that she had no conflicts, I disclosed to her certain facts and potential defense theories that I consider central to Meta's defense of this litigation.  That information included my assessment of key allegations, Gibson Dunn's fact investigation findings, anticipated arguments from Plaintiff and potential defense rebuttals, strategies for explaining Meta's contentions and relevant facts in accessible terms, and my mental impressions as to the strengths and weaknesses of the parties' respective cases.

8.      The  information I conveyed to Dr. Singh included (but was not limited to) facts that have since become part of the discovery record, as well as certain documents that happen to be available to the public.  But my selection of this information—as well as the manner in which I conveyed it to Dr. Singh and my commentary on it—was based on what I deemed most important to the case based on my investigation, professional assessment, and privileged discussions with Meta.  It also revealed litigation strategy in that it reflected the information that would underpin the various points that Meta may seek to develop through expert discovery.

---

[2] In this respect, my approach to discussions with potential *expert witnesses* differs substantially from my approach to discussions with *outside auditors*—that is, the third parties specifically referenced in the slide of the inapposite January 2023 CLE presentation cited repeatedly in Plaintiff's Opposition, who are differently situated from testifying experts as a matter of privilege law.

Gibson, Dunn & Crutcher LLP

2

9.      As explained in my November 7, 2025 declaration, I reasonably expected that Dr. Singh understood the confidential nature of our discussions concerning this case.  Having had similarly substantive discussions with many experts in other matters over the years, I have never previously encountered a situation in which it later became apparent that a potential expert did not understand that discussions along the lines described above should be maintained as confidential.  Had I believed there was any risk that Dr. Singh did not appreciate the confidential nature of the discussions, I would not have shared the information we discussed, nor my views regarding that information, during the interview.

10.      Gibson Dunn's discussions with Dr. Singh were relatively brief in duration specifically because I used the interviews to go directly to the core of Meta's legal theories and defenses, and because based on the information Dr. Singh conveyed in reacting to those theories and defenses, I was satisfied that she understood Meta's case and could help affirmatively support its potential theories as a testifying expert.  And the discussions with Dr. Singh advanced to a point where Meta ultimately made the decision to retain her.

11.      Based on the information in Dr. Singh's declaration, it may be that Dr. Singh may not have understood the legal significance that attached to the information I provided, which included factual information that was intertwined with attorney impressions and litigation strategy—that is, attorney work product.  For clarity, however, my communications to Dr. Singh during our videoconferences did include such information.  I would never have shared those communications with opposing counsel or anyone else who I did not believe would know to maintain them as confidential.

12.      To avoid burdening the Court with unnecessary paper, this declaration is limited to only the facts that I believe necessary to clarify the record in light of the assertions and documentary materials that Plaintiff has submitted in support of her Opposition.  For a more complete statement of the facts surrounding Gibson Dunn's discussions with Dr. Singh, as well as other procedural history underlying the Motion, I respectfully refer back to the statements in my November 7, 2025 declaration, all of which I reaffirm as accurate and incorporate here by reference.

Gibson, Dunn &
Crutcher LLP

FEINSTEIN DECL. IN FURTHER SUPPORT OF MOT. TO DISQUALIFY R. SINGH
CASE NO. 3:23-CV-04181-SI

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 20th day of November 2025 in Los Angeles, California.

/s/ Diana M. Feinstein
Diana M. Feinstein

4

FEINSTEIN DECL. IN FURTHER SUPPORT OF MOT. TO DISQUALIFY R. SINGH
CASE NO. 3:23-CV-04181-SI