UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATALIE DELGADO,<br><br>    Plaintiff,<br><br>    v.<br><br>META PLATFORMS, INC.,<br><br>    Defendant. | Case No. 23-cv-04181-SI<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFF'S EXPERT**<br><br>Re: Dkt. Nos. 120, 129 |

Defendant Meta Platforms, Inc. has moved to disqualify plaintiff's expert, Dr. Rita Singh. Dkt. No. 120. The parties agreed to a modified briefing schedule, which the Court approved with slight changes. Dkt. Nos. 121, 122. Given that the motion was filed during the government shutdown, Meta understood that a hearing would not be set, Dkt. No. 121 at 1 n.1, and the Court finds this matter suitable for resolution without oral argument. *See* Civ. L.R. 7-1(b). The Court has reviewed the filings in support of and in opposition to the motion, including declarations from counsel and from Dr. Singh, and has conducted an *in camera* review of Meta's counsel's March 21, 2024 meeting notes and supporting declaration, at Meta's request. For the reasons set forth below, the Court DENIES the motion.

**BACKGROUND**

Plaintiff Natalie Delgado is a citizen of Illinois who has a Facebook account and utilizes the Messenger application, both of which are owned and operated by defendant Meta. Dkt. No. 1, Compl. ¶¶ 25, 148. Plaintiff alleges that during the class period "Meta created, collected, captured, received through trade, stored, and/or otherwise obtained Plaintiff's voiceprint and related biometric information[,]" without complying with the requirements of Illinois's Biometric Information

Privacy Act ("BIPA"), 740 ILCS 14/1 et seq. *Id.* ¶ 151. On August 16, 2023, plaintiff filed this suit, seeking relief for herself and on behalf of a putative class consisting of: "All natural persons in Illinois from whom Meta created, collected, captured, received, obtained, or stored Digital Voice Data, Voice Characteristics, and/or a Voice Profile." *Id.* ¶ 153.

Plaintiff began serving discovery in December 2023 and Meta first served objections and responses in March 2024. Dkt. No. 94, Joint Case Mgmt. Stmt. at 2. Discovery has been ongoing, and the Court approved Meta's request to file an early summary judgment motion related to "whether any data Meta has *actually collected* from the Plaintiff constitutes a 'voiceprint,' a type of 'biometric identifier,' under BIPA." *Id.* at 3; Dkt. No. 97. Under the current schedule, the relevant deadlines are as follows:

| | |
|---|---|
| Plaintiff's Service of Expert Report(s), if any, related to Early Summary Judgment Merits Issues | Oct. 23, 2025 |
| Defendant's Service of Expert Rebuttal Report(s), if any, related to Early Summary Judgment Merits Issues | Nov. 20, 2025[1] |
| Plaintiff's Service of Expert Rebuttal Report(s), if any, related to Early Summary Judgment Merits Issues | Jan. 5, 2026 |
| Completion of Expert Discovery on Early Summary Judgment Merits Issues | Jan. 15, 2026 |
| Defendant to File Early Summary Judgment Motion | Jan. 29, 2026 |

Dkt. No. 102 at 2.

The present motion came about after plaintiff served an expert report authored by Dr. Rita Singh on October 23, 2025. At that time, Meta's outside counsel from Gibson, Dunn & Crutcher LLP "immediately recognized Dr. Singh by name" and flagged a conflict of interest, in light of discussions Gibson Dunn had with Dr. Singh "over the course of three months" in 2024. Dkt. No. 120-2, Feinstein Decl. ¶¶ 1, 27. According to the declarations from Meta's counsel, "[o]n March 20, 2024, Gibson Dunn contacted Dr. Rita Singh of Carnegie Mellon University to discuss the possibility of retaining her as an expert for Meta in this litigation." *Id.* ¶ 4. The email

---

[1] This deadline was stayed pending resolution of the present motion. Dkt. No. 122.

correspondence shows that Gibson Dunn reached out to Dr. Singh on behalf of Meta, stating, "We would love to speak with you further about this matter to the extent you have no conflicts." Dkt. No. 120-4, Feinstein Decl., Ex. 2 at 1. A call was arranged for the following day. *Id.* at 9-10.

