**FILED UNDER SEAL**

**ARIAS SANGUINETTI WANG & TEAM LLP**
Mike Arias (CSB #115385)
Elise R. Sanguinetti (CSB #191389)
Arnold C. Wang (CSB #204431)
Craig S. Momita (CSB #163347)
M. Anthony Jenkins (CSB #171958)
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: (310) 844-9696
mike@aswtlawyers.com
elise@aswtlawyers.com
arnold@aswtlawyers.com
craig@aswtlawyers.com
anthony@aswtlawyers.com

**GOLDENBERG HELLER & ANTOGNOLI, P.C**
Thomas P. Rosenfeld (admitted *pro hac vice*)
Kevin P. Green (admitted *pro hac vice*)
Thomas C. Horscroft (admitted *pro hac vice*)
Daniel S. Levy (admitted *pro hac vice*)
2227 South State Route 157
Edwardsville, Illinois 62025
Telephone: (618) 656-5150
tom@ghalaw.com
kevin@ghalaw.com
thorscroft@ghalaw.com
daniel@ghalaw.com

*Attorneys for Plaintiff Natalie Delgado*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATALIE DELGADO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:23-cv-04181-SI<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing:    May 15, 2026<br>Time:      10:00 a.m.<br>Location:  Courtroom 1—17th Floor<br>Judge:    Hon. Susan Illston |

-1-

**TABLE OF CONTENTS**

I.      INTRODUCTION ...............................................................................................................1

II.     FACTS ...............................................................................................................................2

        A.      Meta's Business, Linked Authentic Identities, and Predictive Infrastructure.................3

        B.      The Human Voice and Digital Voice Data ......................................................................4

        C.      How Speaker Identification Technology Works..............................................................4

        D.      Meta Processes and Stores Digital Voice Data from Facebook and Messenger Users ███████████████████..............................6

        E.      Meta's ███████████████................................................7

        F.      Meta Uses Facebook and Messenger Digital Voice Data ████████ ████ ....................................................................................................9

        G.      Digital Voice Data is ███████████████████" ..........................................10

        H.      Digital Voice Data is Further Linkable to Identities via Meta's Wealth of User Data, ████████████████████ ....................11

III.    LEGAL STANDARD...........................................................................................................14

IV.     ARGUMENT .......................................................................................................................14

        A.      Plaintiff's Digital Voice Data is Not a "Mere Voice Recording"—It Is Capable of Being Used to Identify Her and a "Biometric Identifier" under BIPA.....................14

                1.      BIPA Applies to Digital Voice Data that is Capable of Being Used to Identify, Alone or in Conjunction with Other Available Methods and Information, a Factual Inquiry Precluding Summary Judgment for Meta ........14

                        a.      BIPA's two-tier structure: biometric identifiers are inputs; biometric information is derived output................................................16

                        b.      Collecting a biometric identifier triggers BIPA regardless of whether biometric information was created........................................17

                        c.      BIPA requires capability, not certainty ................................................18

                2.      BIPA Does Not Exclude Digital Voice Data that Can be Used to Identify ................................................................................................18

                3.      Requiring Disclosure and Consent Here Aligns with BIPA's Purpose ...........19

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-CV-04181-SI

B.    On this Record, a Reasonable Person Could Easily Conclude That Meta Is Capable of Using Digital Voice Data to Identify Plaintiff............................................21

    1.    Meta's "Actually Linked" Standard Is Wrong—BIPA Applies to Biometric Data That Is Linked Or Could Be Linked to Identity ....................21

    2.    Meta Has the Technology, Data, and Mechanisms to Use Plaintiff's Digital Voice Data to Identify Plaintiff.............................................21

        a.    Plaintiff's Digital Voice Data is already linked to what Meta calls her " ████████████████████████ ....................................22

        b.    Meta's linking mechanisms go far beyond account linkage and make Meta capable of further linking the voice in Digital Voice Data to Plaintiff.......................................................23

V.    CONCLUSION............................................................................25

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-CV-04181-SI

## TABLE OF AUTHORITIES

**Cases**                                                                                                 **Page(s)**

*Balzer v. Ne. Ill. Reg'l Commuter R.R. Corp.*,
2026 IL App (1st) 232227 ................................................................................................... 19

*Bd. of Educ. of Springfield Sch. Dist. No. 186 v. AG of Ill.*,
77 N.E.3d 625, 631 (Ill. 2017) ......................................................................................... 19

*Bulthuis v. Rexall Corp.*,
789 F.2d 1315 (9th Cir. 1985) ..................................................................................... 14, 25

*Castelaz v. Estée Lauder Co., Inc.*,
2024 U.S. Dist. LEXIS 7321 (N.D. Ill. Jan. 10, 2024) ............................................... 15, 22

*Clarke v. Aveda Corp.*,
704 F. Supp. 3d 863 (N.D. Ill. 2023) ............................................................................... 15

*Cothron v. White Castle Sys.*,
216 N.E.3d 918 (Ill. 2023) ............................................................................................... 21

*Daichendt v. CVS Pharmacy, Inc.*,
2022 U.S. Dist. LEXIS 217484 (N.D. Ill. Dec. 2, 2022) ................................................. 15

*Daichendt v. CVS Pharmacy, Inc.*,
2023 U.S. Dist. LEXIS 89451 (N.D. Ill. May 4, 2023) ................................................... 15

*Fleury v. Union Pac. R.R. Co.*,
2023 U.S. Dist. LEXIS 221741 (N.D. Ill. Dec. 13, 2023) ............................................... 21

*G.T. v. Samsung Elecs. Am., Inc.*,
742 F. Supp. 3d 788 (N.D. Ill. 2024) ........................................................................... 22, 25

*Hartman v. Meta Platforms, Inc.*,
2024 U.S. Dist. LEXIS 167696 (S.D. Ill. Sep. 17, 2024) ................................................ 15

*Howe v. Speedway LLC*,
2024 U.S. Dist. LEXIS 176263 (N.D. Ill. Sep. 29, 2024) ......................................... *passim*

*In re Facebook Biometric Info. Privacy Litig.*,
326 F.R.D. 535 (N.D. Cal. 2018) ............................................................................. 17, 18, 22

*In re Fisher*,
421 F.3d 1365 (Fed. Cir. 2005) ........................................................................................ 24

*Jenkins v. Regal Cinemas*,
2025 LX 117866 (N.D. Ill. Jan. 13, 2025) ...................................................................... 16

*Ji v. Naver Corp.*,
2023 U.S. Dist. LEXIS 178311 (N.D. Cal. Oct. 3, 2023) ......................................... 15, 22, 25

*Konow v. Brink's, Inc.*,
721 F. Supp. 3d 752 (N.D. Ill. 2024) ............................................................................... 15

*Maffei v. N. Ins. Co.*,
 12 F.3d 892 (9th Cir. 1993)................................................................................................. 14

*McGoveran v. Amazon Web Services*
 2023 U.S. Dist. LEXIS 53690 (D. Del. Mar. 29, 2023)...................................................... 19

*Patterson v. Respondus, Inc.*,
 593 F. Supp. 3d 783 (N.D. Ill. 2022) ................................................................................. 19

*Rivera v. Google Inc.*,
 238 F. Supp. 3d 1088 (N.D. Ill. 2017) .......................................................................... 18, 19

*Robinson v. Lake Ventures LLC*,
 2023 U.S. Dist. LEXIS 156296 (N.D. Ill. Sep. 5, 2023)............................................... 14-15

*Rodriguez v. ByteDance, Inc*,
 2025 LX 123727 (N.D. Ill. Mar. 3, 2025)...................................................................... 15, 19

*Rosenbach v. Six Flags Entm't Corp.*,
 129 N.E.3d 1197 (Ill. 2019) ................................................................................................ 18

