**GIBSON, DUNN & CRUTCHER LLP**
CHRISTOPHER CHORBA, SBN 216692
DIANA FEINSTEIN, SBN 302626
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:    (213) 229-7396
Facsimile:    (213) 229-6396
cchorba@gibsondunn.com
dfeinstein@gibsondunn.com

**LATHAM & WATKINS LLP**
SEAN M. BERKOWITZ (admitted *pro hac vice*)
GARY S. FEINERMAN (admitted *pro hac vice*)
KATHRYN K. GEORGE (admitted *pro hac vice*)
330 N. Wabash Ave., Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
sean.berkowitz@lw.com
gary.feinerman@lw.com
katie.george@lw.com

LAUREN R. GOLDMAN (admitted *pro hac vice*)
MICHAEL BRANDON (admitted *pro hac vice*)
200 Park Avenue, New York, NY 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035
lgoldman@gibsondunn.com
mbrandon@gibsondunn.com

AMANDA STERLING (admitted *pro hac vice*)
1700 M Street, N.W.
Washington, D.C. 20036
Telephone:    (202) 955-8500
Facsimile:    (202) 467-0539
asterling@gibsondunn.com

*Attorneys for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| NATALIE DELGADO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:23-cv-04181-SI<br><br>**DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing:  May 15, 2026<br>Time:       10:00 a.m.<br>Location: Courtroom 1 - 17th Floor<br>Judge: Hon. Susan Illston<br><br>**REDACTED** |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.   ARGUMENT .................................................................................................................. 2

    A.    BIPA Does Not Apply to Mere Voice Recordings .................................................. 2

        1.    There is No Dispute That This Case Concerns Mere Voice Recordings, Which Could Not Themselves Be Used to Identify the Speaker ............................................................................................. 3

        2.    Data That Itself Cannot Be Used to Identify Cannot Be a Voiceprint .............................................................................................. 4

    B.    BIPA Does Not Apply to Plaintiff's Voice Recordings Because Meta Does Not Have the "Linking Data" Necessary to Identify Her From Those Recordings .................................................................................. 8

        1.    Voice Recordings Unlinked to Speaker Identities Are Not Subject to BIPA ......................................................................................... 9

        2.    Recordings Associated With the Uploader's Account ID Are Unlinked to the Speaker's Identity ................................................... 11

        3.    Meta's Supposed "Linking Mechanisms" Do Not Link Plaintiff's Voice to Her Identity ............................................................ 12

    C.    Plaintiff's Theory Cannot Be Squared With BIPA's Legislative Intent ................................................................................................................... 14

III.  CONCLUSION .............................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Carpenter v. McDonald's Corp.*,
580 F. Supp. 3d 512 (N.D. Ill. 2022) ...................................................................................4

*Castelaz v. Estée Lauder Co.*,
2024 WL 136872 (N.D. Ill. Jan. 10, 2024) ...................................................................10, 11

*Daichendt v. CVS Pharmacy, Inc.*,
2023 WL 3559669 (N.D. Ill. May 4, 2023) .......................................................................11

*G.T. v. Samsung Elecs. Am. Inc.*,
742 F. Supp. 3d 788 (N.D. Ill. 2024) ............................................................................1, 11

*G.T. v. Samsung Elecs. Am., Inc.*,
760 F. Supp. 3d 665 (N.D. Ill. 2024) .................................................................................13

*Hartman v. Meta Platforms, Inc.*,
2024 WL 4213302 (S.D. Ill. Sept. 17, 2024) ....................................................................11

*Hooks v. CloudSpotter Techs. Inc.*,
2026 WL 1045734 (N.D. Ill. Apr. 17, 2026) .......................................................................1

*Howe v. Speedway LLC*,
2024 WL 4346631 (N.D. Ill. Sept. 29, 2024) ..................................................................4, 7

*In re A.A.*,
236 N.E.3d 601 (Ill. App. 2023) ..........................................................................................8

*In re Clearview AI, Inc., Consumer Priv. Litig.*,
585 F. Supp. 3d 1111 (N.D. Ill. 2022) ................................................................................6

*In re Facebook Biometric Info. Privacy Litig.*,
No. 3:15-cv-03747 (N.D. Cal. Mar. 16, 2018), Dkt. 299 ....................................................7

*Ji v. Naver Corp.*,
2023 WL 6466211 (N.D. Cal. Oct. 3, 2023) ......................................................................12

*Konow v. Brink's, Inc.*,
721 F. Supp. 3d 752 (N.D. Ill. 2024) .................................................................................10

*McGoveran v. Amazon Web Servs., Inc.*,
2023 WL 2683553 (D. Del. Mar. 29, 2023) .....................................................................4, 5

*McIndoe v. Huntington Ingalls Inc.*,
817 F.3d 1170 (9th Cir. 2016) .............................................................................................9

*Patterson v. Respondus, Inc.*,
593 F. Supp. 3d 783 (N.D. Ill. 2022) ...............................................................................4, 6

*People v. Foster*,
195 N.E.3d 1224 (Ill. App. 2021) .........................................................................................8

*Rivera v. Google Inc.*,
238 F. Supp. 3d 1088 (N.D. Ill. 2017) .......................................................................4, 5, 6, 7

*Robinson v. Lake Ventures LLC*,
2023 WL 5720873 (N.D. Ill. Sept. 5, 2023) ........................................................................10

*Rodriguez v. ByteDance, Inc.*,
2025 WL 672951 (N.D. Ill. Mar. 3, 2025)...................................................................4, 5, 6

*Sloan v. Anker Innovations Ltd.*,
2025 WL 2104559 (N.D. Ill. July 28, 2025)...........................................................................6

*Soremekun v. Thrifty Payless, Inc.*,
509 F.3d 978 (9th Cir. 2007) .................................................................................................9

