LATHAM & WATKINS LLP
SEAN M. BERKOWITZ (admitted *pro hac vice*)
GARY S. FEINERMAN (admitted *pro hac vice*)
KATHRYN K. GEORGE (admitted *pro hac vice*)
330 N. Wabash Ave., Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
sean.berkowitz@lw.com
gary.feinerman@lw.com
katie.george@lw.com

GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (admitted *pro hac vice*)
MICHAEL BRANDON (admitted *pro hac vice*)
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
lgoldman@gibsondunn.com
mbrandon@gibsondunn.com

CHRISTOPHER CHORBA, SBN 216692
DIANA FEINSTEIN, SBN 302626
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7396
cchorba@gibsondunn.com
dfeinstein@gibsondunn.com

*Attorneys for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| NATALIE DELGADO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:23-cv-04181-SI<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing: July 31, 2026<br>Time:  10:00 a.m.<br>Location: Courtroom 1 - 17th Floor<br>Judge: Hon. Susan Illston |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 31, 2026, at 10:00 a.m. in Courtroom 1 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Meta Platforms, Inc. will and hereby does move for an order certifying this Court's May 20, 2026 Order Denying Meta's Motion for Summary Judgment for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

This motion is based on Defendant's Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the pleadings and papers on file in this action, the arguments of counsel, and any other matter that the Court may properly consider.

## STATEMENT OF ISSUE TO BE DECIDED

Pursuant to 28 U.S.C. § 1292(b) and Appellate Rule 5(a)(3), Meta moves for certification of this Court's May 20, 2026 Order Denying Meta's Motion for Summary Judgment on the ground that the order implicates a controlling and purely legal question, over which there are reasonable grounds for difference of opinion, the resolution of which may materially advance the termination of this litigation.

DATED: June 17, 2026

Respectfully submitted,
LATHAM & WATKINS LLP

By  */s/ Gary S. Feinerman*
    Gary S. Feinerman

*Attorney for Defendant Meta Platforms, Inc.*

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................. 1

II.   BACKGROUND ................................................................................................... 2

III.  ARGUMENT ........................................................................................................ 4

    A.    Whether Voice Recordings Qualify As "Voiceprints" Under
Plaintiff's Version Of The Facts Is A Controlling Question Of Law .................... 4

    B.    There Is A Substantial Ground For Difference Of Opinion As To
Whether The Standard Audio Recordings That Plaintiff Uploaded
to Meta's Services Qualify As "Voiceprints" Under BIPA ................................. 5

    C.    An Immediate Appeal Will Materially Advance The Termination
Of This Litigation ................................................................................. 12

IV.   CONCLUSION ................................................................................................... 13

## **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
219 F.3d 674 (7th Cir. 2000) ...................................................................................4, 5

*Burris v. White*,
901 N.E.2d 895 (Ill. 2009) .........................................................................................7

*Cothron v. White Castle Sys., Inc.*,
20 F.4th 1156 (7th Cir. 2021) ...................................................................................12

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010) ................................................................................6, 12

*G.T. v. Samsung Elecs. Am. Inc.*,
742 F. Supp. 3d 788 (N.D. Ill. 2024) ........................................................................11

*Hartman v. Meta Platforms, Inc.*,
2026 WL 1361700 (S.D. Ill. May 15, 2026), *petition filed*, No. 26-8013 (7th
Cir.) ...........................................................................................................................13

*Hazlitt v. Apple Inc.*,
500 F. Supp. 3d 738 (S.D. Ill. 2020)....................................................................10, 11

*Hooks v. CloudSpotter Techs. Inc.*,
2026 WL 1045734 (N.D. Ill. Apr. 17, 2026)............................................................11

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
22 F.4th 1125 (9th Cir. 2022) ...............................................................................4, 12

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1982) ...............................................................................4, 5

*McGoveran v. Amazon Web Servs., Inc.*,
2023 WL 2683553 (D. Del. Mar. 29, 2023) ..................................................... *passim*

*Patterson v. Respondus, Inc.*,
593 F. Supp. 3d 783 (N.D. Ill. 2022) ......................................................................6, 9

*Payton v. Union Pac. R.R. Co.*,
2025 WL 3012662 (N.D. Ill. Oct. 28, 2025)..............................................................6

