United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATALIE DELGADO,<br>Plaintiff,<br>v.<br>META PLATFORMS, INC.,<br>Defendant. | Case No. 23-cv-04181-SI<br><br>**ORDER DENYING META'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 146 |

**On May 20, 2026, the Court filed this Order provisionally under seal, in light of the references to numerous exhibits the parties seek to maintain under seal. The Court has reviewed and hereby OVERRULES any objection to the public filing of this Order and DIRECTS the Clerk to file this Order on the public docket. *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1098–1101 (9th Cir. 2016) (citations omitted) (applying the "compelling reasons" standard to sealing material where the underlying motion "is more than tangentially related to the merits of a case").**

***

Defendant Meta Platforms, Inc. ("Meta") moves for summary judgment in this putative class action case, which alleges violations of Illinois's Biometric Information Privacy Act ("BIPA"), 740 Ill. Comp. Stat. 14/1 *et seq*. Dkt. No. 146. The matter came on for hearing on May 15, 2026. For the reasons set forth below, the Court DENIES the motion.

## BACKGROUND

At issue in this case is the collection of "voiceprints" under BIPA. Plaintiff Natalie Delgado is a citizen of Illinois who has a Facebook account and who uses the Messenger application, both of

which are owned and operated by Meta. According to the complaint, on multiple occasions in 2022, 2023, and "throughout the Class Period, Plaintiff has, for personal use, input her voice into an audio function on Facebook or Messenger, including, *inter alia*, to dictate text messages to send via Messenger, sending an audio recording of her voice via Messenger, and making audio calls via Messenger." Dkt. No. 1 ("Compl.") ¶ 149. Plaintiff alleges that during the class period "Meta created, collected, captured, received through trade, stored, and/or otherwise obtained Plaintiff's voiceprint and related biometric information[,]" without complying with the requirements of BIPA. *Id.* ¶ 151. Plaintiff sues on behalf of herself and a putative class consisting of: "All natural persons in Illinois from whom Meta created, collected, captured, received, obtained, or stored Digital Voice Data, Voice Characteristics, and/or a Voice Profile." *Id.* ¶ 153. The Class Period alleged in the complaint "is that period within the statute of limitations for this action and extending until a Class is certified herein." *Id.* ¶ 157.

Plaintiff filed suit on August 16, 2023. Dkt. No. 1. On February 27, 2024, the Court granted in part and denied in part Meta's motion to dismiss the complaint. Dkt. No. 55. The Court dismissed plaintiff's claims under BIPA Sections 15(c) and (e), with leave to amend. The Court denied the motion to dismiss plaintiff's claims under BIPA Sections 15(a) and (b). The Court explained that it "need not resolve the question Meta raises of whether a 'voiceprint' under BIPA means something more than a 'voice recording' because plaintiff alleges more than simply the collection of her voice recording." *Id.* at 12.

Plaintiff elected not to amend her complaint. Accordingly, what remain are Counts I and II, which allege violations of BIPA Sections 15(a) and (b). In Count I, plaintiff alleges that "[d]uring the Class Period, Meta did not develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information to occur by the earlier of: (a) when the original purpose for collecting or obtaining such identifiers has been satisfied, or (b) within 3 years of the individual's last interaction with the private entity, as required by 740 ILCS 14/15(a)." Compl. ¶ 168. Count I further alleges that "Meta has failed to comply with a retention/destruction policy that conforms to BIPA § 15(a) and has unlawfully retained biometric identifiers and biometric information of Plaintiff and the Class." *Id.*

¶ 170. In Count II, plaintiff alleges that "[d]uring the Class Period, Meta collected, captured, received through trade, and/or otherwise obtained the voiceprints and related biometric information of Plaintiff and the Class" without properly informing plaintiff and the class in writing and without obtaining a written release, in violation of 740 Ill. Comp. Stat. 14/15(b). *Id.* ¶¶ 178–179.

Meta now moves for summary judgment, on the grounds that BIPA applies to biometric data "only if it 'could be used to identify' an individual." Dkt. No. 146 ("Mot.") at 7 (quoting *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1124–25 (9th Cir. 2024)).[1] Meta argues (1) that BIPA does not apply to "mere voice recordings," standing alone, and (2) that BIPA does not apply to plaintiff's voice recordings because those recordings do not enable Meta to identify her. *Id.* at 9, 17.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 324). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find

[1] In this Order, the Court uses the term "biometric data" to encompass both "biometric identifiers" and "biometric information" as defined in BIPA, as other courts have done. *See* 740 Ill. Comp. Stat. 14/10.

for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Pub'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)(2).

