**ARIAS SANGUINETTI WANG & TEAM LLP**
Mike Arias (CSB #115385)
Elise R. Sanguinetti (CSB #191389)
Arnold C. Wang (CSB #204431)
Craig S. Momita (CSB #163347)
M. Anthony Jenkins (CSB #171958)
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: (310) 844-9696
mike@aswtlawyers.com
elise@aswtlawyers.com
arnold@aswtlawyers.com
craig@aswtlawyers.com
anthony@aswtlawyers.com

**GOLDENBERG HELLER & ANTOGNOLI, P.C**
Thomas P. Rosenfeld (admitted *pro hac vice*)
Kevin P. Green (admitted *pro hac vice*)
Thomas C. Horscroft (admitted *pro hac vice*)
Daniel S. Levy (admitted *pro hac vice*)
2227 South State Route 157
Edwardsville, Illinois 62025
Telephone: (618) 656-5150
tom@ghalaw.com
kevin@ghalaw.com
thorscroft@ghalaw.com
daniel@ghalaw.com

*Attorneys for Plaintiff Natalie Delgado*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATALIE DELGADO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:23-cv-04181-SI<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL**<br><br>Hearing:   July 31, 2026<br>Time:       10:00 a.m.<br>Location:  Courtroom 1—17th Floor<br>Judge:      Hon. Susan Illston |

-1-

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................1

II.   LEGAL STANDARD.................................................................................................3

III.  ARGUMENT .............................................................................................................4

    A.    The Court Applied the Ninth Circuit's Statutory Interpretation to the Facts and an Appeal Would Neither Involve Pure Legal Questions Nor Materially Affect the Outcome of the Litigation ........................................................................................4

    B.    There Is Not a Substantial Ground for Difference of Opinion......................................7

    C.    An Immediate Appeal Will Not Materially Advance Termination of The Litigation ............................................................................................................12

IV.   CONCLUSION........................................................................................................13

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*A.B. v. Google LLC*,
2024 LX 55697 (N.D. Cal. Dec. 2, 2024) ............................................................... 4, 6

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
219 F.3d 674 (7th Cir. 2000) ...................................................................................... 6

*Bobro v. Ryder Transp. Sols., LLC*,
2025 LX 230759 (N.D. Ill. July 28, 2025) ............................................................... 7

*Bowoto v. Chevron Corp.*,
2007 U.S. Dist. LEXIS 90296 (N.D. Cal. Nov. 28, 2007) ...................................... 13

*Clark-Dietz & Assocs.-Eng'rs v. Basic Const.*,
702 F.2d 67 (5th Cir. 1983) ....................................................................................... 4

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010) ............................................................................... *passim*

*Doe v. Apple Inc.*,
2026 U.S. Dist. LEXIS 125406 (S.D. Ill. June 5, 2026) ........................................ 11

*G.T. v. Samsung Electronics America, Inc.*,
742 F. Supp. 3d 788 (N.D. Ill. 2024) ................................................................. 10, 11

*Getz v. Boeing Co.*,
2009 U.S. Dist. LEXIS 109550 (N.D. Cal. June 16, 2009) .................................... 12

*Hazlitt v. Apple, Inc.*
Case No. 3:20-cv-421-NJR (S.D. Ill.) ...................................................................... 11

*Hooks v. CloudSpotter Techs. Inc.*,
2026 U.S. Dist. LEXIS 84761 (N.D. Ill. Apr. 17, 2026) ....................................... 10

*Howe v. Speedway LLC*,
2024 U.S. Dist. LEXIS 176263 (N.D. Ill. Sep. 29, 2024) .................................... 5, 10

*ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*,
22 F.4th 1125 (9th Cir. 2022) .................................................................................... 4

*Ill. Union Ins. Co. v. Intuitive Surgical, Inc.*,
2016 U.S. Dist. LEXIS 140762 (N.D. Cal. Oct. 11, 2016) ....................................... 4

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1981) .......................................................................... 3, 4, 12

*James v. Price Stern Sloan*,
283 F.3d 1064 (9th Cir. 2002) .................................................................................... 3

*McGoveran v. Amazon Web Services*,
2023 U.S. Dist. LEXIS 53690 (D. Del. Mar. 29, 2023) ......................................... 7, 8

-ii-

*Nw. Ohio Adm'rs v. Walcher & Fox*,
270 F.3d 1018 (6th Cir. 2001) .................................................................................................. 4

*Patterson v. Respondus, Inc.*,
593 F. Supp. 3d 783 (N.D. Ill. 2022) ...................................................................................... 9

*Ridgeway v. Wal-Mart Stores, Inc.*,
2015 LX 93519 (N.D. Cal. July 21, 2015) .......................................................................... 3, 13

