LATHAM & WATKINS LLP
SEAN M. BERKOWITZ (admitted *pro hac vice*)
GARY S. FEINERMAN (admitted *pro hac vice*)
KATHRYN K. GEORGE (admitted *pro hac vice*)
330 N. Wabash Ave., Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
sean.berkowitz@lw.com
gary.feinerman@lw.com
katie.george@lw.com

GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (admitted *pro hac vice*)
MICHAEL BRANDON (admitted *pro hac vice*)
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
lgoldman@gibsondunn.com
mbrandon@gibsondunn.com

CHRISTOPHER CHORBA, SBN 216692
DIANA FEINSTEIN, SBN 302626
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7396
cchorba@gibsondunn.com
dfeinstein@gibsondunn.com

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

NATALIE DELGADO, individually and on behalf of all others similarly situated,

Plaintiff,

v.

META PLATFORMS, INC.,

Defendant.

Case No. 3:23-cv-04181-SI

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL**

Hearing: July 31, 2026
Time: 10:00 a.m.
Location: Courtroom 1 - 17th Floor
Judge: Hon. Susan Illston

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Meta Presents A Pure Question Of Law ..... 2

B. There Is A Substantial Ground For Difference Of Opinion ..... 4

C. An Immediate Appeal May Materially Advance The Termination Of This Litigation ..... 7

III. CONCLUSION ..... 8

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674 (7th Cir. 2000) ........................................ 2

*McGoveran v. Amazon Web Servs., Inc.*, 2023 WL 2683553 (D. Del. Mar. 29, 2023) ........................................ 5, 6

*Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783 (N.D. Ill. 2022) ........................................ 5, 7

*Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681 (9th Cir. 2011) ........................................ 6, 7

*Rivera v. Google Inc.*, 238 F. Supp. 3d 1088 (N.D. Ill. 2017) ........................................ 5

*Rodriguez v. ByteDance, Inc.*, 2025 WL 672951 (N.D. Ill. Mar. 3, 2025) ........................................ 5, 6

*Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117 (9th Cir. 2024) ........................................ 1, 4

## STATUTES

740 ILCS 14/10 ........................................ 3, 6

28 U.S.C. § 1292(b) ........................................ 1, 2, 7, 8

## RULES

Appellate Rule 5(a)(3) ........................................ 8

## OTHER AUTHORITIES

Public Access Op., 2017 WL 10084298 (Ill. A.G. Aug. 14, 2017) ........................................ 5

## I. INTRODUCTION

Audio recordings are not "biometric" under BIPA, and thus are not "voiceprints" subject to BIPA, because they are not capable of identifying the speaker. District courts in Illinois and Delaware have held as much, and the Illinois Attorney General has concurred. Plaintiff uploaded her audio recordings to Meta's services, but Meta did not use its technical capabilities to transform or process those recordings into the kind of data that could possibly be capable of identifying her. On that undisputed record, this Court denied Meta's summary judgment motion.

Meta respectfully requests that this Court give the Ninth Circuit the opportunity to take up the purely legal question whether Plaintiff's audio recordings are "biometric" under BIPA simply because Meta has the technical capability—which it indisputably did not exercise—to transform them into a different kind of data that could possibly be capable of identifying her. If the Ninth Circuit takes up that question and rules in Meta's favor, this case will end, saving substantial judicial and party resources. And if the Ninth Circuit declines to take up that question, nothing will have been lost by this Court's having presented it with the chance to do so. Meta's Section 1292(b) motion should be granted.

## II. ARGUMENT

Plaintiff's opposition rests on the premise that Meta seeks review of a factual—not a legal—question. That premise is wrong. Meta's motion *assumes* that it has the technical capability to transform audio recordings uploaded by users into a new kind of data that, in conjunction with other information, could be used for identification purposes. The question Meta presents is whether it collects "biometric" data for purposes of BIPA simply because it has the technical capability—which it did not exercise—to convert Plaintiff's audio recordings into different data that could be used for identification purposes. That question does not require any factual analysis or review of the record, and it is purely legal.

Contrary to Plaintiff's submission, *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117 (9th Cir. 2024), does not answer that question, and other courts have resolved it differently than this Court did in the summary judgment order. Moreover, that question is precisely the kind for which interlocutory review is appropriate, given that the Ninth Circuit could reasonably disagree with

this Court's decision—an outcome that would entitle Meta to summary judgment. The Court should certify its summary judgment order for interlocutory review under 28 U.S.C. § 1292(b).