The precise contents of the call are in dispute. Dr. Singh estimates the call lasted approximately 30 minutes. Dkt. No. 123-2, Singh Decl. ¶ 13. Dr. Singh and Gibson Dunn discussed Dr. Singh's credentials and some of her work in other lawsuits. *Id.*; Feinstein Decl. ¶ 10. Gibson Dunn asked if she had spoken to plaintiff's counsel about this case. Singh Decl. ¶ 13; Feinstein Decl. ¶ 9. Dr. Singh confirmed she had not and advised that she believed she had no conflicts of interest. Feinstein Decl. ¶ 9. According to Dr. Singh,

> We discussed potential factual information, in a general, non-specific manner. I say "potential factual information" because I do not/did not know if the discussion involved hypothetical facts or actual facts. Meta's Counsel did not discuss litigation or other strategies, legal theories, defense arguments, anticipated theories or arguments, strengths or weaknesses of the case, potential experts, or expert arguments or theories.

Singh Decl. ¶ 13. According to Gibson Dunn, after confirming Dr. Singh had no prior involvement in the case or any other potential conflicts of interest,

> I then shared with her certain information relevant to Meta's assessment of the case. That information included Gibson Dunn's assessment of key allegations in Plaintiff's complaint, findings uncovered during Gibson Dunn's fact investigation into Meta's internal practices, anticipated arguments that Plaintiff might make and Meta's potential defense arguments, strategies for explaining Meta's contentions and relevant facts in terms that would be understandable to the factfinder, and Gibson Dunn's mental impressions as to the strengths and weaknesses of Meta's and Plaintiff's respective cases.

Feinstein Decl. ¶ 10.

Later that day after the call, Gibson Dunn sent a follow-up email attaching a copy of the complaint and a pdf of the issued patent.[2] *See* Feinstein Decl., Ex. 3 at 8. Dr. Singh responded that same day,

> Dear Paige and all,

---

[2] Plaintiff notes that the patent was cited in the complaint and is publicly available. Dkt. No. 123, Opp'n at 10.

3

> Received, thank you. It was nice to touch base with you today.
> I looked over these. The patent is a landmine, and I am not surprised at the lawsuit.
> Shouldn't have been filed in the first place.
>
> I am ok with this engagement. Caveat and fyi -- I am an expert on the other side of the BIPA fence in two cases, one of which is probably closed by now.
>
> Let me know if you'd like to proceed with this. If so, and post-formalities, I'd like to begin with giving you my take on the counts, and would ask for a bunch of interviews with the inventor and some of your SID and ASR technical team members.
>
> Best wishes
> Rita

Feinstein Decl., Ex. 3 at 7.

Based on the email thread, Gibson Dunn did not reply to Dr. Singh until April 22, 2024, when a member of their team sent the following email:

> Hi Professor Singh,
>
> Hope you are doing well. As an update, we are currently working through things with the client regarding the expert role. Thank you so much for your patience. You are still very much at the top of our list. If you don't mind hanging tight, we will be in touch. Thanks again!
>
> Best,
> Paige

*Id.*

The next email in the thread is dated June 3, 2024:

> Hi Professor Singh,
>
> We are getting further into the expert retention process and wanted to schedule a meeting to discuss the role further and introduce you to some of the other attorneys working on this matter.
>
> Would you be free to meet Monday June 10, at 10:00 am PT (1:00 pm ET), Tuesday June 11, at 10:00 am PT (1:00 pm ET), or Wednesday June 12 at 1:00 pm PT (4:00 pm ET)?
>
> Thank you for your time and we look forward to discussing!

*Id.* at 6.

On June 3, 2024, Dr. Singh replied as follows:

> Dear Prachi,
>
> Monday June 10th should work for me. However, could you please

4

> remind me which case this is... sorry about this but too many things have been happening and I have lost track of who is related to what .. :-(
>
> This may not bode well for you either :-)
>
> Best wishes
> Rita

*Id.* at 5-6. Following some scheduling emails, a call was set for June 11, 2024. *See id.* at 4-5.