*Tapia-Rendon v. Workeasy Software, LLC*,
 2025 LX 394768 (N.D. Ill. Aug. 8, 2025)............................................................... 16, 19, 23

*Taylor v. 48forty Sols., LLC*,
 2024 U.S. Dist. LEXIS 64573 (N.D. Ill. Apr. 9, 2024) ................................................ 14, 17

*Thomas v. Newton Int'l Enters.*,
 42 F.3d 1266 (9th Cir. 1994)...................................................................................... 1, 13, 16

*Tibbs v. Arlo Techs., Inc.*,
 2024 U.S. Dist. LEXIS 113916 (N.D. Cal. June 27, 2024)................................................ 19

*Zellmer v. Meta Platforms, Inc.*,
 104 F.4th 1117 (9th Cir. 2024)...................................................................................*passim*

**Statutes**

740 ILCS 14/10 .............................................................................................................*passim*

740 ILCS 14/15 ....................................................................................................................... 17

740 ILCS 14/15(e)(2)............................................................................................................... 22

740 ILCS 14/20 ....................................................................................................................... 20

Ill. Public Act 103-0769 (enacted Aug. 2, 2024) ................................................................... 18

**Other Authorities**

Black's Law Dictionary (7th ed 1999)...................................................................................... 20

## I.    INTRODUCTION

A BIPA "voiceprint" is "data unique to an individual that *could be used* to identify someone rather than as data that *was used* to identify someone." Dkt. 55 at 10. *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117 (9th Cir. 2024) confirmed this capability standard and explained whether a voiceprint is a biometric identifier turns on context—a factual inquiry examining how the data is "saved or stored" and whether defendant *could* use the data collected to, *inter alia*, "derive information about a person" or had "any other data" "that *could* be used to recognize or identify." *Id.* at 1121, 1125-26. *See* § IV.A.1.

Meta seeks summary judgment on the factual question, relying on cases involving *non-users*, where defendants lacked *any* means or data to connect biometric data to identities. That is not this case. *See* § IV.B. Meta is not simply storing mere voice recordings. It is a multi-billion-dollar enterprise that ████████████████████████████████████ The record shows it is capable of using that voice data to identify.

Meta claims it cannot link the voice data it collects to Plaintiff. Its own privacy policies quickly dispel that notion. Meta identifies "voice recordings" as data it collects that "could reasonably be linked with *you*, directly or indirectly" and "may be used to identify *you*." Dkt.35-4 at 1-2, 2-4. Dr. Rita Singh's detailed, factually supported expert opinions ████████ and independently defeat summary judgment. *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1270 (9th Cir. 1994). Meta selectively quotes Dr. Singh's testimony to suggest it cannot link the data, but in testimony Meta omits, she said clearly: "████████████████████." On this record, a reasonable person could easily find Meta is capable of using Plaintiff's Digital Voice Data to identify her.

Meta also makes several legal arguments that improperly narrow BIPA's scope. *See* § IV.A. Its claim that BIPA covers only the output templates of recognition technology—not the input data—ignores that BIPA regulates both: the captured biological data (fingerprints, face scans, voiceprints) as biometric *identifiers*, and the "derived" templates as biometric *information*. Fingerprints, like

-1-

voiceprints, are not templates (a "series of numbers") made by technology. *Howe v. Speedway LLC*, 2024 U.S. Dist. LEXIS 176263 (N.D. Ill. 2024). Its argument that BIPA applies only if output templates were created also renders the biometric identifier definition superfluous and ignores BIPA's disjunctive "or." And its demand for certainty ignores that all biometric identification is probabilistic. Meta's own facial recognition system—the subject of prior BIPA litigation—matched only 67% of faces with users. Its ███████████████████████████████████████. Finally, Meta's claim that Digital Voice Data is categorically excluded from BIPA fails. *See* § IV.A.2. BIPA contains several categorical exclusions, but none for Digital Voice Data. Yet the Court need not even reach whether "mere voice recordings" should be excluded, because as this Court noted, "[v]oice recordings *which may be used to identify a person* are more than mere 'voice recordings.'" Dkt. 55 at 11. Meta is capable of using the Digital Voice Data it collects to identify, making it more than a mere voice recording.

Meta leans heavily on policy arguments, invoking doom-and-gloom for anyone who possesses voicemails, podcasts, or home videos. These too lack merit. *See* § IV.A.3. Legislatures decide policy, and BIPA must be applied as written, "even though the consequences may be harsh, unjust, absurd, or unwise." *Zellmer*, 104 F.4th at 1122. Still, Meta's hypotheticals are overblown and ignore *Zellmer*'s capability and context analysis, which looks to what the defendant *has*—not just what is publicly-available. Plaintiff does not ask the Court to hold that every voice recording or voicemail is a BIPA voiceprint. She asks the Court to hold that this voice data—collected by this company, ██████ ██████████████████████████████████████████████████████████████████████—triggers the notice and consent requirements that BIPA has always required. That is not a novel theory. It is the straightforward application of a statute that does not prohibit collection of the voice data, but whose core command has never been complicated: *ask first*. Summary judgment for Meta is unwarranted.

## II. FACTS[1]

1. As described below, ███████████████████████████████████████████ ████████████████████████████████████████████████████████████

---

[1] Exhibits 1-30 are attached to the declaration of Kevin Green filed herewith. Dr. Singh's reports are attached to her concurrently filed declaration. "MD_" indicates Bates stamp "Meta-Delgado_" (initial zeros excluded). Patent citations are to column, line number unless page number is indicated with "p."

-2-

[REDACTED]

2. Meta acknowledges that Digital Voice Data "could reasonably be linked with you, directly or indirectly" and "may be used to identify you." Dkt. 35-4, Meta U.S. Regional Privacy Policy, 1-2, 2-4.

3. Dr. Singh explains: "[REDACTED]." Singh Decl. Ex. 1 ("Singh") at 1, 86-87.

**A. Meta's Business, Linked Authentic Identities, and Predictive Infrastructure**

4. Meta owns and operates Facebook and Messenger. Dkt. 1, 57 ¶¶ 3-4. At its core, Meta is a digital advertising company, generating "substantially all" revenue from advertising. Ex. 1, Meta 10-K (2025) at 71, 73 (98% of Meta's revenue in 2025—$196.1 billion of $200.9 billion—from ads).

5. "Authentic Identity" of users is "the cornerstone" of Meta's business. Meta requires Facebook users "to create one account using the name they go by in everyday life that represents their authentic identity," prohibits accounts from being "used by more than one person," and prohibits users from "impersonat[ing] another person" by, *inter alia* "speaking in the voice of another person." Ex. 2.

6. Every Facebook or Messenger User account has a Facebook User ID, or "Account Identifier" (also called a Facebook ID or FBID). Ex. 3, Meta Dep. (Alvarado) 27:22-28:7; Ex. 4, Meta Dep. (Wang) 65:19-66:6; Ex. 5, Meta Supp. Resp. to Pl. 2d Int. at 5. Every FBID is connected t[REDACTED], including, *inter alia*, [REDACTED]." Ex. 5, Meta Supp. Resp. to Pl. 2d Int. at 6-23. Meta [REDACTED]." Ex. 6, MD_8589.

7. Meta's business revolves around inference and predictive analysis to associate user data to people. Meta's systems: "automatically process information . . . associated with you and others"; create "[i]nformation derived from other Personal Information about you"; and "try to predict your ad interests

-3-

based on the information we have." Ex. 7, Meta Priv. Pol. at 64, 86 n.87; Dkt. 35-4 at 3. Meta makes



Ex. 3, Meta Dep. (Alvarado) 79:2-5, 128:23-129:7; Ex. 8, MD_7951. Meta's predictive inferences ▮▮▮▮▮▮▮▮▮▮. *Id.*; Ex. 9, MD_8013. Ex. 10, MD_8586 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮").