*Tapia-Rendon v. Workeasy Software, LLC*,
2025 WL 2299592 (N.D. Ill. Aug. 8, 2025) ..........................................................................7

*Taylor v. 48forty Sols., LLC*,
2024 WL 1530383 (N.D. Ill. Apr. 9, 2024) .........................................................................10

*Tibbs v. Arlo Techs., Inc.*,
2024 WL 3218650 (N.D. Cal. June 27, 2024) ........................................................................6

*Vance v. IBM Corp.*,
2020 WL 5530134 (N.D. Ill. Sept. 15, 2020) ........................................................................6

*Zellmer v. Meta Platforms, Inc.*,
104 F.4th 1117 (9th Cir. 2024) ..................................................................................... *passim*

**STATUTES**

105 ILCS 85/5...........................................................................................................................8

405 ILCS 5/4-209 .....................................................................................................................8

720 ILCS 5/11-23.5 ..................................................................................................................8

720 ILCS 5/14-2 .......................................................................................................................8

720 ILCS 5/16-7 .......................................................................................................................8

740 ILCS 14/10..................................................................................................................7, 8, 14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iii

DEFENDANT'S REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT
CASE NO. 3:23-CV-04181-SI

740 ILCS 14/15(c) ...............................................................................................................2, 15

740 ILCS 14/15(c), (d)..............................................................................................................5

815 ILCS 550/5 .........................................................................................................................8

820 ILCS 180/33 ........................................................................................................................8

**REGULATIONS**

Public Access Opinion, 2017 WL 10084298 (Ill. A.G. Aug. 14, 2017).........................................4

**OTHER AUTHORITIES**

Cyril John Polson, *Finger Prints and Finger Printing: An Historical Study,* 41 J.
    Crim. L. & Criminology 495, 496 (1950–1951).......................................................................7

## I.    INTRODUCTION

Only a handful of facts are relevant to this motion, and they are undisputed. Plaintiff voluntarily uploaded videos and audio recordings to Messenger and Facebook. Plaintiff claims that her voice is reflected in some of those recordings. But to be capable of identifying Plaintiff based on her voice, Meta would need to use those recordings to create an entirely new type of data—referred to in Meta's motion as an "Output Representation"—that captures the unique aspects of her voice. The Output Representation would have a fundamentally different purpose, content, structure, and size from Plaintiff's recordings. And Meta has never created, and therefore never collected, such an Output Representation for Plaintiff. In any event, even if Meta had created an Output Representation from Plaintiff's recordings, it would be functionally anonymous. That is because Meta does not have any information that says, of the many voices reflected in Plaintiff's recordings, that *this* voice is *her* voice—which is essential "linking" information without which speaker identification is impossible.

Faced with these undisputed facts, Plaintiff attempts to deflect and distract. She devotes the bulk of her brief to reciting irrelevant information about Meta's technologies and processes— none applied to the videos and audio recordings she uploaded—that have no bearing on the narrow, dispositive issues presented by Meta's motion. After all, as Meta has explained, Mot. 13-14, BIPA "is concerned with private entities collecting, capturing, or obtaining Biometrics, not creating technology." *Hooks v. CloudSpotter Techs. Inc.*, 2026 WL 1045734, at *3 (N.D. Ill. Apr. 17, 2026) (quoting *G.T. v. Samsung Elecs. Am. Inc.*, 742 F. Supp. 3d 788, 798 (N.D. Ill. 2024)). Because Plaintiff has no evidence contradicting the material facts, Meta is entitled to judgment on two independent grounds.

*First*, by its terms, BIPA applies only if Meta "collected" Plaintiff's "voiceprint." A voiceprint is data that *itself* could be used to identify a person. But all Meta collected from Plaintiff was her voice recording. And a voice recording could not itself be used to identify a person—it could be used only to create an entirely different type of data in the form of an Output Representation that could, in turn, be used to identify a person in certain circumstances. Because Meta never created any Output Representations from the recordings that Plaintiff uploaded, it

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

DEFENDANT'S REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT
CASE NO. 3:23-CV-04181-SI

cannot have collected her voiceprint under BIPA.

*Second*, even if this Court found that, under certain circumstances, a voice recording might qualify as a voiceprint under BIPA because the recording could be used to create an Output Representation that could, in turn, be used to identify a person, the recordings that Plaintiff uploaded would not so qualify. The reason is indisputable and straightforward: Meta has no information linking Plaintiff's voice, among the various voices in the recordings she uploaded, to her identity. This would hold true even if Meta had created an Output Representation from her voice. And under *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117 (9th Cir. 2024), without the ability to link Plaintiff's voice (or Output Representation derived from her voice) to her identity, Meta cannot possibly have collected her voiceprint under BIPA.

The implications of accepting Plaintiff's contrary view would be staggering: it would expose virtually every individual or company with access to standard videos and audio recordings—and access, available to anybody with an internet connection, to software that allows identifying data to be extracted from such recordings—to unmanageable liability under BIPA. Indeed, it would make it categorically unlawful (regardless of consent, *see* 740 ILCS 14/15(c)) for any entity or individual to sell, lease, trade, or otherwise profit from videos and audio recordings— all while making it practically impossible to compliantly obtain them in the first place. This would render unlawful under BIPA YouTube, Netflix, movie theaters, radio stations, podcasts with paid subscribers, and other ubiquitous uses of voice recordings. If the Illinois legislature had intended that, it surely would have said so. It did not, and this Court should decline Plaintiff's invitation to re-write the statute.