*Payton v. Union Pac. R.R. Co.*,
Order, No. 25-8031 (7th Cir. Apr. 21, 2026)............................................................12

*Pirani v. Slack Techs., Inc.*,
2020 WL 7061035 (N.D. Cal. June 5, 2020) ...................................................................4

*Reese v. BP Expl. (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) ............................................................................ *passim*

*Rivera v. Google Inc.*,
2017 WL 11895720 (N.D. Ill. Jun. 27, 2017) .................................................................6

*Rivera v. Google Inc.*,
238 F. Supp. 3d 1088 (N.D. Ill. 2017) .......................................................................6, 9

*Rodriguez v. ByteDance, Inc.*,
2025 WL 672951 (N.D. Ill. Mar. 3, 2025) ......................................................... *passim*

*Sonos, Inc. v. Google LLC*,
591 F. Supp. 3d 638 (N.D. Cal. 2022) ..........................................................................12

*Sterling v. Feek*,
150 F.4th 1235 (9th Cir. 2025) ......................................................................................12

*Thomson Reuters Enter. Centre GmbH v. Ross Intel. Inc.*,
2025 WL 1488015 (D. Del. May 23, 2025) ..............................................................6, 12

*Union Pac. R.R. Co. v. Clay*,
171 F.4th 975 (7th Cir. 2026) ........................................................................................12

*United States v. Stephens*,
237 F.3d 1031 (9th Cir. 2001) .........................................................................................4

*Zellmer v. Meta Platforms, Inc.*,
104 F.4th 1117 (9th Cir. 2024) ......................................................................... *passim*

**STATUTES**

740 ILCS
14/1 *et seq.* ......................................................................................................................1
14/10 ............................................................................................................................5, 7

28 U.S.C. § 1292(b) ........................................................................................... *passim*

**RULES**

Appellate Rule 5(a)(3) .............................................................................................1, 13

**OTHER AUTHORITIES**

Public Access Op., 2017 WL 10084298 (Ill. A.G. Aug. 14, 2017) .............................7, 9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iii

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO CERTIFY ORDER
Case No. 3:23-cv-04181-SI

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Pursuant to 28 U.S.C. § 1292(b) and Appellate Rule 5(a)(3), Defendant Meta Platforms, Inc. ("Meta") moves the Court to certify for interlocutory appeal its May 20, 2026 order denying Meta's summary judgment motion.  *See* Dkt. 167.  Meta seeks certification to allow the Ninth Circuit to address a purely legal and dispositive question: Whether a voice recording that itself could not be used to identify the speaker nevertheless qualifies as a "voiceprint" under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.*, if the defendant has the technical ability (i) to convert the voice recording into a new kind of data that could itself be used to identify the speaker when (ii) that new data can be linked to other data in the defendant's possession about the speaker's identity.  This Court answered the question yes.

The Court's ruling warrants interlocutory appellate review.  Section 1292(b) permits such review where (1) an interlocutory order "involves a controlling question of law," (2) "there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 687-88 (9th Cir. 2011).  Through these "flexible" criteria, Section 1292(b) seeks to avoid "unnecessary, protracted litigation and a considerable waste of judicial resources."  *Id.* at 688 n.5.  Each Section 1292(b) criterion is satisfied here.

*First*, the question whether a voice recording, standing alone, qualifies as a voiceprint simply because the defendant has the technical capability to convert the recording into an entirely different type of data that, together with other data in the defendant's possession, could identify the speaker, is a controlling legal question.  Resolution of that legal question would not require the Ninth Circuit to scrutinize the record, and a negative answer would be dispositive because it would result in summary judgment for Meta.

*Second*, there are ample grounds for disagreement over the right answer to that question.  Several courts have recognized that a voice recording—which itself cannot be used to identify the speaker unless someone first transforms it into an entirely different type of data—is not a "voiceprint" under BIPA, even if possessed by a defendant with technology that could use the

recording to create different data that, together with other data in the defendant's possession, could be used to identify the speaker. *See McGoveran v. Amazon Web Servs., Inc.*, 2023 WL 2683553, at *10 (D. Del. Mar. 29, 2023); *Rodriguez v. ByteDance, Inc.*, 2025 WL 672951, at *17-19 (N.D. Ill. Mar. 3, 2025). The Ninth Circuit's decision in *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117 (9th Cir. 2024), is in accord, holding that data is covered by BIPA only if the data *itself*—and not different data that can be created therefrom—can be used together with linking data to identify a specific person. *Id.* at 1123, 1125. At the very least, "fair-minded jurists might reach contradictory conclusions" about the question whether a voice recording can qualify as a "voiceprint" even when viewing the record in the light most favorable to Plaintiff. *Reese*, 643 F.3d at 688.