**DISCUSSION**

**I. BIPA Framework**

"Illinois's Biometric Information Privacy Act, familiarly known as BIPA, provides robust protections for the biometric information of Illinois residents. *See* 740 ILCS 14/1 *et seq*. It does so by regulating the collection, retention, disclosure, and destruction of biometric identifiers or information—for example, retinal scans, fingerprints, or facial geometry." *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1242 (7th Cir. 2021). In enacting BIPA in 2008, the Illinois legislature found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 Ill. Comp. Stat. 14/5(c).

BIPA regulates how private entities may retain, collect, disclose, and destroy "biometric identifiers" and "biometric information." *See generally id.* 14/15. The statute defines these terms as follows:

> "Biometric identifier" means a retina or iris scan, fingerprint, **voiceprint**, or scan of hand or face geometry. Biometric identifiers do not include writing samples, written signatures, photographs, human biological samples used for valid scientific testing or screening, demographic data, tattoo descriptions, or physical descriptions such

> as height, weight, hair color, or eye color. Biometric identifiers do not include donated organs, tissues, or parts as defined in the Illinois Anatomical Gift Act or blood or serum stored on behalf of recipients or potential recipients of living or cadaveric transplants and obtained or stored by a federally designated organ procurement agency. Biometric identifiers do not include biological materials regulated under the Genetic Information Privacy Act. Biometric identifiers do not include information captured from a patient in a health care setting or information collected, used, or stored for health care treatment, payment, or operations under the federal Health Insurance Portability and Accountability Act of 1996. Biometric identifiers do not include an X-ray, roentgen process, computed tomography, MRI, PET scan, mammography, or other image or film of the human anatomy used to diagnose, prognose, or treat an illness or other medical condition or to further validate scientific testing or screening.
>
> "Biometric information" means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers.

*Id.* 14/10 (emphasis added). The statute does not define the term "voiceprint."

Plaintiff sues for violations of BIPA Sections 15(a) and (b). Section 15(a) requires that "[a] private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. . . ." *Id.* 14/15(a). Section 15(b) provides, "No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first" informs them in writing and obtains a written release. *Id.* 14/15(b). "The Seventh Circuit has described the informed-consent regime as the 'heart of BIPA.'" *Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 802 (N.D. Ill. 2022) (quoting *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020)).

## II. Whether Meta Collected Plaintiff's Voiceprint

As noted above, BIPA does not define the term "voiceprint." The district court in *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1096 (N.D. Ill. 2017), explained that "a 'biometric identifier'

United States District Court
Northern District of California

[under BIPA] is not the underlying medium itself, or a way of taking measurements, but instead is a set of measurements of a specified physical component (eye, finger, voice, hand, face) used to identify a person." "While the statute does not define 'voiceprint,' *see* 740 ILCS § 14/10, other courts within [the Northern District of Illinois], utilizing statutory text and dictionary definitions of the term, have defined it as data unique to an individual that could be used to identify someone." *Robinson v. Lake Ventures LLC*, No. 22 CV 6451, 2023 WL 5720873, at *7 (N.D. Ill. Sept. 5, 2023) (citations omitted); *see also G.T. v. Samsung Elecs. Am. Inc.*, 742 F. Supp. 3d 788, 800 (N.D. Ill. 2024) ("BIPA only covers those '. . . voiceprint[s]. . .' that are capable of identifying an individual"); *Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512, 517–18 (N.D. Ill. 2022) (relevant question following discovery would be whether defendant "collect[s] any vocal information that could be used to uniquely identify an individual, in which case summary judgment may be appropriate").