*Rieve v. Coventry Health Care, Inc.*,
870 F. Supp. 2d 856 (C.D. Cal. 2012) ..................................................................................... 6

*Rodriguez v. ByteDance Inc.*,
2025 U.S. Dist. LEXIS 37355 (N.D. Ill. Mar. 3, 2025) ................................................... 7, 8, 9

*Rosenbach v. Six Flags Entm't Corp.*,
129 N.E.3d 1197 (Ill. 2019) ................................................................................................... 11

*Saxton v. Cnty. of Sonoma*,
2025 LX 275104 (N.D. Cal. July 11, 2025) ............................................................................. 6

*Spears v. Wash. Mutual Bank FA*,
2010 U.S. Dist. LEXIS 1454 (N.D. Cal. Jan. 8, 2010) ....................................................... 7, 12

*Tapia-Rendon v. Workeasy Software, LLC*,
2025 LX 394768 (N.D. Ill. Aug. 8, 2025) .............................................................................. 10

*Taylor v. 48forty Sols., LLC,*
2024 U.S. Dist. LEXIS 64573 (N.D. Ill. Apr. 9, 2024) ........................................................... 1

*Translarity, Inc. v. Grand Junction Semiconductor PTE. Ltd.*,
2025 LX 130583 (N.D. Cal. Jan. 15, 2025) ............................................................................. 8

*Tsyn v. Wells Fargo Advisors, LLC*,
2016 U.S. Dist. LEXIS 57519 (N.D. Cal. Apr. 29, 2016) ................................................ 3, 4, 11

*U.S. Rubber Co. v. Wright*,
359 F.2d 784 (9th Cir. 1966) ................................................................................................... 7

*Williams v. Alameda Cnty.*,
657 F. Supp. 3d 1250 (N.D. Cal. 2023) .................................................................................. 4

*Zellmer v. Meta Platforms, Inc.*,
104 F.4th 1117 (9th Cir. 2024) ........................................................................................ *passim*

**Statutes**

28 U.S.C. § 1292(b) ......................................................................................................... *passim*

740 ILCS 14/15(b) .......................................................................................................... 8, 9, 10

740 ILCS 14/15(c) ................................................................................................................ 8, 9

740 ILCS 14/15(d) ................................................................................................................ 8, 9

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO CERTIFY ORDER
FOR INTERLOCUTORY APPEAL
CASE NO. 3:23-CV-04181-SI

**Other Authorities**

3 Federal Procedure, Lawyers Edition § 3:212 (2010) .......................................................... 7

Ninth Circuit Court of Appeals 2025 Annual Report ......................................................... 13

-iv-

## I.    INTRODUCTION

Under the Illinois Biometric Information Privacy Act (BIPA), a "biometric identifier" includes a "voiceprint," which is "data unique to an individual that *could be used* to identify someone" even if it never was so used. Dkt. 55 at 10; *see also* Dkt. 167 at 6. In *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117 (9th Cir. 2024), the Ninth Circuit confirmed this capability standard and explained that whether data is a biometric identifier turns on context—a factual inquiry examining how the data is "saved or stored" and whether defendant *could* use the data collected to, *inter alia*, "derive information about a person" or had "any other data" "that *could* be used to recognize or identify." *Id.* at 1121, 1125-26. The capability standard examines whether the data is capable of being used to identify "alone or in conjunction with other methods or sources of information available" to the defendant. *Taylor v. 48forty Sols., LLC,* 2024 U.S. Dist. LEXIS 64573, *11-12 (N.D. Ill. Apr. 9, 2024); *see also* Dkt. 157 at 14-15 (collecting cases). This inquiry is necessarily factual.

Plaintiff contends that Meta collects voiceprints in the form of Digital Voice Data received from users of Facebook and Messenger—data that, based on the record developed in this case, Meta is capable of using to identify people. Meta sought summary judgment on the factual question, contending that the Digital Voice Data was a "mere voice recording" to which BIPA did not apply because Meta could not identify plaintiff using the Digital Voice Data. In response, Plaintiff set forth an extensive record showing that "Meta is not simply storing mere voice recordings" and "[t]he record shows it is capable of using that voice data to identify." Dkt. 157 at 1. The record included facts about Meta's sophisticated processing, transcoding, storage, and linkage within Meta's predictive infrastructure, and included Meta's own acknowledgments that Digital Voice Data "could reasonably be linked with you*, directly or indirectly" and "may be used to identify you." *Id.* Plaintiff thus argued that, "[o]n this record, a reasonable person could easily find Meta is capable of using Plaintiff's Digital Voice Data to identify her." *Id.* The Court agreed, holding that "material and disputed factual questions preclude summary judgment at this time." Dkt. 167 at 7.