### A. Meta Presents A Pure Question Of Law

Lost in Plaintiff's opposition are the following undisputed facts. Users of Meta's Facebook and Messenger services upload content containing audio recordings. Dkt. 146 at 1. Meta receives and stores those audio recordings in standard, widely used formats. *Id.* at 1-2. It is not possible to identify a speaker simply by comparing those audio recordings. *Id.* at 4. Meta assumes for present purposes that it has the technical capability to transform those audio recordings into an entirely new kind of data, which Meta has called "Output Representations," that could potentially be combined with other information and used to identify a speaker under certain conditions. *Id.* at 2-3, 6. And Meta also assumes that "[P]laintiff has at least raised a disputed question of fact as to whether Meta has the capabilities to identify [P]laintiff using her uploaded [audio] recordings"—that is, by transforming those recordings into Output Representations linked to her identity and comparing them to other Output Representations to determine whether they match. Dkt. 167 at 10. But Meta indisputably has not created such Output Representations from Plaintiff's audio recordings. Dkt. 146 at 6, 10.

Based on these undisputed facts, the question of law Meta presents is whether a defendant collects "biometric identifiers" or "biometric information" under BIPA when users upload audio recordings that cannot *themselves* be used for identification purposes, simply because the defendant has "the in-house technical capabilities" to transform such recordings into data that could potentially be used for identification purposes. Dkt. 167 at 11. That question is one that the Ninth Circuit "could decide quickly and cleanly without having to study the record." *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000).

Plaintiff argues that "Meta seeks a do-over on the facts" and is presenting a question that "assumes its own factual premise" because "assuming the facts on the record means Meta collected *more* than a mere voice recording." Dkt. 179 at 2 (emphasis added). In so arguing, Plaintiff improperly collapses (i) the factual question whether Meta has the technical capability to transform audio recordings into data that could be used for identification with (ii) the legal question whether

that mere capability is enough for purposes of BIPA. Again, Meta assumes for present purposes that Plaintiff raised a genuine factual dispute regarding Meta's technical capabilities, and further assumes that the factual dispute is resolved in Plaintiff's favor. Dkt. 173 at 5. The legal question is whether a defendant collects "biometric" data, 740 ILCS 14/10, when a user uploads an audio recording and the defendant merely has the technical capability to transform that recording into something else entirely (but has not done so). That question does not turn on any factual dispute.

Plaintiff next argues that her audio recordings amount to "a digital representation of her voice signal" and that "the record details how Meta processes, transcodes, stores, and links th[at] voice data to other user data in its vast predictive infrastructure." Dkt. 179 at 5 & n.1. But Plaintiff does not dispute the basic fact that such processing (even assuming it occurred) does not result in the creation of "biometric" data that *itself* can be used to identify the speaker, nor does Plaintiff dispute that Meta must instead first transform that "voice" data into "Output Representations" (which it has not done) for identification to even be possible. Dkt. 163-3 at 3; Dkt. 173 at 3. This undoubtedly is why Plaintiff cannot bring herself to utter the term "Output Representations" in her opposition brief, glossing over the essential point that Meta has not created any Output Representations from her audio recordings.

The undisputed facts are that Plaintiff uploaded her audio recordings and that Meta has the technical capability to transform those audio recordings into data that could potentially be used to identify the speaker, but Meta has never done so. Dkt. 173 at 7-8. Nothing in Plaintiff's opposition disputes those critical facts, which leads back to the legal question whether that technical capability alone is enough to render audio recordings "biometric" data under BIPA.

Moreover, and again contrary to Plaintiff's submission, nothing in this Court's summary judgment order turned on the proposition that Meta has actually "processe[d], transcode[d], store[d], [or] link[ed] [Plaintiff's] voice data to other user data in its vast predictive infrastructure." Dkt. 179 at 5 n.1. Thus, even granting the factual premise that Meta took steps to process Plaintiff's audio recordings, the essential point is that Meta indisputably could not use Plaintiff's audio recordings (processed or otherwise) *themselves* to identify her. Dkt. 146 at 4. Plaintiff's submission that Meta processed audio recordings in certain ways tries, but fails, to distract from

the critical point—which she does not dispute—that Meta did not transform such recordings into Output Representations or any other kind of data that could, in turn, be used for identification purposes.

Indeed, this Court found that basic fact irrelevant as a matter of law because Meta has the technical capability to create such Output Representations. *See* Dkt. 167 at 10 (concluding that Plaintiff had "raised a disputed question of fact as to whether Meta has the technical capabilities to identify plaintiff using her uploaded voice recordings"). As this Court put it: "Largely through the work of Dr. Singh, plaintiff has shown there are disputed facts regarding whether Meta has collected plaintiff's voice recordings in a manner that is capable of identifying plaintiff due to the in-house technical capabilities Meta *itself* has developed and possesses." *Id.* at 11. That raises the purely legal question whether that technical capability alone is enough for BIPA purposes when users upload audio recordings that all agree cannot themselves be used to identify anyone. Plaintiff's contention that Meta seeks resolution of a factual dispute is wrong.