On June 6, 2024, Gibson Dunn sent another email as follows:

> Hi Rita,
>
> If possible, would be great for us to connect just the Gibson Dunn team and you for 15 minutes before we have the call on Tuesday with Meta counsel. Would the 10 am PT/1 pm ET spot on Monday, June 10 still work for that initial touchbase call, before the call with the client on Tuesday at the same time?

*Id.* at 3. Defense counsel declares that "Gibson Dunn intended these calls to be strictly *pro forma* given that Meta had already made the decision to formally engage Dr. Singh." Feinstein Decl. ¶ 18.

On June 10, 2024, Gibson Dunn and Dr. Singh participated in "the scheduled pre-call" via Zoom. *Id.* ¶ 19. Gibson Dunn states that it "reiterated the information discussed with Dr. Singh during the retention interview on March 21, including with respect to the legal theories, affirmative themes, and defenses that Meta intended to develop using expert testimony and the particular arguments that Gibson Dunn anticipated would be central to the case." *Id.* ¶ 20. According to Gibson Dunn, Dr. Singh "indicated that she remained willing and able to serve as Meta's expert on this case." *Id.* ¶ 21. Gibson Dunn followed up that call with an email asking Dr. Singh for the name of the other BIPA case Dr. Singh was working on. Feinstein Decl., Ex. 3 at 1.

On June 11, 2024, less than an hour before the scheduled call with Meta's in-house attorneys, Dr. Singh sent an email stating,

> Dear Prachi,
>
> I checked with the lawyers. Not so good news.
> The case Zaluda vs. Apple. However, Apple has listed competitors, and Meta is probably on that list. Working with Meta would likely disqualify me as an expert for the plaintiff, and that case is still underway...
>
> Let me know if you still want to have the meeting today.
>
> Best wishes
> Rita

5

*Id.*; Feinstein Decl. ¶ 23. Accordingly, "Gibson Dunn believed that [Dr. Singh] could not serve as Meta's expert in this matter and so ultimately retained a different testifying expert." Feinstein Decl. ¶ 25. Meta and Dr. Singh had no relationship prior to the one detailed above, Meta did not present her with an engagement letter or retainer agreement, and Meta did not pay her. Singh Decl. ¶¶ 7-9.

Plaintiff's counsel declares that they had no interactions with Dr. Singh before February 2025. Dkt. No. 123-1, Green Decl. ¶ 11. In early March 2025, plaintiff's counsel entered into a retention agreement with Dr. Singh. *Id.* The record does not indicate, and plaintiff does not say, whether plaintiff's counsel was aware of Dr. Singh's contact with Meta regarding this case before Meta raised the issue. As noted above, Meta states that it first learned plaintiff had retained Dr. Singh on the date plaintiff served her expert report.

## LEGAL STANDARD

"Federal courts have the inherent power to disqualify expert witnesses to protect the integrity of the adversary process, protect privileges that otherwise may be breached, and promote public confidence in the legal system." *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004) (citations omitted). "Courts generally disqualify an expert based on a prior relationship with an adversary if '(1) the adversary had a confidential relationship with the expert and (2) the adversary disclosed confidential information to the expert that is relevant to the current litigation.'" *Kane v. Chobani, Inc.*, No. 12-cv-2425-LHK, 2013 WL 3991107, at *5 (N.D. Cal. Aug. 2, 2013) (quoting *Hewlett-Packard*, 330 F. Supp. 2d at 1092). "[I]f only one of the two factors is present, disqualification likely is inappropriate." *Hewlett-Packard*, 330 F. Supp. 2d at 1093 (citations omitted). In addition, courts also weigh such policy considerations as "whether disqualification would be fair to the affected party and would promote the integrity of the legal process." *Id.* "The party seeking to disqualify an expert carries the burden to establish that disqualification is warranted." *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, No. 20-MD-02966-RS, 2022 WL 393208, at *2 (N.D. Cal. Feb. 9, 2022) (citing *Hewlett-Packard*, 330 F. Supp. 2d at 1094).