### B.  The Human Voice and Digital Voice Data

8.  A human voice is an acoustic pressure wave (or "voice signal") created in the vocal tract carrying distinctive information about the speaker's unique identity. Singh at 12, 16. A digital (*i.e.*, mathematically measured) imprint/representation of the voice signal is "Digital Voice Data." *Id.* at 17; Ex. 10, Meta Dep. (Pino) 34:7-14. To capture it, microphones transduce an analog sound wave into an electrical signal; machines then "sample" the signal at regular intervals, assigning each sample a value. These mathematically measured values are adjusted to fit within certain numerical ranges the digital system allows ("quantized"), then encoded for storage. Singh at 16. The industry standard for capturing Digital Voice Data preserves the essential acoustic information of the speaker's voice signal and includes all data needed to identify someone from their voice. *Id.* at 17-18.

### C.  How Speaker Identification Technology Works

9.  Digital Voice Data is the input for speaker ID systems. *Id.* at 21. To identify someone, a speaker ID "model uses the voice in . . . [an] audio recording" as the "standard input audio file." Mot. at 3; Ex. 10, Meta Dep. (Pino) 43:23-25 ("▮▮▮▮▮▮▮▮▮▮▮▮.").

10. Speaker ID technology derives data based on the Digital Voice Data to create a "template" or "Derivative Digital Voice Data" (what Meta calls a "speaker embedding" or "Output Representation"). Singh at 3-4, 20, 25; Mot. at 2; Ex. 11, Meta Dep. (Seltzer) 295:5-18 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."). "▮▮▮▮▮▮▮▮

-4-

███████████████████████████████████." Ex. 11, Meta Dep. (Seltzer) 29:10-13.

11. Derivative Digital Voice Data is a series of "numbers [that] do not reveal what the speaker's voice sounds like, nor can they be reverse engineered to discern the speaker's voice characteristics or identity." Mot. at 3. Derivative Digital Voice Data differs, and cannot be used, ████████████. ████. Ex. 11, Meta Dep. (Seltzer) 238:14-16 (████████████████████████████████████████████████████████████); Ex. 12, Traynor Rep. at 29 (███████████████████████████████████████████████████████████████████████████████████████").

12. In contrast, Digital Voice Data is interoperable with various speaker ID models and can be reverse-engineered to discern a speaker's voice characteristics and identity, such as via "playback" or "process[ing] by various speech-processing technologies." Mot. at 2. Thus, a speaker ID model "analyzes a recording . . . and uses it" to "determine[] that the voice in the new file likely also belongs to [a person]." Mot. at 2, 4; Ex. 10, Meta Dep. (Pino) 43:17-19.

13. Biometric technology "identifies" by calculating probabilities of a match, and no system is perfectly accurate. Singh at 5-6, 19-26, 39-41, 48-49; Ex. 13, Singh Dep. 192:2-6; Mot. at 3 (model determines "a sufficient" or "likely" match). Derivative Digital Voice Data is data based on the Digital Voice Data *used* to identify in speaker ID technology, which compares the derived "series of numbers" (Mot. at 3) and calculates similarity scores, confidence scores, and candidates and, if above a desired threshold, indicates a likely match between voices in Digital Voice Data. Singh at 19-26, 47-49. The process for speaker ID parallels fingerprint ID: just as a fingerprint impression (*e.g.*, scan) contains all ridge information from which templates can be derived for matching, Digital Voice Data contains complete voice information from which templates can be derived for matching. *Id.* at 4, 22-26.

14. To connect a voice in Digital Voice Data to an identity, the collector also needs "███████" or other indicator of identity linked to, or linkable to, the Digital Voice Data. Ex. 11, Meta Dep. (Seltzer) 37:15-18 ("████████████████████████████████████████████████████████████████████████████████████████████████████████."); Ex. 13, Singh Dep. 146:3-147:25. ████████████████████████████████████████. Ex. 11, Meta Dep. (Seltzer) 286:17-287:15; *id.* at 26:20-25 (██████████████████████████████████████); Ex. 14, MD_9601-9603 (██████████████████████████████████████████).

15. Associating the data to "███████" does not require a formal enrollment process. Modern technology has "eliminated the traditional requirement for enrollment utterances" via "passive enrollment" and "text independent" systems—rolling collection and analysis of Digital Voice Data from normal user interactions without explicit user participation or awareness and without requiring specific words. Singh at 20, 38, 49; Ex. 11, Meta Dep. (Seltzer) 51:22-24. Ex. 15, MD_8329. Even without preset linkage to an ID, additional associations can occur through multiple technical pathways ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████." Singh at 7-8, 44, 51-62; *infra* § II.H.

16. Both "speaker verification" and "speaker identification" models identify people by voice using Digital Voice Data, and "[a] system capable of verification is inherently capable of identification." Singh at 41-42. Training a speaker ID model involves "teaching" it to make Derivative Digital Voice Data and correctly predict identifying labels. Once trained, a model is "evaluated" (or "validated"), using Digital Voice Data not included in the training. The model does not need "retraining" for new voices. A trained and validated model can be used on new voices as is, or worked into products. Singh at 49-50. Ex. 11, Meta Dep. (Seltzer) 35:2-36:25, 69:4-70:5.

### D. Meta Processes and Stores Digital Voice Data from Facebook and Messenger Users
████████████████████████████████████████████

17. Meta receives audio when users post videos to Facebook and transmit audio messages or video clips in a Messenger message. Dkt. 1, 57 ¶¶ 75-76. When such audio contains a voice, it is Digital Voice Data. The Digital Voice Data Meta receives ██████████████████████████████████████████████████████████████. Singh at 4. Plaintiff has posted videos to Facebook and transmitted video and audio messages using Messenger, some of which contained her voice. Mot. at 5; Ex. 16, Messenger Screenshots; Ex. 17, Delgado Decl. ¶¶ 2-3.

18. Meta does not ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Singh at 26-36; Ex. 4, Meta Dep.

-6-

(Wang) 84:2-85:25, 90:2-93:10, 101:10-102:20, 104:12-23, 107:6-109:20, 114:19-117:8, 134:2-25, 162:5-163:11; Dkt. 146-8 & 146-9 ¶ 5; Ex. 3, Meta Dep. (Alvarado) 76:6-9 (██████████████████ ████████████████████████████████████████"); Ex. 4, Meta Dep. (Wang) 136:22-137:5 (███████ ███████████████████████████████████████████"). Meta says it processes each audio "for storage and playback," (Mot. at 2), but ████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████." Singh Decl. Ex. 2, ("Singh Rebuttal") at 18-19.

19. Each ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████.

Singh at 4-5, 27-38, 44, 63, 85. Meta can ████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████. Ex. 4, Meta Dep. (Wang) 112:6-113:20, 118:12-15, 119:4-14, 166:13-170:9, 171:4-173:3. Meta can also "████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████."

*Id.* at 124:22-125:10; Ex. 3, Meta Dep. (Alvarado) 81:10-20, 81:25-82:10, 126:24-127:5.

**E. Meta's** ██████████████████████████████████

20. ████████████████████████████████████████████████████████████████ ████████████████████. Ex. 11, Meta Dep. (Seltzer) 19:5-7, 20:19-21, 34:5-16. In 2016, Meta filed a patent application titled "User Identification with Voiceprints on Online Social Networks," issued on March 31, 2020, Patent No. 10,607,148 (the "Patent"), with continuations issued on October 18, 2022 (No. 11,475,344) and May 2, 2023 (No. 11,640,548). Dkt. 1, 57, ¶¶ 52, 54, 67-68, 70-71; Ex. 18, Patent at p.1. A purpose of the Patent is to enhance targeted ad delivery. *See, e.g.,* Ex. 18, Patent at 3:56-58.