## II.    ARGUMENT

### A.    BIPA Does Not Apply to Mere Voice Recordings

Plaintiff's claims rest on a fundamental premise: Meta, by collecting her voice recordings, collected her "voiceprint" under BIPA. Meta's motion thus addressed a straightforward and dispositive legal question: Does a voice recording, which could not itself be used to identify the speaker, but which could be used to create different data that could in turn be used to identify the speaker under certain circumstances, constitute a "voiceprint" under BIPA? Nothing in Plaintiff's

37-paragraph statement of facts displaces that question; she agrees that Meta collected only such voice recordings and nothing further. And Plaintiff cites no authority holding that the answer to the question is anything other than no. Meta accordingly is entitled to summary judgment.

> 1. *There is No Dispute That This Case Concerns Mere Voice Recordings, Which Could Not Themselves Be Used to Identify the Speaker*

Plaintiff agrees that the data Meta allegedly collected—which she calls "Digital Voice Data"—amounts to nothing more than the voice recordings she uploaded to Facebook and Messenger in the form of standard video and audio files. Def.'s Summary Judgment Mot. ("Mot.") 1-2, 5-6; Pl.'s Summary Judgment Mot. Opp. ("Opp.") 6 ¶ 17. She agrees that such voice recordings could not *themselves* be used to identify the speaker. Mot. 1-4; Mot. Ex. 6 173:3-24; Opp. 5 ¶13. Rather, she agrees that speaker identification can be performed only by using an entirely different type of data—which Meta calls "Output Representations"—that could be created from such recordings. Mot. 1-4; Opp. 4-5. And critically, she agrees that there is no evidence that Meta ever created Output Representations from her voice recordings.[1] Plaintiff thus posits that voice recordings, which could not themselves be used to identify her, are nonetheless themselves voiceprints under BIPA. Mot. 5-6; Opp. 4-5; Mot. Ex. 6 36:3-12.

Accordingly, there are no disputed facts material to the threshold question whether the recordings uploaded by Plaintiff are "voiceprints" under BIPA. As this Court recognized, a "voiceprint" is a type of data that "could be used to identify" a person. Dkt. 55 10. While Plaintiff insists, citing language from the Court's motion to dismiss order, that mere voice recordings "may be used to identify a person," Opp. 2, 14, 19, the parties' dispute is a purely legal one concerning what it means for data to be capable of identifying a person under BIPA.[2] Plaintiff contends that a

---

[1] Plaintiff attempts to muddy this fact by citing to ███████████████████████████ ███████████████████. Opp. 9-10, 20-21. But it is undisputed that ████████████████████ ████████████████████████████████████████████████████████████████████ on Plaintiff's recordings, which were all uploaded in 2018 or later. Mot. Ex. 31 281:2-282:5.

[2] The Court did not hold at the pleadings stage that Plaintiff's voice recordings "may be used to identify her." Rather, the Court held that Plaintiff's allegations that her recordings could be so used sufficed to state a claim. Dkt. 55 at 11. On summary judgment, Plaintiff cannot rely on her own allegations, but instead must adduce evidence. And the evidence indisputably shows that Plaintiff's voice recordings cannot themselves be used to identify her. *See* Mot. 17-23; *infra* Section B.

voice recording qualifies as data that "could be used to identify" a person because it could be used to create an entirely different type of data that in turn could be used to identify a person in certain circumstances. Opp. 17 ("[A] biometric identifier 'itself' [need not] be capable of being used to identify without creating 'different data'"). As discussed next, and as every court to have considered the issue has concluded, Plaintiff is wrong. Mot. 13-14. In all events, "[w]hether [the data collected from Plaintiff] constitutes a … biometric identifier under BIPA is not a question of fact. … [Rather, it] is a question of statutory interpretation for the Court to decide." *Howe v. Speedway LLC*, 2024 WL 4346631, at *4 (N.D. Ill. Sept. 29, 2024).

### 2. Data That Itself Cannot Be Used to Identify Cannot Be a Voiceprint

Data can qualify as either a "biometric identifier" or "biometric information" under BIPA only if it "could be used to identify" an individual. Mot. 11-12, *Zellmer*, 104 F.4th at 1124-25. It is therefore unsurprising that courts have uniformly held that a voice recording, which itself could not be used to identify the speaker, is not a "voiceprint" under BIPA, even in the hands of a company with technology that could use that recording to create different data that could be used to identify the speaker in certain circumstances. Mot. 13-14; *see McGoveran v. Amazon Web Servs., Inc.,* 2023 WL 2683553, at *10 (D. Del. Mar. 29, 2023) ("[U]nder [BIPA]'s terms, voice audio alone is neither a biometric identifier (a voiceprint) nor biometric information (information derived from a voiceprint)."); *Rodriguez v. ByteDance, Inc.*, 2025 WL 672951, at *17-19 (N.D. Ill. Mar. 3, 2025) ("videos are not themselves biometric identifiers," including "voiceprints"); *Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 817 (N.D. Ill. 2022) (same); *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1096 (N.D. Ill. 2017) (similar). The Illinois Attorney General likewise recognized that "there would be no violation of [BIPA]" for "someone who records a person's voice without" applying technology to that recording to "generat[e] a voiceprint." Public Access Opinion, 2017 WL 10084298, at *3 (Ill. A.G. Aug. 14, 2017) ("a voiceprint, which is a record of mechanical measurement, is not the same as a simple recording of a voice") (internal quotations omitted); *accord Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512, 515 (N.D. Ill. 2022).