*Third*, certifying the summary judgment order for interlocutory appeal—and allowing the Ninth Circuit to definitively resolve the statutory interpretation question presented here—would materially advance the termination of this litigation if the question is resolved in Meta's favor. If this case moves forward without an interlocutory appeal, the parties and the Court will embark on a lengthy and burdensome class certification process, further motion practice, trial preparation, and potentially a trial. That effort will be wasted if the Ninth Circuit ultimately determines—in a post-judgment appeal if Plaintiff prevails at trial—that standalone voice recordings are not "voiceprints" under BIPA even if possessed by a defendant with the technical capability to convert such recordings into different data that, together with other data in the defendant's possession, could identify the speaker. Courts have repeatedly certified questions in BIPA cases for interlocutory review precisely because the statute has spawned thorny and contestable legal questions on potentially dispositive issues. In these circumstances, judicial economy strongly supports Section 1292(b) certification, so that the Ninth Circuit can decide the narrow and dispositive legal question at the heart of this dispute.

## II.   BACKGROUND

The pertinent background is detailed in Meta's summary judgment motion and reply brief, *see* Dkts. 146, 163-3, but the critical facts are as follows. Meta's Facebook and Messenger services allow users to upload and share content containing audio, including by posting videos on Facebook and sending video or audio attachments through Messenger. Dkt. 146 at 1. When a user uploads

an audio recording through Meta's services, Meta receives and stores that content in standard audio formats that are widely used in other contexts, like voicemails and podcasts. *Id.* at 1-2. For instance, a user might upload a video or audio clip to Messenger to send to a friend, whether it is an audio message (much like a voicemail) or a video containing the user's voice. *Id.* at 2.

Meta has the technical capability to take voice recordings as inputs to create an entirely new type of data representing unique characteristics of that voice—what Meta has called an "Output Representation." *Id.*; *see also id.* at 6. An Output Representation could potentially be used to identify the speaker under certain conditions, so long as Meta has additional data that links the Output Representation to the speaker's identity. *Id.* at 3. And Meta will assume for purposes of this Motion—which concerns only Plaintiff—that there is a genuine issue of fact as to whether Meta has that additional data and the technical capability to link a particular Output Representation with Plaintiff's identity. *Id.* at 3-4, 6-7.

But it is undisputed on this record that voice recordings *themselves*, no matter what other data or capabilities Meta has, cannot be used to identify a particular speaker. *Id.* at 4. And it is further undisputed that Meta has not processed or converted Plaintiff's audio or video files to create any Output Representations. *Id.* at 6, 10.

Meta moved for summary judgment, explaining that by merely collecting and possessing Plaintiff's voice recordings, Meta did not collect or possess her "voiceprints" as BIPA understands the term. Dkt. 146. Meta advanced two principal arguments, stated in the alternative. First, BIPA does not apply to mere voice recordings, and a defendant's technical capability to transform a voice recording into an entirely new kind of data (Output Representations) that, together with linking data, potentially could be used to identify the speaker does not render a voice recording a "voiceprint" under BIPA. *Id.* at 9-17. Second, even if Meta were to transform Plaintiff's voice recordings into Output Representations, it still would not have the linking data to use those Output Representations to identify Plaintiff specifically. *Id.* at 17-23.

This Court denied Meta's motion. Dkt. 167. As relevant here, the Court reasoned that Plaintiff "has at least raised a disputed question of fact as to whether Meta has the *capabilities* to identify [her] using her uploaded voice recordings." *Id.* at 10 (emphasis added). Specifically,

construing the record in Plaintiff's favor, the Court held that because Meta "'*could*'" use Plaintiff's voice recordings to create a different type of data (Output Representations) that could, together with other data and capabilities possessed by Meta, be used to identify her, that is enough to render a voice recording a "voiceprint" under BIPA.  *Id.* at 7 (quoting *Zellmer*, 104 F.4th at 1125).