The Ninth Circuit reached a similar conclusion in *Zellmer*, which issued after this Court ruled on Meta's motion to dismiss. There, a plaintiff who was not a Facebook user sued under BIPA based on Meta's creation of "face signatures" from photos the plaintiff's friends had uploaded to Facebook. The Ninth Circuit explained that, although "scans of face geometry fall within BIPA's list" of biometric identifiers, such scans "are not covered by BIPA if they cannot identify a person." 104 F.4th at 1123. Looking to the ordinary meaning of the term "identifier" and the statutory context, the Ninth Circuit concluded that both the terms "biometric identifier" and "biometric information" under BIPA "turn on the ability to identify an individual." *Id.* at 1124. Where the undisputed facts showed Meta's "face signatures cannot identify," the appeals court affirmed summary judgment in favor of Meta. *Id.* at 1126. The Ninth Circuit found "particularly persuasive" a district court case out of Illinois which "recognized that, even if a company *does not* use face scans to identify a person, BIPA applies if it *could*." *Id.* at 1125 (citing *Hazlitt v. Apple*, 500 F. Supp. 3d 738 (S.D. Ill. 2020)).

At a high level of generality, Meta's position here is that there is a phased process for a voice recording such as plaintiff's to identify an individual. First, the voice recording must be processed and transformed into a different type of data "representing unique characteristics of that speaker's voice[,]" which Meta calls "Output Representations" and which plaintiff's expert Dr. Singh calls

"Derived Digital Voice Data." Mot. at 2, 4. From there, according to Meta, one needs a model containing "data that links the Output Representation to the identity of the speaker" in order to actually identify the person whose voice is reflected in the Output Representation. *Id.* at 3. Meta argues that "a voice recording could not itself be used to identify a person—it could be used only to create an entirely different type of data in the form of an Output Representation that could, in turn, be used to identify a person in certain circumstances." Dkt. No. 162 ("Reply") at 1. Meta thus makes two main arguments in support of its motion. First, Meta argues that "all Meta collected from Plaintiff was her voice recording" and that it "never created any Output Representations from the recordings that Plaintiff uploaded . . . ." Reply at 1. Second, Meta argues that the undisputed facts show that "Meta has no information linking Plaintiff's voice, among the various voices in the recordings she uploaded, to her identity." *Id.* at 2.

The Court agrees with plaintiff that material and disputed factual questions preclude summary judgment at this time. As an initial matter, the salient question is not whether Meta *in fact* used plaintiff's voice data to identify her; "BIPA applies if it *could*." *See Zellmer*, 104 F.4th at 1125. Both the Ninth Circuit in *Zellmer* and numerous district courts in Illinois are in accord on this point. *See, e.g., Bell v. Petco Animal Supplies Stores, Inc.*, No. 22 CV 6455, 2023 WL 12148532, at *2 (N.D. Ill. May 11, 2023) ("To be protected under BIPA, a biometric identifier (such as a voiceprint) must be capable of identifying someone. But that doesn't mean that the information must actually have been used to identify a person . . .") (citations omitted); *Carpenter*, 580 F. Supp. 3d at 518 n.2 ("pursuant to the plain language of the statute, a defendant may violate BIPA by collecting a voiceprint that merely *could* be used to identify a plaintiff"); *Robinson*, 2023 WL 5720873, at *8 (same). In *Zellmer*, the Ninth Circuit affirmed summary judgment against the non-Facebook user plaintiff, citing the undisputed facts in the record that face signatures are a string of numbers that represent a particular image of a face, that they "do not—and cannot—reveal information about a face's geometric information[,]" and that "[n]o one—not even Facebook—can reverse-engineer the numbers comprising a given face signature to derive information about a person." 104 F.4th at 1120–21.

Here, by contrast, plaintiff's expert Dr. Singh describes how Meta processes voice

recordings—whether through audio files or video files—that it receives via Facebook and Messenger. Singh Decl., Ex. 1 (Singh Rep.) at 26–36. Dr. Singh opines that Meta "employs sophisticated technical pipelines to process this audio data, converting it to standardized formats . . . suitable for speech analysis[;]" stores the voice data in interconnected database systems that link the data to user accounts; and stores the data in formats compatible with speaker identification and verification technologies. *Id.* at 26. Dr. Singh further opines that "Meta's extensive and technical work on speech data and systems" show that Meta "possesses and has utilized technologies capable of using the Digital Voice Data it obtains from Facebook and Messenger users to identify individuals." *Id.* at 7.

As to identification, Dr. Singh states that Meta can use the digital voice data it receives to identify individuals both using "direct identification through explicit account linkages" and also through "probabilistic inference and 'soft matching' systems that can link and refine user-related data using statistical confidence scores and probabilistic associations." *Id.* at 8.