Meta now asks the Court to certify for interlocutory appeal per 28 U.S.C. § 1292(b) its denial of Meta's motion for summary judgment. Meta's request should be denied because Meta cannot satisfy a single prong of Section 1292(b)'s demanding three-part test, let alone all three.

-1-

First, there is no controlling question of pure law. The Ninth Circuit in *Zellmer* already interpreted the precise statutory term at issue here: BIPA's "biometric identifier." It held that whether data qualifies as a "biometric identifier" turns on a capability-and-context inquiry. That is the settled legal standard. What remains is its factual application, which was the basis of the Court's analysis and conclusion in denying summary judgment. Finding that disputed facts about the nature of the Digital Voice Data collected, processed, and stored by Meta and Meta's identification capabilities precluded summary judgment, the Court left those factual questions for the jury. There is nothing left for the Ninth Circuit to interpret.

Instead, Meta seeks a do-over on the facts. It frames the question as "whether a standard voice recording qualifies as a 'voiceprint' under BIPA," Dkt. 173 at 4; however, that formulation assumes its own factual premise. Whether the Digital Voice Data Meta collects is a "standard" or "mere" voice recording or whether it is vocal data that Meta is capable of using to identify someone is a central factual dispute in this case. Dkt. 167 at 11. It is not a question of statutory interpretation. It is a question of fact, and it belongs to the jury. *See also* Dkt. 55 at 11 (noting that "[v]oice recordings *which may be used to identify a person* are more than mere 'voice recordings'"); Dkt. 167 at 10 (plaintiff "raised a disputed question of fact as to whether Meta has the capabilities to identify plaintiff using her uploaded voice recordings"). Thus, Meta's proposal to "[a]ssum[e] Plaintiff's version of the facts" for the limited sake of an appeal unravels their proposed question because, assuming the facts on the record means Meta collected more than a mere voice recording. That would make a Ninth Circuit ruling on whether a mere voice recording can be a biometric identifier an advisory opinion with no effect on the litigation.

Second, there is no substantial ground for difference of opinion. Meta points to district court decisions from outside this Circuit that examined different factual records or allegations. But when examined closely, these cases are fully consistent with *Zellmer*'s interpretation and its capability and context analysis. Further, a substantial ground for difference of opinion typically requires a circuit split on an unsettled question, a novel issue of first impression, or a complicated question of foreign law. None of those conditions exist here. The circuits are not in dispute over the meaning of BIPA's "biometric identifier," and even if they were, the Ninth Circuit has spoken definitively in *Zellmer*. What

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO CERTIFY ORDER
FOR INTERLOCUTORY APPEAL
CASE NO. 3:23-CV-04181-SI

remains is not a novel or unsettled legal question, but the factual application of a settled legal standard to a disputed record. That is not what Section 1292(b) is for.

Third, an immediate appeal would not materially advance this litigation. Rather, it would halt a case that is nearly three years old and thirty days from class certification briefing, while likely delaying any trial for over a year based on the Ninth Circuit's heavy docket. And even if the Ninth Circuit re-interpreted BIPA's "biometric identifier" to include a categorical exclusion for "mere voice recordings," it would still have to remand for the jury to determine whether the Digital Voice Data Meta collects is in fact a mere recording. Thus, an interlocutory appeal solves nothing and delays everything.

Section 1292(b) is a narrow exception reserved for exceptional circumstances. This is not one of them.

## II.   LEGAL STANDARD

Section 1292(b) "permits a district court to certify an order for interlocutory appellate review where the order involves (1) 'a controlling question of law;' (2) 'as to which there is substantial ground for difference of opinion;' and (3) where 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Ridgeway v. Wal-Mart Stores, Inc.*, 2015 LX 93519, *5 (N.D. Cal. July 21, 2015) (quoting 28 U.S.C. § 1292(b); citing *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981)).

"'Section 1292(b) is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly.'" *Id.* (quoting *James v. Price Stern Sloan*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002)). "Accordingly, section 1292(b) is 'to be used only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation.'" *Id.* (quoting *In re Cement Antitrust Litig.*, 673 F.2d at 1026); *see also Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (Section 1292(b) is a "narrow exception to the final judgment rule").

"The party seeking certification has the burden of showing that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Tsyn v. Wells Fargo Advisors, LLC*, 2016 U.S. Dist. LEXIS 57519, *8 (N.D. Cal. Apr. 29, 2016) (citing cases) (internal quotation marks omitted). "Even where the statutory criteria of § 1292(b)

-3-

are met, the district court retains discretion to deny permission for interlocutory appeal." *Id.* (citing cases) (internal quotation marks omitted).