**B. There Is A Substantial Ground For Difference Of Opinion**

Plaintiff is also wrong to suggest that the Ninth Circuit's *Zellmer* decision answered the legal question Meta presents. *Zellmer* considered circumstances one step advanced from those at issue here. Specifically, in *Zellmer*, Meta had not just collected photographs—which, like audio recordings, cannot be used to identify individuals—but instead had created "face signatures," a new form of "abstract, numerical" data that are derived from photographs. 104 F.4th at 1120-21. Even then, the Ninth Circuit held that such derived data were not "biometric identifiers" or "biometric information" for BIPA purposes because they could not be used to "identify" any person, given they could not be linked to any person's identity. *Id.* at 1123, 1126; *see also* Dkt. 173 at 9-10.

Plaintiff reads *Zellmer* to hold that audio recordings themselves fall within BIPA's coverage because Meta has the technical capability to transform them into a new kind of data that could be linked to the speaker and thus potentially used for identification. Dkt. 179 at 9-10. That convoluted reading is incorrect: Unlike in *Zellmer*, the undisputed record here shows that Meta has not derived any potentially identifying data from Plaintiff's raw user input (audio recordings

in this case, akin to the photographs in *Zellmer*), which makes the circumstances here even further removed from what qualifies as "biometric identifiers" or "biometric information" under BIPA. Plaintiff's repeated invocation of *Zellmer* to argue that audio recordings are covered by BIPA if the defendant has certain technological capabilities underscores that the question Meta presents here is purely legal, and confirms the need for interlocutory review so the Ninth Circuit can provide definitive guidance about the precise inquiry for determining what qualifies as "biometric identifiers" and "biometric information" under BIPA.

Aside from incorrectly arguing that *Zellmer* "already settled" the question of statutory interpretation Meta presents, Dkt. 179 at 7, Plaintiff is also wrong to contend that "Meta's ground for a difference of opinion boils down to *its own argument*," *id.* at 11. As Meta set forth in the chart at page 11 of its motion, there are two requirements for data to be covered by BIPA: First, the defendant must do something to transform an underlying medium, like an audio recording or a video file, into data capable of identifying; and second, the defendant must at least have the ability to connect or link such identifying data to a particular person. Dkt. 173 at 11. That basic understanding of BIPA stems from *Rodriguez v. ByteDance, Inc.*, 2025 WL 672951 (N.D. Ill. Mar. 3, 2025), and *McGoveran v. Amazon Web Servs., Inc.*, 2023 WL 2683553 (D. Del. Mar. 29, 2023), among other authorities. Dkt. 173 at 6-9; *see Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1096 (N.D. Ill. 2017) ("record[ing] [of] a person's voice" was the "underlying medium" and not itself a "voiceprint"); *Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 817 (N.D. Ill. 2022); Public Access Op., 2017 WL 10084298, at *3 (Ill. A.G. Aug. 14, 2017) ("someone who records a person's voice without" applying technology to that recording to "generat[e]" different data that could then be used to identify the speaker does not collect "biometric" data and thus is not subject to BIPA).

This Court's summary judgment order necessarily rejects that understanding of BIPA by deeming an underlying medium that cannot itself identify a person to be a "biometric identifier" or "biometric information" so long as the defendant has the technical capacity to transform that medium into a different kind of data that can identify, even if the defendant has not done so. Dkt. 167 at 11. The clear tension between this Court's order, on the one hand, and *Rodriguez* and *McGoveran*, on the other, is reason alone to certify the order for interlocutory appeal. *See Reese*

*v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 687-88 (9th Cir. 2011) (certification appropriate where "fair-minded jurists might reach contradictory conclusions").

Plaintiff contends that the technical capability to transform an underlying medium into identifying data is all that matters even under *McGoveran* and *Rodriguez*. That is wrong. *McGoveran* stated plainly that "voice audio alone is neither a biometric identifier (a voiceprint) nor biometric information (information derived from a voiceprint)." 2023 WL 2683553, at *10. That was so even though Amazon indisputably had the technical capability to convert voice audio into identifying information, just as we assume Meta has here. *See id.* at *4, *7. The same is true of *Rodriguez*. *See* 2025 WL 672951, at *17-18 (alleging that ByteDance had "speaker identification" technology but concluding that "videos are not themselves biometric identifiers").

In an effort to square her position with those cases, Plaintiff asserts that data can be "biometric" when collected but not "biometric" when distributed—such that a defendant with the technical capability to transform ordinary audio files into identifying data *collects* biometric data for Section 15(b) purposes when it collects such files, but it does not necessarily *distribute* biometric data for Section 15(d) purposes when it distributes those exact same files to a third party. Dkt. 179 at 8. That purported distinction is contrary to BIPA's text, which defines "biometric" the same across all of BIPA's substantive provisions. *See* 740 ILCS 14/10. Nor did *McGoveran* or *Rodriguez* suggest, let alone rely on, that supposed distinction.