## DISCUSSION

### I.  Confidential Relationship

The Court first examines whether Meta had a confidential relationship with Dr. Singh, i.e., whether Meta has met its "burden of demonstrating that it was reasonable for it to believe that a confidential relationship existed." *See Hewlett-Packard*, 330 F. Supp. 2d at 1093. The Court has little difficulty in finding that Meta has not cleared this bar.

In *Hewlett-Packard*, the court found the moving party had not met its burden to show that a confidential relationship stemmed from an initial one-hour pre-retention call with a subsequently retained expert. 330 F. Supp. 2d at 1096. The court found it "strains credulity to argue that, only a few weeks after contacting an [sic] potential expert witness, EMC's counsel would disclose aspects of its litigation strategy to someone who had not yet signed a confidentiality agreement and that such a conversation could have occurred in the span of a one-hour conversation in which [the expert] was alleged to have discussed his views of claims in six separate and technically complex patents." *Id.* So too here. Meta essentially states that in a thirty-minute call with a non-retained expert whom it had contacted only one day prior and with whom it had no preexisting relationship Meta's counsel divulged privileged and confidential information that it would not have shared if it had known Dr. Singh had a conflict. *See* Feinstein Decl. ¶¶ 10-12. This strains credulity.

The cases on which Meta relies do not help it. Nearly all of Meta's cited cases involved motions to disqualify experts that the moving party had actually retained. *See* Dkt. No. 120, Mot. at 5. In *Calendar Research LLC v. Stubhub, Inc.*, for instance, an expert had been formally retained by both sides as part of pre-filing settlement negotiations and received confidential source code from the parties, pursuant to a signed confidentiality agreement. No. 17-cv-4062-SVW-SS, 2017 WL 10378337, at *1-2 (C.D. Cal. Sept. 22, 2017). When the plaintiff later retained this same expert to opine on whether the defendant had misappropriated trade secrets, the court disqualified the expert. *Id.* at *2-4. In *Chobani*, the district court granted the defendant's motion to prohibit a consulting group, which had entered into an ad hoc consulting and confidentiality agreement with the defendant, from discussing issues in the case with plaintiffs' counsel. 2013 WL 3991107, at *2, 6. There, the defendant and consultant had "repeated, detailed, and confidential strategy sessions"

1    including roughly seven in-person and phone meetings over an eight-month period.[3] *Id.* at *2, 6;
2    se*e also Cooper v. Quora*, No. 18-cv-7597-BLF (NC), 2020 WL 7408231 (N.D. Cal. July 15, 2020)
3    (disqualifying expert who had been formally retained by the defendant and subsequently retained
4    by the plaintiff in the same case).

5    Meta is correct that the absence of a formal retention agreement is not dispositive. *See*
6    *Hewlett-Packard*, 330 F. Supp. 2d at 1093. Nevertheless, the existence or absence of a formal
7    retainer goes to the reasonableness of counsel's belief that a confidential relationship existed. *See*
8    *id.* ("The emphasis . . . is not on whether the expert was retained per se but whether there was a
9    relationship that would permit the litigant reasonably to expect that any communications would be
10   maintained in confidence.") (citing *In re Ambassador Group, Inc., Litig.*, 879 F. Supp. 237, 243
11   (E.D.N.Y. 1994)). The most analogous case that Meta cites, in which the court disqualified an
12   expert whom the moving party had not formally retained, is from the District of New Jersey. *See*
13   *M&T Bank v. Worldwide Supply LLC*, Civil Action No. 20-6378 (MCA) (MAH), 2022 WL 1673689
14   (D.N.J. June 28, 2022). Even there, the defendant had much more of a reasonable belief that a
15   confidential relationship had been formed, where the potential expert specifically requested "a
16   confidential timeline/summary document prepared by [Defendants]" and where the defendant
17   supplied one in an email that clearly flagged in the subject line: "M&T Bank v. Worldwide Supply
18   LLC – key papers ATTORNEY WORK PRODUCT – PRIVILEGED AND CONFIDENTIAL."
19   *See id.* at *2.