21. In 2018, ████████████████████████████████████████████████████████ ████████████████████████████████. Ex. 11, Meta Dep. (Seltzer) 34:5-16, 43:6-8; 43:19-44:4, 49:3-50:6, 68:3-70:8. ████████████████████████████████████████████████████████████████



. *Id.* 73:17-21, 199:2-19.

. Singh at 54.

22. Meta

. Ex. 19, MD_8409; Singh at 5-6, 40-41, 62-63. Meta

." Ex. 19, MD_8409. And Meta

. Ex. 11, Meta Dep. (Seltzer) 208:13-22 (

).

. Singh at 69-71; Ex. 10, Meta Dep. (Pino) 130:3-131:16, 133:22-141:20. Meta also

. Singh at 73-75, 77; Ex. 10, Meta Dep. (Pino) 266:9-11.

23. Meta has also

. Singh at 51, 63-66, 75-83. Meta's

. In July 2025, Dr. Seltzer and Meta's GenAI Team authored a paper describing their use of three models often used for speaker ID—WavLM, ECAPA-TDNN, and Resemblyzer—to evaluate converted audio. Singh at 84.[2]

24. Meta

."

Singh at 42-43; Ex. 10, Meta Dep. (Pino) 48:17-20, 82:2-18, 84:16-25, 85:24-86:4, 169:9-17, 170:3-11, 254:21-255:6. Meta

.

*See* Dkt. 146-25 at MD_8550 ¶ 3.1.a, b; Ex. 11, Meta Dep. (Seltzer) 87:17-89:16.

---

[2] Three months later,

. Ex. 11, Meta Dep. (Seltzer) 42:7-43:2.

-8-

25. Meta contends disclosing information ███████████████████████ will allow Meta's rivals to "outpace Meta's capabilities . . .at Meta's expense." Dkt. 147, Feinerman Decl. ¶ 4.

**F. Meta Uses Facebook and Messenger Digital Voice Data** ████████████████

26. Meta makes "significant investments" in machine learning that "depend on [Meta's] access to data to effectively train [its] models." Ex. 1, Meta 10-K (2025) at 8, 19. The Digital Voice Data Meta obtains from Facebook and Messenger users is ████████████████████████████████████████ ████████████████████████████████████████████████████████████." Singh at 1, 26-38, 55. Meta ███████████████████████████████████████ ████████████. Ex. 11, Meta Dep. (Seltzer) 38:19-24 ("████████████████████ ████████████████████████████████").

27. In 2019 ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Ex. 20, MD_8165_0001; Ex. 11, Meta Dep. (Seltzer) 61:19-23, 88:23-89:16, 107:18-25, 116:7-117:7, 301:3-21. ████████████████████████████████ (Mot. at 6) ████████████ and Meta ████████████████████████ ████████████████████████████████████████████████████████████. Ex. 11, Meta Dep. (Seltzer) 82:2-7; *see also id.* at 123:5-124:7 (████████████████████ ████████████████████████████████████████████████████"). ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ *See, e.g., id.* at 96:2-22, 108:1-111:23. "████████████████████ ████████████████████████████████." Dkt. 146-2 at 9.

28. Meta ████████████████████████████████████ ████████████████████████████████████. Ex. 10, Meta Dep. (Pino) 227:3-228:20, 230:15-231:2 (████████████████████████████████████████████████████████████ ████████████); *id.* & Ex. 21, MD_8533 & Dkt. 146-15 at 11 (████████████████████ ████████████); Ex. 10, Meta Dep. (Pino) 127:7-128:17

-9-

& Dkt. 146-15 at 11-12 (); Ex. 11, Meta Dep. (Seltzer) 267:17-268:9 (). . Ex. 11, Meta Dep. (Seltzer) 136:1-10.

*Id.* at 129:21-138:23; Ex. 22, MD_8166-8168.

29. Meta . Ex. 10, Meta Dep. (Pino) 222:13-25; Ex. 21, MD_8533 (" ."); Singh at 43, 76, 81.

**G. Digital Voice Data is "**

30. In internal chats, Meta's " Ex. 14, MD_9602, 9603 (emphasis added); Ex. 11, Meta Dep. (Seltzer) 164:1-13; Ex. 23, MD_8353; Dkt. 146-16 at MD_9649 (" .").

31. Linkage between the data and " is the default. When Meta . Ex. 11, Meta Dep. (Seltzer) 60:4-17; Ex. 10, Meta Dep. (Pino) 153:21-154:12 ("[ . Ex. 3, Meta Dep. (Alvarado) 112:1-114:16 ("[ ").

-10-

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-CV-04181-SI

**H. Digital Voice Data is Further Linkable to Identities via Meta's Wealth of User Data,** ██████████████████████████████████████

32. Meta says Dr. Singh "agrees" that a speaker ID system can only identify a speaker if it knows the identity of the speaker and Meta lacks the ability to link identifying information. Mot. at 4, 20-21 (citing Singh Dep. 145:20-146:2, 148:1-11). She does not agree. Meta relies on select portions of Dr. Singh's testimony that involved a hypothetical of "██████████████████████████████████████████████████████████████████████████████████████████████████" Ex. 13, Singh Dep. 145:20-21, 148:3-4, 9. What Dr. Singh actually said is that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████" *Id.* at 146:3-147:25. *See also* Singh at 4 (████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████; *id.* at 1, 7 (██████████████████████████████████████████████████████████████████████"); *id.* at 4-8, 26, 32-38, 44-46, 48, 57-65, 71-72, 85-87.

33. Further ██████████████████████████████████████████████████████████████████████████████████████████████████. *Id.* at 6-8, 44-49,65, 71-72, 85. "████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████." *Id.* at 44-45. Additional ███████████

███████████████████████████████████████████████████.” *Id.* at 44-45, 72.

34. “███████████████████████████████████████████████████
█████████████████████████████████████████████████████████
██████████████████████████████████████████████.” *Id.* at 49. Meta's Patent describes using similar user data to assign probability scores associating the voice in audio from an "unknown user" with a particular candidate, with scores refined as additional data is layered in. *See, e.g.*, Ex. 18, Patent at 3:15-21 ("candidate user and the probability may be identified by" using location and other data about user and users connected to candidate); *id.* at 25:63-66 (system narrows candidates via "threshold degree of separation of a known user"); *id.* at 26:20-32 (narrowing with behavioral data); *id.* at 24:63-66 (if Carl and unknown speaker say "how is Jill doing?", system assigns probability score by looking to Carl's friends who also have friend named Jill). Similar methods can be applied to similar voices clustered together. *Id.* at 23:56-62 (example where "Julian" opens app that "captures audio input that consistently matches," and "system may assign a relatively high (e.g., 85%, 90%, 95%, or the like) probability" that voice in audio "corresponds to Julian"). Both parties' experts ████████
█████████████████████████████████████████████████████████
████████████████████████████" Dkt. 146-6, Traynor Rep. ¶ 109; Singh at 48.

35. Meta ████████████████████████████████████████████████
██████████████████████████████████████████████████. Ex. 5, Meta Supp. Resp. to Pl. 2d Int. 20 at 23; *see, e.g.*, Ex. 24, MD_8339 (███████████████
█████████████████████████████████████████████████████████
███████████████████████"); Singh at 53-54, 81-82 (████████████████
████████████"); Ex. 15, MD_8329 (██████████████████████████"); Ex. 25, MD_8343
(██████████████████████████████████████████████████████████
███████████"); Ex. 26, MD 8411-12 ("████████████████████████████
██████████████████████████"); Ex. 10, Meta Dep. (Pino) 150:14-151:1 (████████
████████████████████████████"); Ex. 27, MD_9631 (████████████████
█████████████████████████████████████████████████████████
█████████████"); Ex. 4, Meta Dep. (Wang) 101:12-102:10; Dkt. 146-15 at 14-15

-12-



(

); Ex. 24, MD_8338 ("

").