Despite claiming that her theory is "not … novel," Opp. 2, Plaintiff cites no case holding that a voice recording can be a voiceprint simply because it could be used to create different data

that could be used to identify a speaker in certain circumstances.[3] Instead, Plaintiff tries and fails to distinguish Meta's cited authorities. For example, Plaintiff contends that *McGoveran* and *Rodriguez* are inapt because the claims there arose under Sections 15(d) and (c)—which apply when a company "in possession" of a biometric identifier "disclose[s]" or "trade[s]" it, 740 ILCS 14/15(c), (d)—and lacked allegations that nonparties to whom the audio and video recordings were sent had identification capabilities. Opp. 19 n.7. But neither decision said anything about the nonparty's identification capabilities or lack thereof; to the contrary, both decisions categorically held that the recordings themselves were not voiceprints—even though the companies "in possession" of the recordings allegedly *did* have technology that could use them to create different data that could identify the speaker. *McGoveran*, 2023 WL 2683553, at *1-2, *10 (holding that "voice audio alone is [not] a biometric identifier (a voiceprint)," even accounting for Amazon's "voice authentication" technology "that confirms [speakers'] identities"); *Rodriguez*, 2025 WL 672951, at *17-18 (holding that "videos are not themselves biometric identifiers," even accounting for ByteDance's "speaker identification" technology).

Plaintiff also asserts that the voice recordings deemed not to be voiceprints in *Rivera* were "simple" recordings, without explaining what that means or how it differentiates them from her recordings. Opp. 19. Indeed, *Rivera* expressly contemplated and rejected the idea that the voice recordings at issue there, which could be (but were not) used to "generate" data that could be used to identify a person, were sufficient to create liability under BIPA. 238 F. Supp. 3d at 1096-97. Yet Plaintiff advances precisely that rejected theory here. Finally, Plaintiff dismisses the Illinois Attorney General's opinion on the ground that the "expertise" of the Public Access Counselor ("PAC") is "FOIA, not BIPA." Opp. 19 n.6. However, the opinion was issued not by the PAC, but by the Attorney General herself, and as the Attorney General noted, this was not her first opinion construing BIPA. 2017 WL 10084298 at *3, 5-7; *see Burris v. White*, 901 N.E.2d 895, 899 (Ill. 2009) ("[A] well-reasoned opinion of the Attorney General is entitled to considerable weight.").

As these authorities make clear, BIPA applies only to data that can be used to identify an

---

[3] Plaintiff's inability to cite any on point authority issued in the approximately 2,000 BIPA suits filed since the statute's enactment is telling. *See* Mot. 13 n.9.

individual, not the "underlying medium"—such as Plaintiff's voice recordings—from which such data can be created. Mot. 13-14 (collecting cases). Plaintiff asks the Court to disregard (what she calls) this "concept" because it "comes from *Rivera*, … a case involving 'scans of face geometry,'" the "logic [of which] does not translate to BIPA's 'print' identifiers," like "voiceprints." Opp. 18. But *Rivera*'s language was categorical as to *all* biometric identifiers: "[A] 'biometric identifier' is not the underlying medium itself, … but instead is [the] eye, finger, *voice*, hand, [or] face" data *created from* the medium that can be "used to identify a person." 238 F. Supp. 3d at 1096 (emphasis added). Moreover, *Rivera* illustrated its logic with specific reference to voice data, giving the example of a voice recording as the "underlying medium" from which a "voiceprint" could be created. *Id.* at 1096-97. And *Rivera*'s "underlying medium" concept has been recognized by numerous other courts, including in cases involving voice data. *See Rodriguez*, 2025 WL 672951, at *18 (distinguishing plaintiffs' "'underlying medium' (their videos)" from "voiceprints" allegedly created from their videos); *Patterson*, 593 F. Supp. 3d at 799, 817 (video with audio recorded through a "webcam and microphone" was the "underlying medium" and not itself a "voiceprint"); *cf.* Opp. 19 (incorrectly implying that *Patterson* "allowed claims" that alleged a video recording *was* a voiceprint, notwithstanding the court's express statement that "a video … is not itself a biometric identifier").[4] Here again, Plaintiff's attempts to "distinguish" Meta's on-point authorities are a fruitless effort to distract from her own lack of authorities: No case holds that a video or audio-only recording from which identifying data could be created is itself a "voiceprint," as opposed to merely an "underlying medium."

Nor does any case support Plaintiff's contention that BIPA erects a "two-tiered framework" under which a "biometric identifier" is "the input" and "biometric information" is the "derived output" used for identification—and therefore that a voice recording is a biometric identifier because it is "the input into a speaker [identification] model." Opp. 16. BIPA does not erect two "tiers." To the contrary, as the Ninth Circuit has made clear, data can be "*either* form of biometric

---

[4] *See also, e.g., Vance v. IBM Corp.*, 2020 WL 5530134, at *4-5 (N.D. Ill. Sept. 15, 2020) (citing *Rivera*'s "underlying medium" rationale); *In re Clearview AI, Inc., Consumer Priv. Litig.*, 585 F. Supp. 3d 1111, 1123 (N.D. Ill. 2022) (same); *Sloan v. Anker Innovations Ltd.*, 2025 WL 2104559, at *4 (N.D. Ill. July 28, 2025) (same); *Tibbs v. Arlo Techs., Inc.*, 2024 WL 3218650, at *8 (N.D. Cal. June 27, 2024) (same).

data"—biometric identifiers or biometric information—only if it "can be used to uniquely identify a person." *Zellmer*, 104 F.4th at 1123-24.