## III.    ARGUMENT

Section 1292(b) was designed for a case like this one.  Whether a standard voice recording qualifies as a "voiceprint" under BIPA simply because the defendant possessing it has the technical capability to convert it into a new kind of data that, together with other data in the defendant's possession, could potentially be used to identify the speaker is a "controlling question of law." *Reese*, 643 F.3d at 687 (citation omitted).  The tension between this Court's decision and the decisions of other district courts addressing whether a standard voice recording can qualify as a "voiceprint" under BIPA shows that there is "substantial ground for difference of opinion." *Id.* at 688.  And an immediate appeal would "materially advance the ultimate termination of the litigation." *Id.* (citation omitted).  This Court should certify its summary judgment order for interlocutory appeal.

### A.    Whether Voice Recordings Qualify As "Voiceprints" Under Plaintiff's Version Of The Facts Is A Controlling Question Of Law

"A controlling question of law must be one of law—not fact." *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022).  "The proper interpretation of a statute is," of course, "a question of law." *United States v. Stephens*, 237 F.3d 1031, 1033 (9th Cir. 2001).  And a question of law is controlling when "resolution of the issue on appeal could materially affect the outcome of [the] litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982).  Settled law holds that "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine" is a controlling question of law for purposes of Section 1292(b). *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000); *see also Pirani v. Slack Techs., Inc.*, 2020 WL 7061035, at *1 (N.D. Cal. June 5, 2020) (relying on *Ahrenholz* and certifying interlocutory order under Section 1292(b)).

BIPA defines the term "biometric identifier" to include a "voiceprint." 740 ILCS 14/10. The question of law presented by Meta's summary judgment motion and this Court's denial thereof is whether a standard voice recording qualifies as a "voiceprint" under BIPA if the defendant has the technical capability to transform that recording into another kind of data (an Output Representation) that, together with other data in the defendant's possession, could potentially be used to identify the speaker. That question is an abstract and pure question of law, as it turns on the meaning of the term "voiceprint" under BIPA. It is the kind of question the Ninth Circuit can decide without having to "study the record," as Meta assumes for present purposes that it has the technical ability to convert Plaintiff's voice recordings into Output Representations and that it has the data and capabilities to link those Output Representations to her identity. *Ahrenholz*, 219 F.3d at 677. And the question is controlling because the Ninth Circuit's resolution of the question "could materially affect the outcome of [the] litigation in" this Court. *In re Cement*, 673 F.2d at 1026. Specifically, if Meta prevails on the statutory interpretation question presented here, it would be entitled to summary judgment.

That the parties disputed certain facts at summary judgment does not make the question presented any less legal or controlling. Assuming Plaintiff's version of the facts—that Meta has the capacity to convert her standard voice recordings into a different kind of data (Output Representations) and that Meta has the technical capability and other data necessary to link such Output Representations to Plaintiff's identity—there is a pure legal question of statutory interpretation regarding whether such facts make standard voice recordings "voiceprints" under BIPA. *That* question does not require the Ninth Circuit to resolve any factual disputes or review the record. It is instead a straightforward question regarding the "meaning of a statutory … provision." *Ahrenholz*, 219 F.3d at 676.

### B.    There Is A Substantial Ground For Difference Of Opinion As To Whether The Standard Audio Recordings That Plaintiff Uploaded to Meta's Services Qualify As "Voiceprints" Under BIPA

As noted, the second Section 1292(b) criterion requires that there be "substantial ground for [a] difference of opinion" on the question presented. 28 U.S.C. § 1292(b). "[N]ovel and

difficult questions" qualify. *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (citation omitted). There need not be "contradictory precedent" to certify an order for interlocutory appeal; rather, it is enough that a question presents a "novel legal issue[] … on which fair-minded jurists might reach contradictory conclusions." *Reese*, 643 F.3d at 688 (citation omitted). Moreover, even if a court is "confident" that it answered a legal question correctly, it may still certify an order under Section 1292(b) if, for example, the question is "hard under existing precedent." *Thomson Reuters Enter. Centre GmbH v. Ross Intel. Inc.*, 2025 WL 1488015, at *1 (D. Del. May 23, 2025); *see also Rivera v. Google Inc.*, 2017 WL 11895720, at *1 (N.D. Ill. Jun. 27, 2017) ("Of course, an interlocutory-appeal certification requires only a 'substantial' ground for difference of opinion, not that the district court be convinced that it came this/close to getting the wrong answer."); *Payton v. Union Pac. R.R. Co.*, 2025 WL 3012662, at *2 (N.D. Ill. Oct. 28, 2025) ("[T]hough the Court believes its opinion was rightly decided, the Court recognizes that both parties offer reasonable interpretations of the statutory language at issue.").