For instance, there is evidence in the record that Meta associates the voice recordings that are uploaded via Facebook and Messenger with the user's account ID. Singh Rep. at 55; *see also* Green Decl., Ex. 3 (Alvarado Dep.) at 76:6–9 ("I would assume" Meta is able to link an audio recording ID to an account ID; "[t]hat's how products work at Meta."); Green Decl., Ex. 4 (Wang Dep.) at 136:22–137:5. Every Facebook or Messenger account has a Facebook User ID ("FBID") or "Account Identifier." Alvarado Dep. at 27:22–28:7; Wang Dep. at 65:19–66:6; Green Decl., Ex. 5 (Meta Suppl. Resp. to Pl.'s 2d Int.) at 5. Each Facebook ID is then connected to what plaintiff describes as "vast amounts of user information": first and last name, address, email, hometown, gender, birthday, education, employer, IP address, and more. Opp'n at 3; Green Decl., Ex. 5, Suppl. Resp. to Int. No. 20. Meta's policies provide that a person creating an account must use "the name they go by in everyday life that represents their authentic identity." Green Decl., Ex. 2 at 1. Meta may disable an account if someone: provides a false date of birth, uses a name "that is not the authentic name you go by in everyday life," creates multiple Facebook accounts, or shares an account with another person. *Id.* at 2–3.

At her deposition Dr. Singh agreed that a speaker identification model needs some

mechanism to identify an unknown voice with a known voice and testified that "[i]n Meta's case, there are linking mechanisms." Green Decl., Ex. 13 (Singh Dep.) at 146:3–24. For instance, in Dr. Singh's rebuttal report, she opines that "[a] voice in an audio file uploaded by a user account can be linked to the user with minimal technological effort." Singh Decl., Ex. 2 (Singh Rebuttal Rep.) at 25. She gives an example of a simplistic experiment she ran using ten Messenger voice messages sent by plaintiff's account, to "demonstrate[] that when audio recordings are associated with a single account, statistical analysis utilizing cosine-similarity metrics can identify the most frequently occurring voice to combine with the probabilistic association that this dominant voice in private messages sent by the account belongs to the account holder." *Id.* at 25–29. Meta takes the position that, even if one can identify the dominant speaker across a series of voice clips, one cannot presume to know that speaker's identity, and that the dominant speaker across a series of clips isn't necessarily the same person who owns the account. Meta cites plaintiff's own Facebook and Messenger video and audio files, some of which contain only white noise, the voices of children, or multiple voices. *See* Feinerman Decl., Ex. 12. But Dr. Singh explains that speaker identification models work on probability: just because they do not accurately identify the individual 100% of the time doesn't mean they aren't capable of identifying. Her report opines that some of the speaker identification models Meta has developed or utilized operate at a high level of accuracy. *See, e.g.,* Singh Rep. at 5–7. According to Dr. Singh, the wealth of information that Meta collects on its users allows Meta to further refine its speaker identification models. *Id.* at 6–7, 44–46, 71–72.

Meta takes the position that speaker identification "often comes through a process called 'enrollment'"—an active process whereby "individuals submit their voice recordings under their own name." Mot. at 3 (citing Feinerman Decl., Ex. 5 (Traynor Rep) ¶ 41). Meta submits that because plaintiff never participated in a formal enrollment process or manually assigned a label to the speaker in her voice recordings, Meta lacks the information needed to link plaintiff's voice in her recordings to her identity. *Id.* at 20–21. But Dr. Singh testified in her deposition that enrollment is just "[o]ne of the many ways" to associate a known voice with a person or individual. Singh Dep. at 146:3–15. Dr. Singh opines in her report that since at least 2018, "Meta has developed, trained, improved, validated, optimized, deployed and/or utilized advanced speaker-identification

United States District Court
Northern District of California

technologies . . . that automatically extract speaker-discriminative features from Digital Voice Data without requiring explicit speaker identification training." Singh Rep. at 5–6.