## III.    ARGUMENT

### A.    The Court Applied the Ninth Circuit's Statutory Interpretation to the Facts and an Appeal Would Neither Involve Pure Legal Questions Nor Materially Affect the Outcome of the Litigation

"A controlling question of law must be one of law—not fact—and its resolution must 'materially affect the outcome of litigation in the district court.'" *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (quoting *In re Cement Antitrust Litig.*, 673 F.2d at 1026) (citing *Nw. Ohio Adm'rs v. Walcher & Fox*, 270 F.3d 1018, 1023 (6th Cir. 2001) ("Because this is an interlocutory appeal, we have no authority to review the district court's findings of fact, but must confine our review to . . . questions of law."); *Clark-Dietz & Assocs.-Eng'rs v. Basic Const.*, 702 F.2d 67, 69 (5th Cir. 1983) ("[F]act-review questions [are] inappropriate for § 1292(b) review.").

Thus, "the question must be a pure legal question, not a mixed question of law and fact," and "[t]he application of a 'legal standard to the facts of the case[] is not by itself appropriate for certification.'" *A.B. v. Google LLC*, 2024 LX 55697, *10 (N.D. Cal. Dec. 2, 2024) (quoting *Williams v. Alameda Cnty.*, 657 F. Supp. 3d 1250, 1254 (N.D. Cal. 2023); citing *Ill. Union Ins. Co. v. Intuitive Surgical, Inc.*, 2016 U.S. Dist. LEXIS 140762 (N.D. Cal. Oct. 11, 2016)).

Here, although Meta says that the interpretation of a statute is a question of law, Dkt. 173 at 4, Meta does not truly seek a statutory interpretation. Indeed, the Ninth Circuit has already done the legal work and interpreted the exact provision of the statute at issue here—the definition of BIPA's "biometric identifier." In *Zellmer v. Meta Platforms, Inc.*, the Court held that whether data qualifies as a "biometric identifier" under BIPA turns on a capability-and-context inquiry that examines, *inter alia*, the nature of the data and what the defendant can do with that data alone or in combination with "any other data" "that *could* be used to recognize or identify." 104 F.4th at 1121, 1125-26. That interpretation confirmed what this Court had already found at the pleading and discovery stages: that the relevant inquiry focuses on the factual issues of whether the data "could be used to identify someone," Dkt. 55 at 10, or was "capable of being used to identify," Dkt. 80 at 4. The controlling legal standard governing

-4-

whether the voice data Meta collected constitutes a biometric identifier under BIPA is thus settled in the Ninth Circuit and necessarily requires a factual analysis.

At summary judgment, this Court applied *Zellmer*'s established framework to the factual record and found that "material and disputed factual questions preclude summary judgment." Dkt. 167 at 7. The Court specifically contrasted the factual findings in *Zellmer* with the record here, Dkt. 167 at 7-8, and concluded that "there is a dispute of material fact regarding whether Meta has collected biometric data that is capable of identifying an individual using technology Meta possesses," Dkt. 167 at 11.

Meta attempts to reframe that factual outcome as a legal question by stating that the issue is "whether a standard voice recording qualifies as a 'voiceprint' under BIPA." Dkt. 173 at 5. But that formulation simply assumes Meta's factual conclusion that the Digital Voice Data Meta collects is a "mere voice recording" or a "standard voice recording." Dkt. 173 at 3, 4, 5, 6, 7, 9. Plaintiff disputed this fact, contending that her Digital Voice Data is not a "simple" or "mere recording," but a digital representation of her voice signal, mathematically measured, that preserves the essential acoustic information of her voice signal and inherently carries the data unique to her and which Meta is capable of using to identify. Dkt. 157 at SOF ¶¶ 3, 8 & § IV.B.2; *see also* Dkt. 55 at 11 ("Voice recordings *which may be used to identify a person* are more than mere 'voice recordings.'"). Meta characterizing its own receipt and storage of voice data as being "like voicemails and podcasts," Dkt. 173 at 3, does not make those factual characterizations legal ones.[1] *Cf. Howe v. Speedway LLC*, 2024 U.S. Dist. LEXIS 176263, *13 (N.D. Ill. Sep. 29, 2024) (noting that "whether the scanned image captured by the timeclocks is a 'fingerprint' as used in the statutory definition of 'biometric identifiers' under BIPA is a question of statutory interpretation for the Court to decide, *because no underlying constituent facts are disputed.*") (emphasis added). Here, the underlying facts were squarely disputed, and the Court, applying *Zellmer*'s framework, found the factual disputes about the data and Meta's capabilities prevented summary judgment. Dkt. 167 at 11. The Court specifically declined "to precisely delineate at what point voice data transforms from a 'mere voice recording,' as Meta puts it, into a 'voiceprint' under BIPA" because that determination belongs to the jury on the disputed record. Dkt. 167 at 11.

---

[1] For example, the record details how Meta processes, transcodes, stores, and links the voice data to other user data in its vast predictive infrastructure. The record does not reflect similar receipt, processing, storage, or linkage to voice data for voicemail and podcasts.