More to the point, the distinction conjured by Plaintiff makes no sense. Data is "biometric" for BIPA purposes or it is not; it cannot be both at the same time. Plaintiff's contrary view underscores the fundamental error of putting dispositive weight on a defendant's technological capabilities alone. Neither *McGoveran* nor *Rodriguez* examined whether the third party receiving the non-biometric, underlying medium data from Amazon or ByteDance had the technical capacity to transform that data into a new kind of data that is capable of identifying an individual. Instead, those courts reasoned simply that underlying medium data is not "biometric." *See supra* at 5; Dkt. 173 at 6-9.[1]

---

[1] Plaintiff argues that *Patterson* "found the plaintiff plausibly alleged the collection of a voiceprint via allegations that it was captured when a student would 'speak into the microphone' on a laptop

Plaintiff is right about one thing: *McGoveran* and *Rodriguez* "do not … conflict with *Zellmer*'s statutory interpretation of 'biometric identifier' when examined carefully"—but only because *Zellmer* confirms that to implicate BIPA, the defendant must not only transform underlying medium data into data capable of identifying a person, but also must have the information enabling the defendant to connect or link such data to a specific person. *See* Dkt. 173 at 11. The three cases thus adopt a coherent framework for assessing whether data qualifies as "biometric": it must (a) be the kind of data capable of identifying a person *and* (b) the defendant must have the information necessary to connect that data to a specific person. This Court's summary judgment order rejects that governing framework by holding that Plaintiff's audio recordings—indisputably not yet transformed into Output Representations or any other kind of data capable of identifying a person—can qualify as "biometric" simply because Meta has the technical capability to transform those recordings in that manner. Dkt. 167 at 11.

At the very least, fair-minded jurists could debate whether that conclusion is correct, meaning that there are substantial grounds for a difference of opinion for Section 1292(b) purposes. *See Reese*, 643 F.3d at 688. What is more, Plaintiff has not identified a single case holding what this Court held in its summary judgment order: that underlying medium data qualifies as "biometric" merely because a defendant has the technical capability to transform that data into a new kind of data that could potentially be used for identification. This confirms that this Court's decision answers a "novel" legal question worthy of certification. *Id.*

### C. An Immediate Appeal May Materially Advance The Termination Of This Litigation

There can be little doubt that an answer from the Ninth Circuit in Meta's favor on the legal question presented would materially advance the termination of this litigation by entitling Meta to summary judgment. Plaintiff's contrary argument hinges on the mistaken premise that Meta

---

computer and 'it records the student speaking.'" Dkt. 179 at 9 n.2 (citation omitted). That characterization of *Patterson* is incorrect. *Patterson* expressly distinguished "voiceprints" under BIPA from the "underlying medium," explaining that "a biometric identifier is not the underlying medium itself"—like a video—"or a way of taking measurements, but instead is a set of measurements of a specified physical component (eye, finger, voice, hand, face) used to identify a person." 593 F. Supp. 3d at 817. *Patterson* is therefore consistent with other cases recognizing that data itself must be capable of identifying a person to qualify as "biometric."

presents a factual, not a legal, question. Dkt. 179 at 12-13. Contrary to Plaintiff's framing, Meta does not ask the Ninth Circuit to "change its interpretation of 'biometric identifier' to include a blanket exclusion for something called 'mere voice recordings[.]'" *Id.* at 12. Instead, Meta intends to ask the Ninth Circuit to adopt the framework consistently articulated in other cases, and to conclude that a defendant that collects audio recordings does not collect "biometric" data simply because it has the technical capability to transform those recordings into an entirely new type of data that can, in conjunction with other identifying data, be used to identify a particular person.

If the Ninth Circuit agrees with Meta on the answer to that question—as *Rodriguez* and *McGoveran* have—then Meta is entitled to summary judgment. Plaintiff does not argue otherwise. And Plaintiff's attempt to distinguish repeated certifications for interlocutory appeals in other BIPA cases falls flat, given Plaintiff's incorrect contention that this case would require the Ninth Circuit to undergo a "deep dive into the factual record." Dkt. 179 at 13.

## III. CONCLUSION

For these reasons, this Court should certify its May 20, 2026 summary judgment order (Dkt. 167) for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and Appellate Rule 5(a)(3).

DATED: July 8, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By <u>*/s/ Gary S. Feinerman*</u>
Gary S. Feinerman

GIBSON, DUNN & CRUTCHER LLP

By <u>*/s/ Lauren R. Goldman*</u>
Lauren R. Goldman

*Attorneys for Defendant Meta Platforms, Inc.*

## CIVIL L.R. 5-1(i)(3) ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3), I, Gary Feinerman, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

DATED: July 8, 2026

Respectfully submitted,

By: /s/ *Gary S. Feinerman*
Gary S. Feinerman