20   Here, Meta had no retainer or confidentiality agreement with Dr. Singh and points to no
21   other factors showing it was reasonable for Meta to believe a confidential relationship had been
22   formed. Meta had two video calls with Dr. Singh over a roughly 2.5-month period. Dr. Singh's
23   declaration indicates the first call lasted approximately 30 minutes. Singh Decl. ¶ 13. She does not
24   specify how long the second call lasted, but the record reflects that Gibson Dunn anticipated the
25   second call would take 15 minutes. *See* Feinstein Decl., Ex. 3 at 3. So much time elapsed between

---

[3] Meta misstates that the court in *Chobani* "disqualif[ied a] party's expert[.]" *See* Mot. at 5. The motion there was not one for expert disqualification; rather, the defendant sought a ruling barring the outside consultant it had retained from discussing issues in the case with opposing counsel. *See Chobani*, 2013 WL 3991107, at *5.

8

the two calls that when Gibson Dunn reached out about scheduling a second call, Dr. Singh requested a reminder as to what case this even involved. *See* Feinstein Decl., Ex. 3 at 5. The email thread shows that Gibson Dunn did not reply to her question. *See id.* Meta's counsel declares that as of June 2024 "Meta had already made the decision to formally engage Dr. Singh[,]" Feinstein Decl. ¶ 18, but there is no indication this intent was communicated to Dr. Singh, and Dr. Singh seems to have been unaware. Indeed, counsel's email to Dr. Singh—who by this time had not met with Meta's counsel since March 21—characterizes the upcoming June meeting with Meta's in-house counsel as intended "to discuss the role further and introduce you to some of the attorneys working on this matter." *See* Feinstein Decl., Ex. 3 at 6.

To summarize, Meta lacked any sort of formal agreement with Dr. Singh, did not communicate to Dr. Singh that it was preparing any sort of agreement or planned to retain her, did not pay Dr. Singh, did not provide her with any written work product, and did not label any of its communications as privileged or confidential. In light of all this, the Court finds Meta has not met its burden of showing it had a confidential relationship with Dr. Singh.

## II. Confidential Information

Having found that Meta has not met the confidential relationship test, the Court need not analyze whether Meta has sufficiently demonstrated that it "disclosed confidential information to the expert that is relevant to the current litigation." *See Hewlett-Packard*, 330 F. Supp. 2d at 1093. However, at Meta's request, the Court reviewed *in camera* Gibson Dunn's March 21, 2024 meeting notes and a supporting declaration. *See* Dkt. Nos. 127, 128, 130. Having done so, the Court is not persuaded that information shared during that initial 30-minute call warrants disqualification of Dr. Singh as plaintiff's expert. Although it appears that the parties to the call did get into the substance and technical details of the allegations and Meta's anticipated defenses, the Court sees nothing that would constitute "specific and unambiguous disclosures that if revealed would prejudice" Meta. *See Hewlett-Packard*, 330 F. Supp. 2d at 1094.[4] It is worth noting that by the time plaintiff first

---

[4] As plaintiff notes, the second call on June 10, 2024, appears to have been largely repetitive

9

contacted Dr. Singh in February 2025, the parties had already litigated a motion to dismiss, Meta had answered the complaint, and the parties had engaged in significant exchange of discovery, all of which would have put plaintiff on notice of Meta's defenses in this case.

### III. Fundamental Fairness and Policy Considerations

Finally, the Court finds that fundamental fairness and policy objectives weigh against Dr. Singh's disqualification. At this step, courts consider "any prejudice that might occur if an expert is or is not disqualified[.]" *Chobani*, 2013 WL 3991107, at *7. "Additionally, the Court must consider other policy concerns 'to achieve the goal of protecting the integrity of the adversary process and of promoting public confidence in the legal system[.]'" *Id.* (citation omitted).