36. When Dr. Traynor

. Singh Rebuttal at 25-31.

" Ex. 13, Singh Dep. 75:6-8. Meta's expert

Ex. 28, Traynor Dep. 196:7-200:23; Ex. 29 (

); Singh Rebuttal at 28. Meta

. *See id.* at 29-30; SOF ¶ 24, 32-35.

37. Dr. Traynor "that a particular audio file reflects the voice of the user who uploaded it." Mot. at 21.

. Ex. 30, Traynor Sur-Rebuttal at 12 & App'x A, Ex. 1 (

).

. *Id.* ( ); Ex. 17, Delgado Decl. ¶ 4.

-13-

## III.    LEGAL STANDARD

On summary judgment, the court "must view the evidence in the light most favorable to the nonmoving party." *Maffei v. N. Ins. Co.*, 12 F.3d 892, 896 (9th Cir. 1993). "Expert opinion evidence is sufficient to create a genuine issue of disputed fact sufficient to defeat a summary judgment motion," *Thomas*, 42 F.3d at 1270, even if the "underlying factual details and reasoning upon which the opinion is based are not" stated. *Bulthuis v. Rexall Corp.*, 789 F.2d 1315, 1318 (9th Cir. 1985).

## IV.    ARGUMENT

### A.    Plaintiff's Digital Voice Data is Not a "Mere Voice Recording"—It Is Capable of Being Used to Identify Her and a "Biometric Identifier" under BIPA

#### 1.    BIPA Applies to Digital Voice Data that is Capable of Being Used to Identify, Alone or in Conjunction with Other Available Methods and Information, a Factual Inquiry Precluding Summary Judgment for Meta

BIPA regulates collection of "biometric identifiers," including "voiceprints," and "biometric information," which is any information . . . based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10. A voiceprint under BIPA is "data unique to an individual that *could be used* to identify someone rather than as data that *was used* to identify someone." Dkt. 55 at 10 (citations omitted). Further, "[v]oice recordings *which may be used to identify a person* are more than mere 'voice recordings.'" *Id.* at 11. And "whether the data at issue is *capable* of being used to identify a person is a fundamental issue to be explored in discovery"—that is, a factual question. Dkt. 80 at 4.

*Zellmer* confirms the capability standard turns on context: Each listed biometric identifier "can thus be used to identify a person in the proper context." *Id.* at 1124. That "context" is defined by the data itself and what defendant can do with it, including the available information and technical capabilities. *Id*. at 1125-26. The face data in *Zellmer* was not a biometric identifier because it *could not* be "reverse-engineered," used to "derive information about a person," and Meta did not "create or store any other data . . . that *could be* used to recognize or identify." *Id.* at 1121, 1125-26 (emphasis added).

District courts examining the context likewise look to whether the biometric identifier is capable of being used to identify "alone or in conjunction with other methods or sources of information available" to defendant, *Taylor v. 48forty Sols., LLC,* 2024 U.S. Dist. LEXIS 64573, *11-12 (N.D. Ill. Apr. 9, 2024), and whether "there is a type of technology that could identify them utilizing the data the Defendant has collected and stored," *Robinson v. Lake Ventures LLC*, 2023 U.S. Dist. LEXIS 156296,

-14-

*20 (N.D. Ill. Sep. 5, 2023). Courts regularly explain that the "other methods or sources of information available" to identify include "e.g. the user's account information such as their name, email, physical address, etc." *Castelaz v. Estée Lauder Co., Inc.*, 2024 U.S. Dist. LEXIS 7321, *17 (N.D. Ill. Jan. 10, 2024). *See also Daichendt v. CVS Pharmacy, Inc.*, 2023 U.S. Dist. LEXIS 89451, *4 (N.D. Ill. May 4, 2023) ("*Daichendt II*") (CVS "collected and stored their personal contact data ('real-world identifying information'), such as their names and email addresses," and this additional information "made defendant capable of identifying them when associated with [the biometric identifiers]").[3]

The data need not already be linked to identifying information—courts ask whether it *could be*. An entity is thus capable of identifying where: it "*had the means* to connect" facial scans to the truck driver's identity," *Konow v. Brink's, Inc.*, 721 F. Supp. 3d 752, 757 (N.D. Ill. 2024); or it collected an "array of . . . personally identifiable data that (*at least in theory) could have been used* to connect plaintiffs' voiceprints and face scans to their identities," *Rodriguez v. ByteDance, Inc*, 2025 LX 123727, *49 (N.D. Ill. Mar. 3, 2025); or plaintiffs "supplied identifying information that Meta *could match* to their [biometric identifier] to identify them," *Hartman v. Meta Platforms, Inc.*, 2024 U.S. Dist. LEXIS 167696, *31 (S.D. Ill. Sep. 17, 2024) (emphasis added to all). The "non-user" cases Meta cites all failed where defendant *could not* connect data to anyone. *See, e.g.*, Mot. at 12, 20 (*Zellmer* face data was "all that was ever created for" the non-user and "was entirely anonymous" with "an absence of . . . linking data"); *Castelaz*, 2024 U.S. Dist. LEXIS 7321 at *17 (no information "that could connect the [biometric identifier] to Plaintiffs' identities"); *Clarke v. Aveda Corp.*, 704 F. Supp. 3d 863, 866 (N.D. Ill. 2023) (same); *Ji v. Naver Corp.*, 2023 U.S. Dist. LEXIS 178311, *38 (N.D. Cal. Oct. 3, 2023).

Unlike in *Zellmer*—where Meta said the data collected from non-users "could not possibly have been used to identify those non-users," *Zellmer*, No. 22-16925, Dkt. 24 at 10—here, by contrast, Meta says the Digital Voice Data it collects from users "could reasonably be linked with you, directly or indirectly" and "may be used to identify you." SOF ¶ 2. That alone distinguishes *Zellmer* and defeats summary judgment. Further, Dr. Singh, an expert in the "technically complex field of voice biometrics," Dkt 132 at 10, examined thousands of technical documents and testimony and described

---

[3] Meta only cites *Daichendt v. CVS Pharmacy, Inc.*, 2022 U.S. Dist. LEXIS 217484, *12 (N.D. Ill. Dec. 2, 2022) ("*Daichendt I*"), where the plaintiff omitted such allegations. Mot. at 19.

-15-

her opinions in a detailed report. Singh Decl. Ex. 1. Her factually supported opinions viewed in the light most favorable to Plaintiff are "sufficient evidence from which a reasonable fact finder could conclude that" Digital Voice Data Meta collects from Plaintiff via Facebook and Messenger is capable of being used to identify, and sufficient to defeat summary judgment. *Thomas*, 42 F.3d at 1270.

### a. BIPA's two-tier structure: biometric identifiers are inputs; biometric information is derived output

BIPA's distinction between "biometric identifiers" and "biometric information" reflects a consistent input/output structure across every enumerated "identifier." A biometric identifier is the captured representation of the biological characteristic used as *input* for recognition technology. The biometric information is what technology derives from that captured data—the *output* of a model—that is *used* for automated comparison and matching. Every listed BIPA identifier follows this input/output structure. *Zellmer*, 104 F.4th at 1124 ("[T]he words in a list should be given similar meanings."). Fingerprints, face scans, and retina/iris scans are each captured impressions of the relevant biological component—not output templates (a "series of numbers") systems use for matching. In each case, the "print" or "scan" that is the biometric identifier is the input. The "template" "based on" the input that is the "biometric information" is the output. A voiceprint follows the same structure. It is the digitized capture of the person's voice that preserves its acoustic characteristics that is the input into a speaker ID model. The speaker templates the model creates from Digital Voice Data are the output ("Output Representations" as Meta says), which is the "biometric information"—data "based on" or "derived from" the voiceprint and "used to identify." SOF ¶¶ 9-10.