The only support Plaintiff offers for this supposed "two-tiered" structure is *Howe*, 2024 WL 4346631, at *7-9, and a case that cites it, *Tapia-Rendon v. Workeasy Software, LLC*, 2025 WL 2299592, at *6-7 (N.D. Ill. Aug. 8, 2025). Opp. 16-17. But consistent with Meta's position here, those cases simply hold that a *partial* fingertip scan can still be a biometric identifier, and that templates derived from such scans can still be biometric information, "as long as" each "can be used to identify." *Howe*, 2024 WL 4346631, at *7-9. Neither *Howe* nor *Tapia-Rendon* say anything about a "two-tiered" structure under which data can be a biometric identifier—such as a fingerprint or voiceprint—if it cannot itself be used to identify an individual.[5] That makes perfect sense: *Howe* was decided by Judge Chang, who explained in *Rivera* how BIPA's structure actually works. Specifically, the legislature chose to supplement BIPA's coverage of "biometric identifiers" (such as voiceprints) by covering "biometric information" (data "based on a biometric identifier" that could be "used to identify an individual") to ensure that companies could not "evade" BIPA "by converting a person's biometric identifier into some other piece of information, like … a unique number assigned to [the] biometric identifier," where that information "still … can be used to identify the person." *Rivera*, 238 F. Supp. 3d at 1095-97. In other words, "biometric identifiers" and "biometric information" are merely different formats of the data that can itself be used to identify a person. *Id.* A voice recording—unlike identifying data that could be created from it—is neither form of biometric data.[6]

---

[5] In seeking to analogize voice recordings to fingerprints, Plaintiff asserts—without support—that "[a] fingerprint 'itself' cannot identify anyone," as it cannot be used for "comparison and matching." Opp. 16-17. That assertion defies common knowledge. *See* Cyril John Polson, *Finger Prints and Finger Printing: An Historical Study*, 41 J. Crim. L. & Criminology 495, 496 (1950–1951) (describing the methods of comparing and matching fingerprints that were established by the early 1900s). In contrast, as the undisputed record here establishes, a voice recording itself cannot be used for the comparison and matching needed for identification. Mot. Ex. 6 173:3-24. That is why BIPA covers "fingerprints" and not "voice recordings." *See* 740 ILCS 14/10 (defining "biometric identifier" and "biometric information").

[6] Plaintiff's assertion that Meta "recognized" her two-tiered framework in a prior BIPA case, Opp. 17, makes no sense. The referenced Meta brief advanced the argument—not pertinent here—that Meta's face templates were not "scans of face geometry" (and thus not "biometric identifiers") because they were not "geometric." *In re Facebook Biometric Info. Privacy Litig.*, No. 3:15-cv-

Finally, Plaintiff argues that BIPA's express "exclusion of 'photographs'" from the definition of "biometric identifier" implies the *inclusion* of "voice recordings." Opp. 2, 16. That argument proves too much. There is an unlimited universe of items not expressly excluded from the definition of "biometric identifier," yet that does not mean that all those items are included. Rather, the definition is limited and exhaustive, covering six specific items, including "voiceprints." 740 ILCS 14/10. If the legislature had intended BIPA to cover "voice recordings," it would have used that term instead of (or alongside) the distinct term "voiceprints." *See Zellmer*, 104 F.4th at 1122 ("In Illinois, courts regard the language of the statute as the best indicator of legislative intent."). Indeed, the legislature routinely demonstrates that it knows how to cover "voice recordings"—or "audio" or "video" recordings—in a statute when that is its intent.[7] *See In re A.A.*, 236 N.E.3d 601, 611 (Ill. App. 2023) (exclusion of a term from a statute should be "construed as intentional" when the legislature has included it in other statutes); *People v. Foster*, 195 N.E.3d 1224, 1227 (Ill. App. 2021) (same). That the legislature did not do so here explains why, once again, no court has ever held that BIPA covers voice recordings.

In sum, every court to have considered voice recordings like those at issue here—which could be used to create different data that could be used to identify a person under certain circumstances—has held that they are "mere" voice recordings, not voiceprints, and therefore not subject to BIPA. This Court should decline Plaintiff's invitation to be the first to hold otherwise.

**B.     BIPA Does Not Apply to Plaintiff's Voice Recordings Because Meta Does Not Have the "Linking Data" Necessary to Identify Her From Those Recordings**

Even if BIPA applied to voice recordings simply because they could be used to create data (which, as noted, Meta calls Output Representations) that could, in turn, be used to identify the speaker under certain circumstances, BIPA still would not apply to Plaintiff's voice recordings.

---

03747 (N.D. Cal. Mar. 16, 2018), Dkt. 299 at 2, 20. In any event, that brief was filed six years before *Zellmer*, which settled the law governing this suit by holding that data can be a biometric identifier or biometric information only if it can be used to identify a person.

[7] *See, e.g.*, 105 ILCS 85/5 (covering "voice recordings"); 720 ILCS 5/14-2 (covering "recording[s]" of conversations); 820 ILCS 180/33 (requiring disclosure of "voice or video recordings"); 405 ILCS 5/4-209 (covering "audio recording[s]" of meetings); 720 ILCS 5/16-7 (criminalizing sale of "audio visual recordings"); 720 ILCS 5/11-23.5 (criminalizing dissemination of "digital recording[s]"); 815 ILCS 550/5 (regulating "electronic representation of the identity of an actual individual … fixed in a sound recording or audiovisual work").

The reason is plain: the record indisputably shows that Meta could not use Plaintiff's recordings to create Output Representations that could be used to identify her because it has no information linking her voice, among the various voices included in her recordings, to her identity. Mot. 17-23; *see* Mot. Ex. 7 ¶¶ 5-6; Mot. Ex. 8 ¶¶ 5-6; Mot. Ex. 10, 7-8; Mot. Ex. ¶ 62. That is fatal to Plaintiff's claims: As her own expert, Dr. Singh, admitted, "you need some indicator of the identity of the person" to whom a particular voice belongs "[i]n order to specifically identify [the] person" based on voice. Mot. Ex. 6 145:20-146:9.

Faced with this independent ground for defeating her claims, Plaintiff (a) attempts to create disputes of fact via digressions into certain Meta systems and technologies that have nothing to do with who the speakers are in her Facebook or Messenger recordings, Opp. 10-13, 21-25, and (b) speculates that Meta could probabilistically determine which voice in her recordings actually belongs to her, Opp. 23-25. But Plaintiff's speculation is "insufficient to raise genuine issues of fact" at summary judgment. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see also McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1173 (9th Cir. 2016) ("[a]rguments based on conjecture or speculation" cannot defeat summary judgment). In fact, there is no genuine dispute that *all* of Plaintiff's recordings—and any Output Representations that could have been (but were not) created from those recordings—are functionally anonymous, cannot identify her, and are thus not subject to BIPA. *See* Mot. 17-23.