There is substantial ground for difference of opinion on the question presented here. Multiple district courts addressing the issue have concluded that standard voice recordings do not qualify as "voiceprints" under BIPA, even if the defendant could engage in further processes that would allow it to identify the speaker.

In *McGoveran*, for instance, the court explained that "under [BIPA]'s terms, voice audio alone is neither a biometric identifier (a voiceprint) nor biometric information (information derived from a voiceprint)." 2023 WL 2683553, at *10. The court reached that holding even though the plaintiffs alleged that the defendant (Amazon) had actually used speaker identification technology to "extract" data from audio recordings that could then be used to "confirm" the "identities" of the speakers at issue—the equivalent of the Output Representations that Meta could potentially produce here. *Id.* at *4, *7. Likewise, in *Rodriguez*, the court explained that "videos are not themselves biometric identifiers," including "voiceprints," even though the plaintiffs alleged that the defendant (ByteDance) had "speaker identification" technology—just as Meta has—and had in fact "generate[d]" identifying data from such videos. 2025 WL 672951, at *17-18; *see also Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1096 (N.D. Ill. 2017) (similar); *Patterson v.*

*Respondus, Inc.*, 593 F. Supp. 3d 783, 817 (N.D. Ill. 2022) (similar). The Illinois Attorney General, whose views on BIPA's meaning are entitled to deference under Illinois interpretative principles, *see Burris v. White*, 901 N.E.2d 895, 899 (Ill. 2009), is in accord, recognizing that someone "who records a person's voice" without applying technology to "generat[e]" different data that can be used for identification does not collect "biometric" data subject to BIPA, Public Access Op., 2017 WL 10084298, at *3 (Ill. A.G. Aug. 14, 2017). These authorities reject the proposition that BIPA applies to standard voice recordings, even when in the hands of a defendant with the technical ability to transform those recordings into a different kind of data that potentially could then be used, together with other data and linking capabilities possessed by the defendant, to identify the speaker.

The Court recognized these authorities but reasoned with respect to *McGoveran* and *Rodriguez* that "the case law on which Meta relies in arguing that voice recordings cannot be voiceprints analyzed BIPA Sections 15(c) and (d)," while this case involves Sections 15(a) and 15(b). Dkt. 167 at 10. That distinction does not impact whether a particular kind of data—here, a standard voice recording—is covered by BIPA. After all, BIPA does not define "biometric identifier" or "biometric information" any differently for purposes of Sections 15(a) and 15(b) than it does for Sections 15(c) and 15(d); rather, BIPA adopts just one definition of those terms. *See* 740 ILCS 14/10 (promulgating statutory "definitions," including that "[b]iometric identifier" includes "voiceprint[s]"). Although Section 15 addresses different ways that defendants could interact with biometric data, it does not suggest that data is defined any differently depending on which subsection is alleged to have been violated.

Addressing *McGoveran*, this Court reasoned that the court there "allowed the section 15(b) claim brought against Amazon to proceed, based on the allegation that Amazon *itself* extracted customers' voiceprints and used the voiceprints to authenticate callers without their consent." Dkt. 167 at 10-11. That is correct: the Section 15(b) collection claim could proceed because the plaintiffs alleged that Amazon had *actually applied* technology to their voice recordings to "extract[]" a different kind of data that Amazon then could use to identify the plaintiffs. *Id.* Here, by contrast, all agree that Meta has *not* extracted any different kind of data from Plaintiff's voice

recordings—only that Meta has the technical capability to do so. Thus, on that issue, this case instead resembles the Section 15(d) disclosure claim in *McGoveran*, which alleged that all Amazon had disclosed to third parties was the plaintiffs' "voice audio" itself. 2023 WL 2683553, at *10. And as *McGoveran* explained, "voice audio alone is neither a biometric identifier (a voiceprint) nor biometric information (information derived from a voiceprint)." *Id.*