In concluding that the digital voice data Meta collects from Facebook and Messenger is data unique to an individual that could be used to identify someone, Dr. Singh points to Meta's in-house capabilities, prior research projects, and success rates of its speaker identification features. *Id.* at 7–8. She opines that Meta "has gone beyond theoretical capability to actual implementation." *Id.* at 8. Thus, plaintiff has at least raised a disputed question of fact as to whether Meta has the capabilities to identify plaintiff using her uploaded voice recordings. Meta's argument that there is no evidence that Meta *actually* identified plaintiff using her voice recordings misses the point.

Meta warns that plaintiff asks this Court to expand BIPA beyond recognition, creating potential liability for anyone who possesses another person's voice recording (such as a voicemail) and who has access to speaker-identification technology widely available on the internet. Meta is correct that there is authority indicating that something more than an underlying voice recording is required to rise to the level of biometric data under BIPA. *See, e.g.*, Public Access Op., 2017 WL 10084298, at *3 (Ill. A.G. Aug. 14, 2017) (stating that "a voiceprint . . . is not the same as a simple recording of a voice").[2] However, the case law on which Meta relies in arguing that voice recordings cannot be voiceprints analyzed BIPA Sections 15(c) and (d).[3] In *McGoveran v. Amazon Web Services, Inc.*, for instance, the district court dismissed the plaintiffs' Section 15(d) claim because there were no allegations that Amazon had shared something more than voice audio alone with a third party. No. 1:20-cv-01399-SB, 2023 WL 2683553, at *10 (N.D. Ill. Mar. 29, 2023). Meta cites to this portion of the decision, Mot. at 13, but does not acknowledge that the district court allowed the section 15(b) claim brought against Amazon to proceed, based on the allegation that Amazon

---

[2] The Court has some reservations about the applicability of this Attorney General opinion, given that the opinion examined whether a recording of a 9-1-1 call was a "biometric identifier" under Illinois's Freedom of Information Act and looked to BIPA simply by way of analogy.

[3] Section 15(c) prohibits a private entity from selling, leasing, trading, or otherwise profiting from a person or a customer's biometric identifier or biometric information. 740 Ill. Comp. Stat. 14/15(c). Section 15(d) regulates how a private entity may "disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information[.]" *Id.* 14/15(d).

As noted above, plaintiff's 15(c) claim was dismissed from this case. *See* Dkt. No. 55 at 16.

United States District Court
Northern District of California

*itself* extracted customers' voiceprints and used the voiceprints to authenticate callers without their consent. *See McGoveran*, 2023 WL 2683553, at *10. Likewise, in *Rodriguez v. ByteDance, Inc.*, No. 23 CV 4953, 2025 WL 672951, at *18–19 (N.D. Ill. Mar. 3, 2025), the court dismissed Section 15(c) and 15(d) claims, where the plaintiffs failed to allege that a video editing app "traded" their biometric data to TikTok, at most alleging only that defendants shared the underlying videos with TikTok. But as in *McGoveran*, the *Rodriguez* court allowed the Section 15(b) claim to proceed, where the complaint alleged that the app itself "'collects a broad array of private and personally identifiable data' that (at least in theory) could have been used to connect plaintiffs' voiceprints and face scans to their identities." *Id.* at *17–18.

This Order does not open the floodgates. This Order simply holds that plaintiff has forwarded sufficient evidence to create a genuine issue of material fact as to whether that Meta has collected plaintiff's voiceprint. Largely through the work of Dr. Singh, plaintiff has shown there are disputed facts regarding whether Meta has collected plaintiff's voice recordings in a manner that is capable of identifying plaintiff due to the in-house technical capabilities Meta *itself* has developed and possesses. Plaintiff has come forward with admissible evidence that Meta has its own proprietary technologies and a wealth of internal systems in place to process a voice recording and link it to a user account and to all of the personally identifiable data (e.g., name, date of birth, address, IP address, etc.) that Meta associated with that account. Today's decision need not and does not attempt to precisely delineate at what point voice data transforms from a "mere voice recording," as Meta puts it, into a "voiceprint" under BIPA. For today, it is enough that there is a dispute of material fact regarding whether Meta has collected biometric data that is capable of identifying an individual using technology Meta possesses.

///

///

///

///

///

///

United States District Court
Northern District of California

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby DENIES Meta's motion for summary judgment. The Court will rule separately on the pending motions to seal.

**IT IS SO ORDERED**.

Dated: May 19, 2026

Susan Illston

SUSAN ILLSTON
United States District Judge