-5-

Accordingly, the Ninth Circuit has already spoken on the meaning of BIPA's "biometric identifier." What remains is a factual dispute about the nature of Meta's data; its data collection, processing, and storage; its technology; and its capabilities. Those disputes belong to the jury, not the appellate court.

Even if the Ninth Circuit were to accept Meta's framing and hold that a "mere voice recording" is not a BIPA biometric identifier, that ruling would not materially affect the outcome of the litigation. It would still leave open the factual question of whether Meta collected a "mere recording." The Ninth Circuit could not answer that factual question in the first instance because it would require examining how Meta processes, transcodes, stores, links and can use the voice data within its predictive infrastructure. That is not the function of the court of appeals or Section 1292(b). *See Saxton v. Cnty. of Sonoma*, 2025 LX 275104, *5 (N.D. Cal. July 11, 2025) ("The factual questions are intertwined with the legal questions, and thus [the] question is not suitable for interlocutory appeal."); *A.B.*, 2024 LX 55697, at *10 ("Interlocutory appeal is generally appropriate only for questions that 'the court of appeals [can] decide quickly and cleanly without having to study the record.'") (quoting *Rieve v. Coventry Health Care, Inc.*, 870 F. Supp. 2d 856, 879 (C.D. Cal. 2012); *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 676-77 (7th Cir. 2000)).

Similarly, Meta's plan to "[a]ssum[e] Plaintiff's version of the facts" for purposes of appeal does not cure this problem; it compounds it. Dkt. 173 at 5. Plaintiff's version of the facts is that the Digital Voice Data Meta collects is not a mere recording but Digital Voice Data that Meta is capable of using to identify her. Assuming that version of the facts, a Ninth Circuit ruling on whether a categorical "mere voice recording" can be a BIPA biometric identifier would be an advisory opinion on a factual premise that does not exist under Plaintiff's account of the record, with no effect on this litigation. Thus, Meta actually wants the Ninth Circuit to assume *Meta's* version of the facts. But a ruling by the Ninth Circuit that Meta might prevail on a legal theory under its own version of the facts does not resolve the factual dispute or advance the litigation.

Accordingly, an interlocutory appeal would not present purely legal question or materially advance the outcome of this litigation.

-6-

## B.     There Is Not a Substantial Ground for Difference of Opinion

"To determine if a 'substantial ground for difference of opinion' exists under § 1292(b), courts must examine to what extent the controlling law is unclear. Courts traditionally will find that a substantial ground for difference of opinion exists where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.'" *Couch*, 611 F.3d at 633 (quoting 3 Federal Procedure, Lawyers Edition § 3:212 (2010)).

None of these factors are present here. The circuits are not in dispute on the proper interpretation of BIPA's "biometric identifier," and, even if they were, the Ninth Circuit has spoken on the point in *Zellmer*, and this Court correctly applied that interpretation. Nor does this case present a complicated or novel question of law. As set forth above, it involves a factual application to *Zellmer*'s interpretation of the statute. *See also Spears v. Wash. Mutual Bank FA*, 2010 U.S. Dist. LEXIS 1454, *6-7 (N.D. Cal. Jan. 8, 2010) (Section 1292(b) "was not intended merely to provide review of difficult rulings in hard cases") (quoting *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966)).

Thus, Meta's attempts to create a "substantial ground for difference of opinion" miss the mark. Meta simply recycles the same arguments and cases it presented at summary judgment, which the Court distinguished *on the facts*. Dkt. 167 at 10-11 (noting cases relied on by Meta did not include allegations that defendants "shared something more than voice audio alone with a third party"). *See also Couch*, 611 F.3d at 633 ("[A] party's strong disagreement with the Court's ruling is not sufficient for there to be a substantial ground for difference.") (citation and internal quotation marks omitted).

For instance, Meta spends three pages discussing *McGoveran v. Amazon Web Services*, 2023 U.S. Dist. LEXIS 53690 (D. Del. Mar. 29, 2023) and *Rodriguez v. ByteDance Inc.*, 2025 U.S. Dist. LEXIS 37355 (N.D. Ill. Mar. 3, 2025) to argue there are substantial grounds for difference of opinion. Dkt. 173 at 6-9. Neither case is from within this Circuit. And while district courts outside the Ninth Circuit remain divided as to whether *Zellmer*'s interpretation of BIPA's "biometric identifier" is correct, s*ee, e.g.*, *Bobro v. Ryder Transp. Sols., LLC*, 2025 LX 230759, *11-12 (N.D. Ill. July 28, 2025), those decisions cannot establish a substantial ground for difference of opinion on a statutory interpretation that the Ninth Circuit has already settled. The Ninth Circuit's interpretation of "biometric

-7-

identifier" is clear and was correctly applied here. *See also Translarity, Inc. v. Grand Junction Semiconductor PTE. Ltd.*, 2025 LX 130583, *2-5 (N.D. Cal. Jan. 15, 2025) (the cited case "did not address the question presented in [a prior Ninth Circuit case], and [it] does not represent a 'substantial ground for difference of opinion' with [the Ninth Circuit case]").