Here, several factors militate against disqualification. This case is not, as Meta asserts, in the early stages. Rather, discovery has been open for roughly two years, and the summary judgment motion that Meta requested is due in few months. This factor weighs against disqualification, as disqualification at this stage would significantly burden plaintiff. *See id.* (barring consultant from discussing issues in the case with the plaintiff, where discovery had not yet commenced); *In re Xyrem*, 2022 WL 393208, at *5 (disqualifying expert where case was "in the early stages of litigation, and Class Plaintiffs will have an adequate opportunity to find and retain other expert witnesses"); *Quora*, 2020 WL 7408231, at *3 (same, where discovery cut-off was more than six months away). Additionally, this is not a case where the party opposing disqualification could easily seek a replacement. *See In re Xyrem*, 2022 WL 393208, at *5 (plaintiffs "have not argued that it will be difficult to find an expert able to opine on the issues at hand"); *M&T Bank*, 2022 WL 16743689, at *5 (disqualifying expert in case where plaintiff did not assert the expert possessed "useful specialized knowledge that will be difficult to replace") (internal quotation marks omitted). The Court has reviewed Dr. Singh's expert report and credits plaintiff's position that it will be difficult to replace Dr. Singh, given the technically complex field of voice biometrics and the fact that many individuals with expertise in this field will be conflicted out by virtue of past or present

---

of the first, and perhaps of shorter duration. *See* Feinstein Decl. ¶ 20; Feinstein Decl., Ex. 3 at 3.

employment with Meta or one of its competitors. *See* Opp'n at 23-24.

Finally, the Court disagrees with Meta's characterization that this is a mess of plaintiffs' own making. The record reflects that Meta did not follow up on a potential conflict that Dr. Singh flagged immediately following the initial March 21, 2024 meeting. In an email to Meta's counsel later in the day after that first phone call, Dr. Singh wrote in an email to Gibson Dunn: "I am ok with this engagement. Caveat and fyi -- I am an expert on the other side of the BIPA fence in two cases, one of which is probably closed by now." Feinstein Decl., Ex. 3 at 8. Gibson Dunn did not follow up. Inexplicably, Meta's reply brief asserts that the record does not show Dr. Singh alerted Meta to this. *See* Reply at 13 n.8. The record clearly shows that Dr. Singh did do this, in an email time-stamped 2:46 p.m. on March 21, 2024, addressed to the Gibson Dunn team. *See* Feinstein Decl., Ex. 3 at 7-8. The next email in the thread is from Gibson Dunn on April 22, 2024, and does not address the conflict that Dr. Singh raised on March 21. *See id.* at 7. Although it is true that plaintiff should have identified the potential conflict and raised it to Meta before serving her expert report, it is also the case that early on Meta had information about Dr. Singh working for the opposite side in other like cases but did not follow up.

In sum, disqualification of Dr. Singh at this stage would prejudice plaintiff, and the Court does not find that the relationship between Meta and Dr. Singh was of such a nature that allowing Dr. Singh to testify for plaintiff would undermine the integrity of the adversarial process. Instead, this is one of those cases in which the Court must take care that an expert is not too easily disqualified, lest attorneys attempt to create relationships with potential experts in order to preempt their adversaries from obtaining expert assistance. *See Chobani*, 2013 WL 3991107, at *7 (citations omitted).

For the reasons set forth above, the Court DENIES Meta's motion to disqualify Dr. Singh.

**CONCLUSION**

The Court DENIES Meta's motion to disqualify plaintiffs' expert Dr. Rita Singh. Dkt. No. 120. The Court DENIES plaintiff's motion for reconsideration of the order granting Meta's request for *in camera* review. Dkt. No. 129. A separate order shall issue on the administrative motion to

11

seal. Dkt. Nos. 124, 125.

Pursuant to the parties' agreement entered at Dkt. No. 122, Meta shall serve its expert report within 14 days from today. In light of the upcoming holiday, the Court gives the parties until December 2, 2025, to jointly file a proposed amended schedule.

**IT IS SO ORDERED**.

Dated: November 21, 2025

SUSAN ILLSTON
United States District Judge