The input/output structure is confirmed by the legislature's exclusion of "photographs" from the biometric identifier definition—unnecessary if only output templates constitute identifiers. *See also Zellmer*, 104 F.4th at 1123 (noting a photograph is excluded from the statutory definition, but could "be a biometric identifier under the term's plain meaning"). Case law further confirms this framework, with courts holding a partial fingertip scan (input for recognition models) is a "biometric identifier," and a template derived from the scan (output used to match/identify) is "biometric information." *Howe*, 2024 U.S. Dist. LEXIS 176263 at *4-5; *Tapia-Rendon v. Workeasy Software, LLC*, 2025 LX 394768, *20-21 (N.D. Ill. Aug. 8, 2025); *see also Jenkins v. Regal Cinemas*, 2025 LX 117866, *14 (N.D. Ill. Jan. 13, 2025) (a "fingerprint template" is the "data derived from the fingerprint scanned").

-16-

Notably, in *In re Facebook Biometric Info. Privacy Litig.* ("*In re Facebook*"), Meta recognized this framework in arguing: (a) face templates are "the data actually used for identification"; (b) "BIPA regulates two specific, delineated *categories* of biometric data: 'biometric identifiers' and 'biometric information'"; (c) the face "templates … are not 'biometric *identifiers*' under BIPA," and (d) summary judgment was proper because plaintiff sought no recovery for collecting "biometric information." No. 3:15-cv-03747-JD, Dkt. 337 at 14, 20. Meta's current position inverts BIPA's two-tiered framework and renders incoherent the relationship between the two statutory terms.[4]

### b. Collecting a biometric identifier triggers BIPA regardless of whether biometric information was created

Meta argues BIPA is not triggered unless its speaker ID technology actually created output data. Mot. at 10. But Plaintiff need not prove Meta created any such output data ("biometric information") based on her Digital Voice Data because "BIPA applies if it *could*," "even if a company *does not*." *Zellmer*, 104 F.4th at 1125; Dkt. 55 at 10-11; *Taylor*, 2024 U.S. Dist. LEXIS 64573 at *11 ("[A] defendant may violate BIPA even without using technology for the purpose of identifying an individual[.]") (citation and internal quotation marks omitted).[5] Nor must a biometric identifier "itself" be capable of being used to identify without creating "different data" or other intermediate steps. Mot. at 9, 12. A fingerprint "itself" cannot identify anyone—yet no court has held it falls outside BIPA for that reason. *See Howe*, 2024 U.S. Dist. LEXIS 176263 at *25-26. BIPA's text expressly contemplates different data *could be made* because it defines "biometric information" as additional data "based on" or "derived from" the identifier and "used to identify." 740 ILCS 14/10. But such additional data need not be made because BIPA requires consent before collecting a "'biometric identifier' *or* 'biometric information.'" 740 ILCS 14/15 (emphasis added). Had the *Howe* defendant obtained fingerprints without creating templates, BIPA still would have applied. And the problem in *Zellmer* was not that Meta "chose not to" create templates (Mot. at 12), but that Meta *could not* do so for non-users because it lacked identifying information. 104 F.4th at 1121, 1125-26. Here, Meta has exactly the linked

---

[4] Dr. Traynor testified Digital Voice Data ███████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████████." Ex. 28, Traynor Dep. 122:6-15. That ████████ finds no support in BIPA—which Dr. ████████████ ██. *Id.* at 132:3-134:15.

[5] Meta's ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████. SOF ¶ 27.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-CV-04181-SI

identifying information that was missing in *Zellmer*. SOF ¶¶ 6, 17-19, 30-35; *infra* § IV.B.

### c.   BIPA requires capability, not certainty

Meta suggests data is a biometric identifier only if technology can "confirm[] who the speakers are" with certainty 100% of the time. Mot. at 21, 23. That standard appears nowhere in BIPA. *See Howe*, 2024 U.S. Dist. LEXIS 176263 at *26 (fingerprint templates were "accurate enough"; "BIPA's plain language contains no prerequisite that biometric information be of a particular accuracy"). Further, accuracy sufficiency is a factual question involving consideration of use case—identifying a speaker for serving targeted ads allows more tolerance for less accuracy than identifying a speaker for criminal prosecution. Here, Meta's technology is "accurate enough." *Id.* In *In re Facebook*, Meta represented it was only "able to match around 67% of detected faces with users." 326 F.R.D. 535, 541 (N.D. Cal. 2018). Meta ███████████████████████████████████████████████████████████████████████. SOF ¶ 22.

### 2.   BIPA Does Not Exclude Digital Voice Data that Can be Used to Identify

This case does not involve a "mere voice recording," and Plaintiff does not ask this Court to "be the first" (Mot. at 13) to hold that any standard recording is itself a biometric identifier in isolation. It is Meta that asks the Court to write a categorical exclusion into BIPA for all Digital Voice Data or anything that is not the "output" of recognition technology—exclusions the legislature did not include in the original 2008 statute or its 2024 amendment. *See* 740 ILCS 14/10 and Ill. Public Act 103-0769 (enacted Aug. 2, 2024). The court "may not depart from the law's terms by reading into it exceptions, limitations, or conditions the legislature did not express . . . ." *Rosenbach v. Six Flags Entm't Corp.*, 129 N.E.3d 1197, 1204 (Ill. 2019). Nothing in BIPA suggests a categorical exclusion for Digital Voice Data that is capable of being used to identify. *See also* Ex. 24, MD_8339 ("█████████████████████████████████████████████████████████████████████████").

Meta's "underlying medium" argument fares no better. Mot. at 14. That concept comes from *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1095-96 (N.D. Ill. 2017)—a case involving "scans of face geometry" and whether a defendant possessed something beyond an excluded "photograph." The logic does not translate to BIPA's "print" identifiers, which are not subject to any photograph exclusion, do not require a "scan" of "geometry," and have no equivalent underlying medium that precedes a "print."

*Rivera* recognized as much in suggesting a digital iris image is a "biometric identifier" while derived numerical "iris codes" are "biometric information." *Id.* at 1095 & n.6. And *Howe* and *Tapia-Rendon* held that digital images of fingerprints are biometric identifiers, not an excluded "underlying medium."

Meta's remaining authorities do not help it. The *Rivera* parenthetical about a journalist's recording and the non-binding Illinois Public Access Opinion both addressed "simple" recordings not capable of being used to identify.[6] *McGoveran v. Amazon Web Services* involved audio recordings sent to a third party with no allegations about that party's ability to identify anyone, so disclosure of the voice "alone" was not a § 15(d) violation. 2023 U.S. Dist. LEXIS 53690, *28-29 (D. Del. Mar. 29, 2023). *Rodriguez* also lacked allegations about what the third-party recipient could do with the videos, which "were the only material . . . allegedly traded." Mot. at 14.[7] *Tibbs v. Arlo Techs., Inc.*, said only that the videos there were not "scans of face geometry." 2024 U.S. Dist. LEXIS 113916, *25-26 (N.D. Cal. June 27, 2024). And *Patterson v. Respondus, Inc.*, expressly *rejected* categorical exclusion of photographically captured data and allowed claims based on allegations defendant captured voiceprints "when it record[ed] the student speaking" into a camera. 593 F. Supp. 3d 783, 799, 817 (N.D. Ill. 2022).

As this Court explained, "[v]oice recordings *which may be used to identify a person* are more than mere 'voice recordings.'" Dkt. 55 at 11. Thus, in the proper context, Digital Voice Data is a BIPA voiceprint. The Court need not even reach whether "mere voice recordings" might be categorically excluded as an "underlying medium" because Meta collects more than that: mathematically measured digital representations of Plaintiff's voice signal that preserve essential acoustic information, carry data unique to her, and are capable of being used by Meta to identify her. SOF ¶¶ 3, 8; *infra* § IV.B.2.