> 1.    *Voice Recordings Unlinked to Speaker Identities Are Not Subject to BIPA*

Plaintiff contends that Meta's linking data argument—set forth at Mot. 17-23—"disregards *Zellmer*'s 'capability' standard." Opp. 21. But Meta discussed that "capability" standard in explaining why summary judgment is warranted. Mot. 17-20. It is Plaintiff—not Meta—that departs from *Zellmer* by suggesting that BIPA reaches voice recordings in which the speaker's identity is unknown, and which thus cannot identify the speaker. *See* Mot. 5-6.

*Zellmer*'s "capability" standard is significantly simpler than Plaintiff suggests. As noted, *Zellmer* confirms that BIPA does not reach data that "cannot identify." 104 F.4th at 1123-24. Thus, contrary to Plaintiff's submission, Opp. 21-25, the operative question is not whether *Meta* could probabilistically identify Plaintiff's voice using some combination of her recordings and other

information. Rather, as *Zellmer* makes clear, it is whether the data that Plaintiff claims is "biometric" can itself actually identify her as the speaker. *Zellmer*, 104 F.4th at 1123, 1125 (operative question was "whether face signatures can identify a person").

That distinction is dispositive because Plaintiff does not contend that her voice recordings *themselves* can identify her. Nor could she. A voice recording cannot identify the speaker, and an Output Representation created from a voice recording can potentially identify a speaker only if the voice is linked to the speaker's identity. Mot. 5; Mot. Ex. 6 145:20-146:9; Opp. 5 (speaker ID involves "connect[ing] a voice" with the speaker's "identity"). And the record indisputably shows that Meta has no information linking voices in Plaintiff's recordings to the identities of any of the speakers, including her. Mot. 5-6, 20-22.

Like this case, *Zellmer* addressed data that a plaintiff contended was a biometric identifier (*i.e.*, "face signatures"), even though Meta did not know the identity of the person whose face was reflected in the data. 104 F.4th at 1120-21, 1123-27. The Ninth Circuit held that such data was not subject to BIPA because unlike "face templates," which *were* linked to the person to whom the face belonged and thus could be used to identify, the face signatures at issue there were *not* linked in that way and so "c[ould not] identify." *Id.* at 1121, 1125-27. *Zellmer* thus confirms that where (as here) Meta does not know whose face or voice is reflected in given data, that data cannot identify and thus is not subject to BIPA. Mot. 18-19 (collecting cases).[8] Plaintiff's cases, which are all pleading-stage decisions, are not to the contrary,[9] as none supports that BIPA reaches voice

---

[8] Plaintiff conflates (a) the notion that biometric data need not "confirm" a person's identity "100% of the time" to qualify as biometric data with (b) the notion that data unlinked to a confirmed identity is not "biometric" at all. Opp. 18. Her cited cases involved fingerprints (*Howe*) and face templates (*In re Facebook*) that were linked to an identity but that failed *some of the time* to correctly match to and identify the right person. Here, by contrast to those fingerprints and face templates, the voices in the recordings that Plaintiff uploaded are unlinked to the speaker's identity. This means that even if two or more Output Representations created from those recordings matched each other, they could not identify the (anonymous) speaker *at any time*. Cf. *Zellmer*, 104 F.4th at 1126 (holding that data unlinked to plaintiff's identity was not "biometric," even though it "matched" other data on occasion).

[9] *See Taylor v. 48forty Sols., LLC*, 2024 WL 1530383, at *5 (N.D. Ill. Apr. 9, 2024) (alleging defendant "could (and did) tie" facial scans to his identity); *Robinson v. Lake Ventures LLC*, 2023 WL 5720873, at *7-9 (N.D. Ill. Sept. 5, 2023) (alleging data "was itself capable of identifying" plaintiffs); *Castelaz v. Estée Lauder Co.*, 2024 WL 136872, at *7 & n.6 (N.D. Ill. Jan. 10, 2024) (plaintiffs did not plausibly allege that data could identify them); *Konow v. Brink's, Inc.*, 721 F.

recordings, or even Output Representations, unlinked to the speaker's identity. Mot. 5-6.

2.    *Recordings Associated With the Uploader's Account ID Are Unlinked to the Speaker's Identity*

Plaintiff attempts to undermine the undisputed evidence that the voices in her recordings are not linked to speaker identities by repeatedly noting that recordings uploaded to Facebook and Messenger are stored in association with the account ID of the users who uploaded them. Opp. 10-13, 21-25. But that is irrelevant to the question under BIPA, which is not whether Meta knows the identity of the *uploading user*, but instead whether Meta knows the identity of the *speaker*.

As Plaintiff's own recordings illustrate, those questions are distinct. Facebook and Messenger users commonly upload files containing voices other than their own—so Meta cannot simply assume that the voice in a given recording belongs to the account holder who uploaded it. Mot. 5 (describing Plaintiff's upload of, among other things, a recording of multiple fans speaking at a football game). Plaintiff ignores this practical reality and conflates *account linkage* with the very different issue of *speaker linkage*. Opp. 21-25. And there is no genuine dispute that particular voices in Plaintiff's recordings are not linked to speaker identities, as would be necessary for Output Representations created from those recordings to be able to identify the speakers in the recordings. Mot. 5-6, 20-23; Mot. Ex. 6 145:20-146:9.