Under *McGoveran*'s approach, therefore, merely possessing standard audio files with the unrealized technical capability to convert them into different data that could be used to identify the speaker is not enough to render those files "voiceprints" under BIPA. *McGoveran* held as much even though Amazon indisputably had the ability to convert the audio files in that manner. That is why *McGoveran* dismissed the Section 15(d) claim premised on Amazon having distributed "voice audio" that had *not* been transformed into identifying data. *Id.*

*Rodriguez* charts a similar path. There, the court dismissed Sections 15(c) and 15(d) (trading and disclosure) claims where the defendants allegedly traded or disclosed standard videos themselves, reasoning that "videos are not themselves biometric identifiers." *Rodriguez*, 2025 WL 672951, at *18-19. By contrast, the court allowed a Section 15(b) (collection) claim to proceed because, with respect to that claim, the plaintiffs "allege[d] that [the] defendants *collect more than their underlying videos*." *Id.* at *18 n.10 (emphasis added). Specifically, the plaintiffs alleged that the defendants collected "voiceprints taken *from* user videos." *Id.* at *16 (emphasis added). And *Rodriguez* makes clear that "biometric" data under BIPA "is not the underlying medium itself"— for instance, standard audio or video recordings. *Id.* at *18 (citation omitted). Put differently, *Rodriguez* found that the Section 15(b) (collection) claim could proceed not because the defendant had the mere technical *capability* to generate new kinds of identifying data from audio or video recordings, but because the defendant in fact had (allegedly) *done* so. Just as in *McGoveran*, the key distinction was whether the defendant had actually "created" a voiceprint—*i.e.*, *used* its technical capabilities to transform standard video information incapable of identifying any individual into data that could be used for identification.

This Court observed that *Rodriguez* allowed the Section 15(b) claim to proceed in part due to allegations that the defendant "'collect[ed] a broad array of private and personally identifiable

data' that (at least in theory) could have been used to connect plaintiffs' voiceprints … to their identities." Dkt. 167 at 11 (quoting *Rodriguez*, 2025 WL 672951, at *17-18). That portion of *Rodriguez*, however, assumed the plaintiffs had plausibly alleged that the defendants had used their videos to generate different data that, together with other linking information, could possibly be used to identify them. *See* 2025 WL 672951, at *17. The court thus turned to the next question of whether the plaintiffs had plausibly alleged that the defendants were capable of identifying them using that data, and held that the plaintiffs had done so based on the complaint's allegations regarding the array of linking information the defendants had about the plaintiffs' identities, even though the defendants were not alleged to have actually used that data and information to identify anybody. *Id.* ("Thus, it is clear from the face of plaintiffs' complaint that defendants were capable of using the data to identify them, even if they did not actually do so.").

The question presented here is materially different. It concerns the logically antecedent question of whether certain kinds of data—here, a standard voice recording—qualifies as "biometric" data to begin with, even assuming the defendant's ability to convert that data into the kind of data that, together with the defendant's other data and capabilities, could be used to identify a particular person. In both *McGoveran* and *Rodriguez*, every claim that—like the claims brought by Plaintiff here—implicated only a voice recording was dismissed as a matter of law on the ground that such data is not "biometric," even where the defendant had the technical capability to transform it into identifying data. Other cases are in accord, *see Patterson*, 593 F. Supp. 3d at 817; *Rivera*, 238 F. Supp. 3d at 1096, as is the Illinois Attorney General, *see* Public Access Op., 2017 WL 10084298, at *3.