More fundamentally, *McGoveran* and *Rodriguez* do not actually conflict with *Zellmer*'s statutory interpretation of "biometric identifier" when examined carefully as the Court did in its summary judgment order. The Court explained the difference between the BIPA Section 15(b), (c), and (d) claims involved in *McGoveran* and *Rodriguez*. Meta suggests the meaning of "biometric identifier" is not different for Section 15(b), (c), or (d) claims. Dkt. 173 at 7. That is true, but misses the point of how *Zellmer* operates across BIPA's different provisions.

This point is illustrated with hypothetical facts. Assume Meta collected scans of face geometry of its users (which, per *Zellmer*, would be data in the form of a series of numbers), and had additional user data that it could use along with the scans to identify people. In that context, Meta would have *collected* biometric identifiers under 15(b). Now assume Meta disclosed the series of numbers "alone" (or the "mere" face scan data) to a third party, but that third party had no way to use the data to identify anyone. In that context, under *Zellmer*, the third party would not have received a biometric identifier because the data was not capable of being used to identify. So while Meta could *collect* biometric data under 15(b), Meta would not have *disclosed* or *traded* biometric data under 15(c) or (d). That analysis does not apply different definitions to BIPA's defined terms. It applies *Zellmer*'s interpretation of BIPA's defined terms, which involves a capability and context analysis, to the factual settings, which may yield different results depending on the facts surrounding collection, disclosure, and trading.

*McGoveran* and *Rodriguez* reflect that principle. In *McGoveran*, under Section 15(d), the court had to look at whether Amazon disclosed biometric data to a third party (e.g., John Hancock). The only allegation about the disclosure, however, was that the data disclosed was the voice "alone." There were no allegations about the third party's ability to identify anyone, as the complaint "refer[red] only to Amazon's processes for authenticating callers." *McGoveran*, 2023 U.S. Dist. LEXIS 53690 at *29. The disclosure or trading of the voice or video "alone" was not a 15(d) violation. *McGoveran*'s statement

of "voice audio alone" is akin to Meta's "mere voice recording" formulation. But based on the factual record, neither "voice audio alone" nor a "mere voice recording" is what Meta collected here.

Likewise, in *Rodriguez*, the court allowed the Section 15(b) claim to proceed, where the complaint alleged that the defendant's video editing app itself "collects a broad array of private and personally identifiable data' that (at least in theory) could have been used to connect plaintiffs' voiceprints and face scans to their identities." 2025 U.S. Dist. LEXIS 37355 at *49. But the allegations that the video editing app violated Sections 15(c) and (d) when it "traded" or "disclosed" their biometric data to a third party (TikTok) failed where the allegation was that the video alone was "the only material . . . allegedly traded." Dkt 146, Meta MSJ at 4.[2]

Thus, Meta stretches these cases too far when it claims that they "reject the proposition that BIPA applies to standard voice recordings, even when in the hands of a defendant with the technical ability to transform those recordings into a different kind of data that potentially could then be used, together with other data and linking capabilities possessed by the defendant, to identify the speaker." Dkt. 173 at 7. None of these cases actually addressed that issue. In fact, all these decisions *align* with the Ninth Circuit's interpretation that to qualify as a biometric identifier, the data must be capable of being used to identify in the proper context. In each case, the recipient's capability to identify was not even alleged. *See Couch*, 611 F.3d at 634 (noting a cited authority did "not provide the [same] factual context . . . making meaningful analysis and comparison impossible").

Furthermore, Meta's contention that voice recordings cannot be biometric identifiers unless first "transformed" into a new form of data is not found in the district court cases it cites, is not a rule *Zellmer* announced, and is in tension with *Zellmer*'s capability-and-context framework. Meta's request for interlocutory appeal does not seek resolution of an existing conflict, but a chance for the Ninth Circuit to provide some new interpretation. But there is no basis for such a revised interpretation of "biometric identifier" under Section 1292(b), *Zellmer*, or BIPA.

---

[2] Meta says that in *Rodriguez*, the complaint alleged the defendants collected "voiceprints taken from user videos." Dkt. 173 at 8. That is also the case here, where the Digital Voice Data is also taken from user videos or messages. *See also Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 817 (N.D. Ill. 2022) ("[T]he fact that these biometric identifiers are captured through photographic means is immaterial."). In *Patterson*, the court found the plaintiff plausibly alleged the collection of a voiceprint via allegations that it was captured when a student would "speak into the microphone" on a laptop computer and "it records the student speaking." *Id.* at 799, 817.