### 3. Requiring Disclosure and Consent Here Aligns with BIPA's Purpose

BIPA must be applied as written, "even though the consequences may be . . . absurd, or unwise." *Zellmer*, 104 F.4th at 1122. Meta's hyperbolic hypotheticals involving voicemails and internet access

---

[6] PAC opinions do not bind courts. Its expertise is FOIA, not BIPA, and it mistakenly says photos could be biometric identifiers and adds an intent element ("for the purpose of identifying"). *Balzer v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 2026 IL App (1st) 232227, ¶ 79; PAC Op. No. 17-011 at 5; *Bd. of Educ. of Springfield Sch. Dist. No. 186 v. AG of Ill.*, 77 N.E.3d 625, 631 (Ill. 2017).

[7] Meta notes "ByteDance had 'speaker identification' technology" (Mot. at 14), but the issue was whether *trading* the data to another party, TikTok, which was "run by a separate entity," was a §15(c) violation, and there were no allegations about *TikTok's* capabilities to use the data to identify. *Rodriguez*, 2025 LX 123727 at *26, 51-53; *see also id.* at *49 (ByteDance defendants "were capable of using the data to identify [plaintiffs], even if they did not actually do so").

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-CV-04181-SI

disregard *Zellmer*'s context analysis. Mot. at 15-16. Although Dr. Singh said a voicemail meets the *scientific* definition of a voiceprint (Singh Rebuttal at 13-15), such definition must still undergo *Zellmer*'s capability and context analysis, which looks to what the collector *has*—not just what is publicly-available. None of Meta's hypotheticals involve, like here, ███████████████████████████████████████████████████████████████████, and says Digital Voice Data "may be used to identify you."

Nor does Dr. Singh's use of a public speaker ID model mean any person with internet access faces BIPA liability. Mot. at 15-16. Her demonstration was to show ██████████████, as a response to Dr. Traynor's ██████████████. Her ██████████████████████████. SOF ¶ 36. Furthermore, any person using a public model lacks, *inter alia*, Meta's structural linkage of voice data to authenticated identities, state-of-the-art speaker ID models, predictive association infrastructure, and wealth of linked personal data.[8]

Meta's identity theft arguments fare no better. Mot. at 16. Under its view, only an output "voice template"—a series of numbers incompatible across speaker ID technologies—warrants BIPA protection, while Digital Voice Data—reusable across systems, capable of impersonating a person, and able to defeat voice authentication—does not. *That* is an absurd result the legislature did not intend.

Further, Meta ███████████████████████████████████. SOF ¶ 20-23, 25. And i████████████████████████████████████████████████████

---

[8] Meta also misses that BIPA may not apply to "any person" at all. It only applies to a "private entity" which includes a list that ends with "or other *group*, however organized." 740 ILCS 14/10. Black's Law Dictionary (7th ed 1999) 553 ("entity" is "[a]n organization . . . that has a legal identity apart from its members"). Although the list of "entities" includes an "individual," in context that may mean an individual *private entity*, like an individually owned non-incorporated entity. *Zellmer*, 104 F.4th at 1124 (list in statutory definition narrowed by ordinary meaning of defined term containing list). BIPA also uses "person" elsewhere, but not in the "private entity" definition. 740 ILCS 14/20.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-CV-04181-SI

██████. SOF ¶ 27. Illinois residents have a right to make an informed choice about how their biometric identifiers are used. The question is not whether the user "chose to disseminate [the data] to Meta and others over social media to begin with" (Mot. at 16)— a questionable premise as to Plaintiff's *private* postings and one-to-one messages. It is whether Meta allowed users to make choices with knowledge that biometric identifiers were being collected and how they would be used and stored by Meta.

Moreover, the risks that led to BIPA's enactment (Mot. at 16) exist here: a sale of Meta's assets could transfer Plaintiff's linked and linkable Digital Voice Data t██████████████████ ████████████. Nor would BIPA's application require Meta to "abandon key services that it offers its customers." Mot. at 17.[9] BIPA "doesn't ask much. All a company has to do is obtain consent first. That doesn't seem much to ask in exchange for the most personal of all identification information . . . ." *Fleury v. Union Pac. R.R. Co.*, 2023 U.S. Dist. LEXIS 221741, *4-5 (N.D. Ill. Dec. 13, 2023). Giving Meta a pass for failing to enact simple procedures undermines BIPA's goals of protecting individual's privacy rights and giving "private entities the strongest possible incentive to conform to the law and prevent problems before they occur." *Cothron v. White Castle Sys.*, 216 N.E.3d 918, 928 (Ill. 2023).

### B. On this Record, a Reasonable Person Could Easily Conclude That Meta Is Capable of Using Digital Voice Data to Identify Plaintiff

#### 1. Meta's "Actually Linked" Standard Is Wrong—BIPA Applies to Biometric Data That Is Linked Or Could Be Linked to Identity

Meta argues BIPA applies only if identifying data already "actually is linked" to biometric data. Mot. at 19-20. That standard disregards *Zellmer*'s "capability" standard. It also defies common sense as a fingerprint is capable of being used to identify by an entity with technology and information to link it to a person, even if that link has not yet been made. Contrary to Meta's assertion, *Zellmer* did not distinguish between face templates that "were linked" to identities and those that "were not" (Mot. at 17-18); it examined whether they *could be*. 104 F.4th at 1121, 1125-26. *See supra* § IV.A.1.

#### 2. Meta Has the Technology, Data, and Mechanisms to Use Plaintiff's Digital Voice Data to Identify Plaintiff

Meta argues there is no way it "can obtain the necessary linking information" that would allow for "confirming the identity" of a speaker in Plaintiff's Digital Voice Data because it has no external

---

[9] In *Zellmer*, Meta faced a choice of "abandon[ing] key services" (Mot. at 17) because of the "practical impossibility" of providing notice and obtaining consent from *non-users*. 104 F.4th at 1122.

-21-

information or linking mechanisms. Mot. at 21. Those arguments lack merit. Linkage to "███████ ████" via account ID undisputedly already exists and is legally sufficient for BIPA. But Meta's capability extends well beyond that. Meta "has collected a wealth of data on its users," *In re Facebook*, 326 F.R.D. at 548, connected to users' "authentic identity," and has linking mechanisms that, ████████ ████████████████████████████████████, demonstrate its capability to identify Plaintiff from her Digital Voice Data. The record forecloses summary judgment.

### a. Plaintiff's Digital Voice Data is already linked to what Meta calls her ████████████████████

Meta acknowledges Plaintiff's Digital Voice Data is already linked to her Facebook account but incorrectly contends that is insufficient for BIPA. Mot. at 20-23. As Meta argued in *Zellmer*: BIPA "describes both 'biometric identifiers' and 'biometric information' as forms of 'confidential and sensitive' information, which it defines to mean 'information that can be used to uniquely identify an individual *or an individual's account* or property.'" *Zellmer*, No. 22-16925, Dkt. 24 at 49 (quoting 740 ILCS 14/10, §14/15(e)(2)). Courts agree, looking to whether defendants have identifying information like "account information such as their name, email, physical address, etc.," *Castelaz*, 2024 U.S. Dist. LEXIS 7321 at *17, or can "identify the device user," *G.T. v. Samsung Elecs. Am., Inc.*, 742 F. Supp. 3d 788, 797-98, 801 (N.D. Ill. 2024) (contrasting Samsung's lack of access to linking data with cases where "a combination of factors" made identification possible).[10] *See* Mot. at 20 (noting in *Zellmer*, *users*' face data was linked "to the user's account name" but there was an "absence of such linking data" (*i.e.*, account name) for non-users); *supra,*§ IV.A.1.