Because account linkage and speaker linkage are distinct, Plaintiff's cases are inapt. Opp. 22. At most, they suggest that account information can supply the necessary linkage only if it is expressly linked to the user's face or voice within content. *Zellmer*, 104 F.4th at 1120-21; *Castelaz*, 2024 WL 136872, at *7 (dismissing BIPA claim where defendant lacked information linking alleged facial scans with identities); *Samsung*, 742 F. Supp. 3d at 801 (no BIPA violation where alleged facial scans created by device were not linked to the identity of user or anyone else). Those cases do not support that data is subject to BIPA simply because Meta knows which account holder

---

Supp. 3d 752, 757-58 (N.D. Ill. 2024) (alleging defendant "had the means" to connect facial scans to identities sufficed to state a claim); *Daichendt v. CVS Pharmacy, Inc.*, 2023 WL 3559669, at *1 (N.D. Ill. May 4, 2023) ("The relevant inquiry … is whether defendant's … system collects … plaintiffs' identifying biometric data[.]"); *Hartman v. Meta Platforms, Inc.*, 2024 WL 4213302, at *12 (S.D. Ill. Sept. 17, 2024) (alleging defendant had "identifying information").

uploaded the data—they refute that assertion.[10] *Zellmer*, 104 F.4th at 1126 (facial scan was not capable of identifying even though underlying photo was uploaded to an identified account).

Plaintiff otherwise mischaracterizes and fails to distinguish Meta's authorities, which include both user and non-user cases. *Cf.* Opp. 1, 15, 23 (repeatedly suggesting Meta relies only on "cases involving non-users"). For example, *Ji v. Naver Corp.*, 2023 WL 6466211 (N.D. Cal. Oct. 3, 2023), is a user case holding that alleged facial scans were not covered by BIPA. Although those scans could be connected to the "user ID" of the user who uploaded the underlying image, such linkage to the *uploading account* was not the same as "pairing the face" within the image with "an identity"—whether the user's or anyone else's—as would be necessary for the scans to identify the subjects. *Id.* at *12. The court emphasized that "simply identifying all information [the company] has amassed on a given user" was not the same as "pinpointing a person's identity with the aid of biometric data." *Id.* The caselaw thus does not support the distinction Plaintiff attempts to draw between user and non-user cases. Rather, it confirms that BIPA does not apply where user data (even where available) is unlinked to specific faces or voices within content.

> 3.    *Meta's Supposed "Linking Mechanisms" Do Not Link Plaintiff's Voice to Her Identity*

Implicitly conceding that voices in her Facebook and Messenger recordings are unlinked to speaker identities—let alone her own—Plaintiff falls back on speculation that Meta could use other technologies to presume the identity of the speaker in her recordings. Opp. 23-25. That pivot underscores precisely why her claims fail as a matter of fact and binding law.

Specifically, Plaintiff argues that an array of data unrelated to her recordings—including "contextual data, location data, system data, social graph data, degrees of separation, and behavioral patterns"—could be used through Meta's "predictive infrastructure" to guess which of

---

[10] Plaintiff's cites (Opp. 22-23) do not help her. Meta does not dispute Facebook ID numbers are a type of identifier or that they are indicative of a user's/account holder's identity. Meta *does* dispute—and the record refutes—they allow Meta to determine who is speaking in a Facebook or Messenger recording rather than who uploaded the recording. Mot. 5. While Plaintiff cites one document suggesting that Facebook ID numbers can be used as "matching labels for speaker ID," Opp. 22, that pertains to Meta's ▉▉▉▉▉▉▉▉▉▉▉ (not Facebook or Messenger), Opp. Ex. 14, and there is no evidence that Plaintiff ever used that ▉▉▉▉ That document is insufficient to create a triable dispute about Plaintiff's recordings pertinent here. Opp. Ex. 11 164:1-17 (discussion concerned ▉▉▉▉▉▉▉▉; Mot. Ex. 14, 5-6 (explaining ▉▉▉▉▉.

the many voices in her recordings belongs to her. Opp. 23-24 & n.11. But "predictive infrastructure" is a term of Plaintiff's own invention that does not appear in Meta's documents. Plaintiff does not elaborate on its meaning, much less provide evidence of what Meta's actual infrastructure entails. Plaintiff's reliance on Meta's patent describing a non-existent, hypothetical system does not create a triable issue as to Meta's present capabilities. *See* Mot. Ex. 3, 22; Mot. Ex. 5 ¶ 108. Nor does Plaintiff even attempt to contradict Meta's evidence showing that the mechanisms referenced in her brief do not analyze or process video or audio content.[11] Mot. Ex. 9 ¶ 4; *see supra* Section B.1; Mot. 17-20.

The only materials Plaintiff cites related to Meta's actual use or analysis of audio content are (1) selectively-quoted standard-form language in Meta's privacy policy and (2) evidence regarding a research prototype that Meta designed for speakers whose voices had been enrolled and linked to their identities and that do not relate to Facebook or Messenger. Mot. Ex. 14, 14-15; *contra* Opp. 23-24. Neither support the weight Plaintiff places on it. *See G.T. v. Samsung Elecs. Am., Inc.*, 760 F. Supp. 3d 665, 670 (N.D. Ill. 2024) (privacy policy language "too speculative" to support BIPA claim); Mot. Ex. 5 ¶¶ 35, 90 n.95 ███████████████████████████

████████████████████████████████████████████████

Plaintiff's only other evidence is Dr. Singh's testimony, which does not purport to answer the question that matters (*i.e.*, who is the speaker), as opposed to finding a dominant voice in a set of recordings. Mot. 21-22. Rather, Plaintiff relies on Dr. Singh to claim that Meta could, in effect, make an educated guess as to which voice in Plaintiff's recordings belongs to her if Meta were to "associate audio with an account, compare data commonalities, cluster similar data, and identify probabilistically" based on that analysis. Opp. 23. But the record is clear that Meta has never undertaken any such analysis with Plaintiff's recordings, and that the recordings as they exist do not link voices to speaker identities. *See* Mot. 5; Mot. Ex. 7 ¶¶ 5-6; Mot. Ex. 8 ¶¶ 5-6; Mot. Ex. 9

---

[11] To put a finer point on it, Plaintiff's theory does not and cannot create a triable dispute because it is based entirely on unsupported generalities about what Meta's systems are designed to do as a hypothetical matter. Even if all those assertions are taken at face value, her materials prove nothing about what Meta actually could do with respect to Plaintiff using her Facebook and Messenger recordings, let alone whether Meta actually has the speaker-identity-linked data that would be necessary for Meta to identify her based on her voice. After two years of discovery, Plaintiff has no evidence that Meta has such data—because as a matter of undisputed fact, Meta does not.