The Ninth Circuit's decision in *Zellmer* confirms that merely collecting raw data like standard audio or video files, coupled with the technical capability to generate new identifying data based on such files, is insufficient to render such files "biometric" under BIPA. In *Zellmer*, the Court considered whether Meta's actual creation of "face signatures," which were a new form of "abstract, numerical" data that Meta derived from photographs, were covered by BIPA even if they were incapable of identifying a particular person. 104 F.4th at 1120-21. *Zellmer* holds in no uncertain terms that even though Meta had taken the step of creating new data (face signatures)

from the underlying data (photographs) uploaded by users, BIPA does not reach data that "cannot identify," *id.* at 1123-24, and that the face signatures could not identify because Meta lacked the additional linking data necessary to tie those face signatures to the identity of any person, *id.* at 1123, 1126 (explaining that the plaintiff's claim failed because "a face signature, which is all that was ever created for [the plaintiff], cannot identify him"). This case should reach the same result—the data Meta collected is not covered by BIPA—but for a logically anterior reason, as the dispute here concerns underlying data (voice recordings) that Meta has *not* transformed into a different kind of data that could possibly be used to identify.

The Ninth Circuit's favorable citation in *Zellmer* to *Hazlitt v. Apple Inc.*, 500 F. Supp. 3d 738 (S.D. Ill. 2020), does not suggest otherwise. Dkt. 167 at 6-7. Citing *Hazlitt*, the Ninth Circuit explained that "even if a company *does not* use face scans to identify a person, BIPA applies if it *could*." *Zellmer*, 104 F.4th at 1125. As with the language this Court quoted from *Rodriguez*, that reasoning does not implicate the antecedent question presented here, which is whether data (like a standard audio or video recording) that, unlike a face scan, cannot itself be used to identify an individual can nonetheless qualify as a biometric identifier. In *Hazlitt*, for instance, the plaintiffs "allege[d] that" Apple collected users' "facial geometry" scans from their photos. 500 F. Supp. 3d at 749. Apple argued that, even if it had collected such scans, they were not subject to BIPA because it did not actually "use the scans to [] identify a person." *Id.* *Hazlitt* disagreed, holding that BIPA applies to data that can be used to identify a person and crediting allegations that Apple could use the face scans together with "an algorithm to identify the device user." *Id.*

*Hazlitt* therefore answered the question whether identifying data (a face signature) that has *already* been created—and that the defendant is capable of using, but has not yet used, to identify a person—qualifies as "biometric" data under BIPA. It does not answer the antecedent question at issue here: whether a raw underlying medium—like a standard audio or video file—qualifies as biometric data where the defendant has the technical capability to convert such a file into an entirely new kind of data (here, what Meta calls an "Output Representation") that could *then* be used for identification purposes together with other data in the defendant's possession. Put another way, Meta here—unlike Apple in *Hazlitt*, or even Meta in *Zellmer*—had not reached the point of

having converted (i) an underlying medium that could not be used to identify an individual into (ii) a different kind of data that could itself potentially be so used.

The following chart summarizes the foregoing cases and their conclusion regarding whether data qualifies as a "biometric identifier" or "biometric information" under BIPA:

|  | Underlying Medium | Transformation to Different Data (e.g., Output Representation, Face Signature) | Possession of Linking/Identifying Information | "Biometric" Under BIPA |
|---|---|---|---|---|
| *Rodriguez* (15(b)) | Videos | Yes | Yes | Yes |
| *Rodriguez* (15(c)-(d)) | Videos | No | Yes | No |
| *McGoveran* (15(b)) | Voice Recording | Yes | Yes | Yes |
| *McGoveran* (15(d)) | Voice Recording | No | Yes | No |
| *Zellmer* | Photograph | Yes | No | No |
| *Hazlitt* | Photograph | Yes | Yes | Yes |
| *Delgado* | Voice Recording | No | Yes | No |

As this table shows, for data to be covered by BIPA, the defendant must *both* (i) transform an underlying medium into different identifying data and (ii) have the ability to connect such data to a particular individual. *Zellmer* presented the question whether data that satisfied (i) but not (ii) is covered, and the answer was no. This case, like the Section 15(c) and 15(d) claims in *Rodriguez* and the Section 15(d) claim in *McGoveran*, presents the converse question whether data that (Meta assumes for present purposes) satisfies (ii) but not (i) implicates BIPA. The answer is still no because both conditions must be satisfied, as was the case with *Hazlitt* and the Section 15(b) claims in *Rodriguez* and *McGoveran*. Put another way, the question here is whether a standard recording that could not itself be used to "identify" (without first being converted into a new kind of data) is covered by BIPA where the defendant is assumed to be technically capable of transforming that file into another type of data that could then potentially be used to identify. *See Hooks v. CloudSpotter Techs. Inc.*, 2026 WL 1045734, at *3 (N.D. Ill. Apr. 17, 2026) (BIPA "is concerned with private entities collecting, capturing, or obtaining Biometrics, not creating technology") (quoting *G.T. v. Samsung Elecs. Am. Inc.*, 742 F. Supp. 3d 788, 798 (N.D. Ill. 2024)).