Contrary to Meta's assertions, Dkt. 173 at 9-10, the Ninth Circuit nowhere indicated that "certain kinds of data" are excluded from BIPA's definition (other than the statute's stated exceptions), or that additional data beyond "raw data" that is in a "new form" or that has been "transformed" has to be created to constitute a biometric identifier. BIPA's separate definition of "biometric information" as data "based on" or "derived from" a biometric identifier suggests just the opposite. That definition presupposes that a biometric identifier exists before any transformation or derivation occurs, meaning the identifier itself need not be a processed or transformed output.

Meta's framework, which would require a defendant to have already "transformed" some data "into different identifying data," Dkt. 173 at 11, before BIPA's collection obligations attach, inverts that statutory structure. The Ninth Circuit, however, reads no such requirement into BIPA's definition but, rather, directs district courts to look at the context and ask whether the data collected is capable of being used to identify alone or in conjunction with other data.

Nor do the district court cases Meta cites require a defendant to transform data into different identifying data before it can be "biometric data." *See also Howe*, 2024 U.S. Dist. LEXIS 176263 at *4-5 (fingerprints are "biometric identifiers"; numerical templates that have been transformed from the fingerprint are "biometric information"); *Tapia-Rendon v. Workeasy Software, LLC*, 2025 LX 394768, *20-21 (N.D. Ill. Aug. 8, 2025) (same). But even if they did, they are from outside the Ninth Circuit and are not applying *Zellmer*'s settled interpretation. *See also Couch*, 611 F.3d at 633 ("That settled law might be applied differently does not establish a substantial ground for difference of opinion.")

Nor does Meta's reliance on *Hooks v. CloudSpotter Techs. Inc.,* 2026 U.S. Dist. LEXIS 84761 (N.D. Ill. Apr. 17, 2026) help it. Citing *Hooks*, Meta says BIPA is not concerned with "creating technology." Dkt. 173 at 11. The "creating technology" language Meta quotes originates in *G.T. v. Samsung Electronics America, Inc.*, 742 F. Supp. 3d 788, 798 (N.D. Ill. 2024), where the question was whether Samsung "collected" face data when Samsung had designed technology that could capture the face data used by a third-party app, but Samsung neither received nor could access the face data collected by the app. In that context, the court said BIPA governs the collection of biometric data, not merely the creation of technology. 742 F. Supp. 3d at 798 ("Section 15(b) is concerned with private entities collecting, capturing, or obtaining Biometrics, not creating technology. Plaintiffs do not allege

Samsung receives the Data the App accumulates, or that Samsung even has access to it."). That proposition has no application here where there is no dispute that Meta collected the biometric data at issue and created and utilized technology that can use that data to identify its users.

Moreover, *G.T.* itself is in-line with *Zellmer*'s capability standard. *G.T.* discussed the differing interpretations of "biometric identifier" in the Seventh Circuit before applying a capability standard similar to *Zellmer. See G.T.*, 742 F. Supp. 3d at 799-800. It also distinguished cases on the *facts*, noting that "Plaintiffs do not allege that the App's technology is capable of identifying a person's identity," in contrast to other cases where "a combination of factors" made identification possible. *Id.* at 801 (citing *Rosenbach v. Six Flags Entm't Corp.*, 129 N.E.3d 1197 (Ill. 2019) (thumbprint scan in combination with personal identifying information) (additional citations omitted).

Thus, Meta's ground for a difference of opinion boils down to *its own argument* that some additional data has to be "transformed" or "created" before the Digital Voice Data it collected can qualify as a biometric identifier. But neither the Ninth Circuit nor district courts have endorsed that view. All BIPA requires is that an entity "possess," "collect," "capture," "purchase," "receive," or "obtain" biometric data—not "create." Meta acknowledges that *Hazlitt v. Apple, Inc.* (now captioned as *Doe v. Apple, Inc.*, Case No. 3:20-cv-421-NJR (S.D. Ill.)) addressed the question that is also presented here: "whether identifying data . . . that has already been created—and that the defendant is capable of using, but has not yet used, to identify a person—qualifies as 'biometric' data under BIPA." Dkt. 173 at 10. And, contrary to Meta's suggestion, Dkt. 173 at 10-11, *Hazlitt* did not hold that the face data "itself" must be shown to be capable of identifying individuals. *See also Doe v. Apple Inc.*, 2026 U.S. Dist. LEXIS 125406, *12 (S.D. Ill. June 5, 2026) (certifying class because "whether Apple can identify users from their faceprints, *alone or in combination with users' personal information*, is an issue that can be resolved on a classwide basis.") (emphasis added).