Here, the linkage between Plaintiff's Digital Voice Data and her "authentic" and "i████████ ████" via her user ID is "██████████████████████████." SOF ¶¶ 4, 18, 31. Meta recognizes Facebook IDs are "████████████" and ████████████████████████████████



" SOF ¶¶ 6, 30. ████████████████████████████

---

[10] Meta cites *Ji* for the proposition that linking data to a "user ID" is insufficient (Mot. at 18-19)—but it omits that the user ID there "was created by Defendants [and] not tied to [plaintiff's] actual identity," and the defendant never collected plaintiffs' name, address, or email. 2023 U.S. Dist. LEXIS 178311 at *37. Meta also incorrectly implies *Ji* dismissed claims despite the defendant's ability to "ostensibly access" plaintiffs' identifying information. Mot. at 19. The court declined to reach that question, "declinin[g] to fill in allegations Plaintiffs have not made." 2023 U.S. Dist. LEXIS 178311 at *38–39.

-22-

[REDACTED].” SOF ¶¶ 19, 28. Linkage to the "[REDACTED] [REDACTED] This is precisely what was sufficient in the "user" cases—where biometric data was linked to user account names—and missing in *Zellmer* and the "non-user" cases. *Supra* § IV.A.1.

### b. Meta's linking mechanisms go far beyond account linkage and make Meta capable of further linking the voice in Digital Voice Data to Plaintiff

Meta selectively cites Dr. Singh's testimony to suggest Meta lacks any mechanism to link Digital Voice Data to speakers. SOF ¶ 32. In fact, Dr. Singh testified: "[REDACTED] [REDACTED]" *Id*. And there are—well beyond account linkage. SOF ¶¶ 1-3, 6, 17-19, 30-35. Thus, [REDACTED] SOF ¶ 31. And Meta acknowledges the Digital Voice Data it collects "could reasonably be linked with you, directly or indirectly" and "may be used to identify you"—not merely your account ID. SOF ¶ 2.

Meta's assertion that it "cannot simply assume" who is speaking (Mot. at 21), ignores that all biometric identification is probabilistic. SOF ¶ 13. Nor does BIPA require identification with certainty at the level of every individual clip. *See Tapia-Rendon*, 2025 LX 394768 at *20 (BIPA applied even if system "may have in some instances mistakenly identified an individual"). Meta discusses its facial recognition system (Mot. at 5, 20, 21), but that relied on *user*-tagged photos that could be incorrect. Despite that uncertainty, Meta would "associate" tagged photos "with your account, compare what these tagged photos have in common and store a summary of this comparison" to ID individuals probabilistically from account data. Dkt. 146-12; Singh Rebuttal at 24. The process for Digital Voice Data is materially identical: associate audio with an account, compare data commonalities, cluster similar data, and identify probabilistically. A photo "tag" is a way to increase a probability score; Meta has countless other data points that can do the same. SOF ¶¶ 32-37.

Meta's business model revolves around inference and predictive analysis [REDACTED] —well beyond the "limited purposes" of "estimating the number of users" and detecting policy violations it claims. Dkt. 146-10 ¶ 2; SOF ¶¶ 4-7.[11] The Patent's probability scoring framework, which

---

[11] Dr. Seltzer [REDACTED]. Ex. 11, Meta Dep. (Seltzer) 306:3-10. The Court should also decline to consider Bill Wyatt's declaration (Dkt. 146-10). He was not disclosed in Meta's Rule 26 disclosures or discovery responses prior to the 9/25/25 discovery cutoff. Regardless, his statements conflict [REDACTED].

-23-

both experts ████████████████████████████████████████ ███████████," describes exactly how user data, contextual data, location data, system data, social graph data, degrees of separation, and behavioral patterns can narrow candidates and refine probability scores as additional data is layered into the predictive infrastructure. SOF ¶ 34.[12] That Meta's predictive infrastructure does not itself analyze audio (Dkt. 146-6 ¶ 109; Dkt. 146-10 ¶ 4) is beside the point. The two systems are complementary: ██████████████████████████████████ ████████████████████████████████████████████████████████████████.

Plaintiff's own messages illustrate the point. Shortly after sending a Messenger voice message, she texted the same person on Messenger: "I sent you a voice message. Lol. On accident. Telling you about my tummy issues." SOF ¶ 17, Ex. 16. That single contextual signal—in the same conversation thread as the audio—would alone increase the probability score linking the voice in that message to Plaintiff. ███████████████████████████████████████. SOF ¶¶ 3, 7, 32-36. And it refutes Meta's assertion that it lacks data linking the voice in Plaintiff's audio to her. Mot. at 17.



Meta's ████████████████████████████████ SOF ¶ 35. Meta's ████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████. SOF ¶ 35. After Dr. Traynor ██████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████. SOF ¶ 36. Meta attacks the weight to be given by focusing on the public speaker-ID model she used and her inference that the predominant voice in privately sent messages is the account holder. Mot. at 22. As to the model, Meta's own expert ████████ ████████████████████████████████████████████████

---

[12] Meta is careful to disclaim only "the Claims" in the Patent (Dkt. 146-4 at Int. 11)—not the underlying principles of confidence scoring described throughout. Further, despite Meta distancing itself from the Patent, to issue, a patent must demonstrate that "the claimed invention has a significant and presently available benefit to the public," meaning it is useful "in its current form, not that it may prove useful at some future date after further research" or that it "represent[s] merely hypothetical possibilities, objectives which [it] <u>could</u> possibly achieve." *In re Fisher*, 421 F.3d 1365, 1371, 1373 (Fed. Cir. 2005).

SOF ¶ 36. And Dr. Singh's inference is the same one Meta's Patent describes, ████████ ████████████████████████████████, and is consistent with Meta's authentic identity policy prohibiting accounts from being "used by more than one person" or users from "speaking in the voice of another person." SOF ¶¶ 5, 34. *Bulthuis*, 789 F.2d at 1317 (when expert opinion involves reasonable inference from underlying fact, non-movant "entitled to have such inferences drawn in her favor").

Finally, Dr. Traynor's ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. SOF ¶ 37. With ██████████████████████████████████████████████████████████████████████████████████ SOF ¶ 36. But even █████████████████████████████████████████████████████████████████████████████████, Meta can determine "that a particular audio file reflects the voice of the user who uploaded it." Mot. at 21.

Accordingly, Meta's analogies to *Zellmer*, *G.T.*, and *Ji* (Mot. at 22-23) fail because those cases turned on the absence of what Meta has in abundance here—linked data and further identity linkage "when combined with other methods or sources available to" Meta. *Ji*, 2023 U.S. Dist. LEXIS 178311 at \*38. Meta has Digital Voice Data s██████████████████████████████████████████████████████████████. As Dr. Singh concluded, Meta "████████████████" and "███████████████████████s." SOF ¶¶ 3, 5-7, 17-35. This "combination of factors," viewed in the light most favorable to Plaintiff, could lead a reasonable person to conclude Meta is capable of using Plaintiff's Digital Voice Data to identify her.

## V.   CONCLUSION

For the foregoing reasons, Meta's Motion for Summary Judgment should be denied.

Dated: March 27, 2026

Respectfully submitted,

**GOLDENBERG HELLER & ANTOGNOLI, P.C.**

By: */s/ Kevin P. Green*
Kevin P. Green

*Attorneys for Plaintiff Natalie Delgado*

-25-

## CIVIL L.R. 5-1(i)(3) ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3), I, Kevin Green, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: March 27, 2026                    Respectfully submitted,

**GOLDENBERG HELLER & ANTOGNOLI, P.C.**

By: */s/ Kevin P. Green*
    Kevin P. Green

-26-