¶ 4. Plaintiff points to no evidence to the contrary. Indeed, Dr. Singh conceded that there is "no certain evidence" supporting the proposition that the dominant speaker is the account holder—as is certainly the case with, for example, parents who upload their young children's voices. *See* Mot. Ex. 6 84:17-23, 91:15-20. As a matter of law, that ends the analysis. *Zellmer*, 104 F.4th at 1126.

### C.      Plaintiff's Theory Cannot Be Squared With BIPA's Legislative Intent

As Meta explained, Plaintiff's theory would result in BIPA applying to virtually any individual or company that (1) possesses a voice recording (even standard movies, songs, or voicemails), and (2) has access to the internet, where technology that could use the recording to create different data that could possibly be used to identify the speaker is available for free. Such sweeping liability cannot be reconciled with the legislature's intent. Mot. 14-17.

Plaintiff calls this "hyperbolic," reasoning that because Meta developed proprietary "state-of-the-art speaker ID models," it is situated differently than individuals and companies with mere "internet access."[12] Opp. 19-20. In support, Plaintiff asserts that BIPA "looks to what the collector *has*—not just what is publicly-available." *Id.* at 20. But Plaintiff offers no reason why her theory could be cabined to *just* a company's proprietary technologies or to those that are "state-of-the-art"—and, indeed, it is not. One of the "Meta" technologies upon which Plaintiff relies to support her claim about Meta's capabilities—"Audiobox"—is powered by "WavLM," a publicly-available "speaker ID technology." Opp. 8; Mot. Ex. 14, 9-10. And as Plaintiff concedes, her own expert used a different "*public* speaker ID model" to show how "easy" it is to use the standard video and audio files at issue to create Output Representations. Opp. 20 (emphasis added). Any company or individual is as capable as Meta (or Plaintiff's expert) of processing voice recordings with that technology. And under Plaintiff's theory, BIPA liability turns on that capability.

Nor is Meta uniquely situated because it has information about the Facebook or Messenger user who *uploaded* a given recording, which Plaintiff claims permits Meta to link an Output Representation to the identity of the person who *spoke* in that recording. Opp. 20. Consider a

---

[12] Plaintiff speculates that BIPA "may not apply to" an individual "person" because the definition of "private entity" does not use the word "person." Opp. 20 n.8. But "private entity" is defined to include "any individual," 740 ILCS 14/10, and BIPA uses the word "individual" in seven additional places to describe an individual person, *see id.*

flower shop that operates a website. A customer who creates an online account to place an order enters her phone number, name, and address. If the customer calls and leaves a voicemail, the shop would have (1) a voice recording; (2) access to the internet and therefore to technology that could create Output Representations from the recording; and (3) based on the phone number that called, the related account information of the customer to associate with the recording. Under Plaintiff's theory, the shop would be subject to BIPA liability because the recording would be a "voiceprint." Opp. 20 (conceding that a "voicemail" would constitute a "voiceprint" in the hands of someone with speaker identification technology and linking information). Even more simply, anyone with a recorded podcast would have the name of the host; anyone with recorded songs would have the names of the singers; and anyone with recorded movies would have the names of the cast members. The examples are virtually limitless. That is precisely Meta's point.

As Plaintiff acknowledges, Opp. 21 & n.9, BIPA must be construed to avoid forcing companies to "risk perpetual liability." *Zellmer*, 104 F.4th at 1124. Yet Plaintiff's theory would do that and more. Plaintiff claims her theory would merely require "enact[ing] simple procedures" because "[a]ll a company has to do is obtain consent" before collecting biometric data. Opp. 21. But Plaintiff overlooks that Section 15(c) makes it categorically unlawful—irrespective of "consent"—to "sell, lease, trade, or otherwise profit from" biometric data. 740 ILCS 14/15(c). And Section 15(e) requires private entities to "store, transmit, and protect from disclosure" all biometric data with the industry standard of care for non-biometric "confidential and sensitive information," such as "genetic testing information," "social security number[s]," "PIN number[s], [and] pass code[s]." *Id.* 14/15(e), 14/10. Thus, if "voice recordings" were "voiceprints," it would be unlawful to sell, trade, share, or post videos and audio files in the State of Illinois, rendering unlawful the everyday conduct of large companies (like Netflix and YouTube), small businesses (like local movie theaters and radio stations), and individuals (like those who create or share virtually any audio/visual content). Surely if the legislature had intended such an extravagant result, it would have said so. Because it did not, Plaintiff's theory equating voice recordings to voiceprints fails.

## III. CONCLUSION

The Court should grant summary judgment to Meta.

Dated: April 24, 2026

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:   */s/ Lauren R. Goldman*
      Lauren R. Goldman

LATHAM & WATKINS LLP

By:   */s/ Gary S. Feinerman*
      Gary S. Feinerman

*Attorneys for Defendant Meta Platforms, Inc.*

**CIVIL L.R. 5-1(i)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, Gary S. Feinerman, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.


Dated: April 24, 2026                     Respectfully submitted,


                                    By    */s/ Gary S. Feinerman*
                                          Gary S. Feinerman