As noted above, other courts and the Illinois Attorney General have answered that question no. At the very least, "reasonable" or "fair-minded jurists" could disagree about this question of

statutory interpretation.  *Reese*, 643 F.3d at 688.  That "difficult question[]" is worthy of certification for interlocutory review.  *Couch*, 611 F.3d at 633.

### C.      An Immediate Appeal Will Materially Advance The Termination Of This Litigation

An immediate appeal "may materially advance the ultimate termination of th[is] litigation." 28 U.S.C. § 1292(b).  This requirement is "satisfied when the resolution of the question 'may appreciably shorten the time, effort, or expense of conducting' the district court proceedings." *ICTSI*, 22 F.4th at 1131; *see also Sterling v. Feek*, 150 F.4th 1235, 1247 (9th Cir. 2025) (same).

Resolution of the statutory interpretation question presented here may materially advance the termination of this case because, if the Ninth Circuit agrees with Meta's view as to the meaning of "voiceprint" under BIPA, Meta will be entitled to summary judgment.  Indeed, Congress enacted Section 1292(b) "so that a district court staring down a trial that might rest on a legally erroneous premise could get legal guidance before trekking down that path."  *Ross Intel.*, 2025 WL 1488015, at *2.  Where, as here, an interlocutory appeal could prevent "vast amount[s] of resources" from "being consumed" before the legal "ground rules" are established, it makes good sense to give the Ninth Circuit the opportunity, if it chooses, to review that contestable legal question on an interlocutory basis.  *Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 649 (N.D. Cal. 2022).

Courts of appeal have paid particular attention to thorny statutory interpretation questions in BIPA cases.  For instance, in *Cothron v. White Castle Sys., Inc.*, the Seventh Circuit granted a Section 1292(b) petition to address whether a claim accrues under Section 15(b) of BIPA for each and every collection of a person's biometric identifier.  20 F.4th 1156, 1159 (7th Cir. 2021).  In *Union Pacific Railroad Co. v. Clay*, the Seventh Circuit granted another Section 1292(b) petition, this time concerning whether Illinois retroactivity principles require applying retroactively a 2024 BIPA amendment curtailing the availability of statutory damages under the Act.  171 F.4th 975, 979 (7th Cir. 2026).  In *Payton v. Union Pacific Railroad Co.*, the Seventh Circuit granted yet another Section 1292(b) petition to address the scope of BIPA Section 25(e)'s exemption for government contractors.  *See* Order, No. 25-8031 (7th Cir. Apr. 21, 2026).  And recently, in

*Hartman v. Meta Platforms, Inc.*, the district court certified under Section 1292(b) a choice-of-law question in a BIPA case concerning whether California or Illinois law applies to the dispute. 2026 WL 1361700, at *1 (S.D. Ill. May 15, 2026), *petition filed*, No. 26-8013 (7th Cir.). These decisions show that BIPA has presented—and will continue to present—novel and difficult legal questions with which courts are actively wrestling, and they reflect sustained interest among both district and circuit courts in resolving such questions before litigation consumes valuable party and judicial resources.

## IV.    CONCLUSION

For these reasons, this Court should certify its May 20, 2026 summary judgment order (Dkt. 167) for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and Appellate Rule 5(a)(3).

DATED: June 17, 2026                                Respectfully submitted,

                                                    LATHAM & WATKINS LLP

                                                    By  */s/ Gary S. Feinerman*
                                                         Gary S. Feinerman


                                                    GIBSON, DUNN & CRUTCHER LLP

                                                    By  */s/ Lauren R. Goldman*
                                                         Lauren R. Goldman


                                                    *Attorneys for Defendant Meta Platforms, Inc.*

**CIVIL L.R. 5-1(i)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, Gary Feinerman, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

DATED: June 17, 2026

Respectfully submitted,

By:    /s/ *Gary S. Feinerman*
Gary S. Feinerman