Finally, even if the district court cases Meta cites addressed the same issue as here (they do not) or were broadly similar (they are not), "it would not warrant a § 1292(b) appeal simply because another district court reached a different decision in a broadly similar case." *Tsyn*, 2016 U.S. Dist. LEXIS 57519 at *10-11 (citing *Couch*, 611 F.3d at 633 ("[J]ust because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will

support an interlocutory appeal."); *Spears*, 2010 U.S. Dist. LEXIS 1454 at *8 ("[T]he mere fact that one district court came to a different conclusion on the same issue is insufficient to establish a substantial ground for difference of opinion."); *In re Cement Antitrust Litig.*, 673 F.2d at 1026; *Getz v. Boeing Co.*, 2009 U.S. Dist. LEXIS 109550, *9 (N.D. Cal. June 16, 2009) ("[T]hat other district courts have interpreted [a particular case] in the manner advocated by Defendants does not provide a substantial ground for difference of opinion on controlling questions of law. [The district court cases] are not binding precedent and the Court distinguished them in its order.")).

There is not a substantial ground for difference of opinion on any controlling legal question.

**C.      An Immediate Appeal Will Not Materially Advance Termination of The Litigation**

Meta fails to show that an immediate appeal will materially advance the ultimate termination of the litigation. Nor could it. An interlocutory appeal here would do the opposite—it would halt a case that has been pending for years, which is near class certification briefing and trial, and significantly delay resolution in a manner that would still leave the dispositive factual issues unanswered.

Meta's premise for an appeal is that the Ninth Circuit can determine if a mere voice recording is a BIPA biometric identifier. As set forth above, that is not the analysis the Ninth Circuit has adopted. But even if it were, the Ninth Circuit cannot in the first instance resolve the factual question of whether the Digital Voice Data Meta collects is a "mere voice recording," which is a question this Court left to the jury to examine on the facts. Dkt. 167 at 11. Thus, even if the Ninth Circuit decided to change its interpretation of "biometric identifier" to include a blanket exclusion for something called "mere voice recordings," it would still have to remand the case for fact finding on whether the Digital Voice Data Meta collects are "mere voice recordings."

The more prudent course is to let the jury make its factual findings as to the nature of the data Meta collects and Meta's capabilities. With those findings in hand, the Ninth Circuit may then review the full record and outcome in the normal course on appeal, at which point Meta can make its arguments. That course is also compelled by the current case posture. Discovery is nearly completed; Meta's dismissal and summary judgment motions have been decided; and the deadline for Plaintiff's class certification motion is thirty days away. The case could likely proceed through class certification and trial before the Ninth Circuit issued a ruling on a non-controlling issue in an interlocutory appeal.

-12-

*See, e.g.*, Ninth Circuit Court of Appeals 2025 Annual Report, p. 56 (noting median time intervals of over approximately 14 months from filing of notice of appeal to submission of briefs to oral arguments to opinion)[3]; *see also Ridgeway*, 2015 LX 93519 at *9 ("[I]t is time to get on with the trial and resolution of these claims. Appeal following verdict should suffice for any disappointed parties."); *Bowoto v. Chevron Corp.*, 2007 U.S. Dist. LEXIS 90296, *11 (N.D. Cal. Nov. 28, 2007) ("This litigation has been going on for years, and the Court believes it is time to move forward to trial.").

Finally, Meta points to Seventh Circuit interlocutory appeals to suggest there is some affinity by "courts of appeal" to take Section 1292(b) petitions in BIPA cases. But those appeals involved categorically different and purely legal questions—claim accrual, retroactivity, and statutory exemptions—that do not require examination of the factual record. They say nothing about whether an interlocutory appeal of this Court's order would materially advance the litigation. Nor do they relate to why the Ninth Circuit would take an interlocutory appeal involving a statutory term it has already interpreted and which would require a deep dive into the factual record.

In short, an interlocutory appeal would halt this case, delay resolution, and invite piecemeal litigation—all while addressing an issue the Ninth Circuit has already spoken on, and which would not resolve the factual dispute waiting for the jury. That is the opposite of materially advancing the litigation, and it is exactly what Section 1292(b) is designed to prevent.

## IV.    CONCLUSION

Because there are no substantial grounds for difference of opinion and interlocutory appeal would involve more than purely legal issues that would neither materially affect the outcome of litigation nor advance the ultimate termination of the litigation, the Court should deny Meta's Motion to Certify the Summary Judgment Order for Interlocutory Appeal.

Dated: July 1, 2026                           Respectfully submitted,

                                              **GOLDENBERG HELLER & ANTOGNOLI, P.C.**

                                              By: */s/ Kevin P. Green*
                                                      Kevin P. Green

                                              *Attorneys for Plaintiff Natalie Delgado*

---

[3] *Available at* https://cdn.ca9.uscourts.gov/datastore/judicial-council/publications/AnnualReport2025.pdf.