August 19, 2026

The Honorable Susan Illston
District Judge of the Northern District of California

Re: *Delgado v. Meta Platforms, Inc., Case No. 3:23-cv-04181-SI*

Dear Judge Illston,

**META'S POSITION:** Plaintiff is improperly claiming privilege to avoid answering important discovery requests. Meta respectfully asks this Court to compel Plaintiff to withdraw her objections and substantively respond to the requests described herein. The parties exchanged meet-and-confer email correspondence throughout July and August 2026, and held a meet-and-confer videoconference on July 29, 2026, but were unable to reach accord.

**Date Plaintiff First Received a Draft of the Complaint (Interrogatory No. 12).** This request seeks non-privileged information regarding the *date*—not the *substance*—of when Plaintiff was first provided a draft of the complaint in this action. Ex. A (Plaintiff's R&Os to Meta's Second Set of Interrogatories), at No. 12. Plaintiff has only ever sent ten audio messages via Messenger—seven of which she created and sent just three days before she filed suit. Her technical expert, Dr. Rita Singh, relied on an analysis of those very messages to support her opinions on key liability issues at summary judgment. Plaintiff was undoubtedly aware when she sent those messages that she was about to become a named plaintiff in this litigation and thus that she was thereby providing Meta with her "voiceprint" under the legal theory she asserts in this case. As a result, obtaining the date she received a draft of the complaint is highly relevant to Meta's defenses in this matter and directly relevant to numerous class certification issues. *See Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 133–35 (N.D. Tex. 2020) (denying class certification where named plaintiff took actions prior to filing the complaint to bolster claims in a lawsuit, which would "raise[ ] a significant danger that th[e] litigation w[ould] focus on issues and defenses unique" to him) (internal citation omitted). Indeed, Plaintiff concedes as much given she has dropped her relevance objection. Nevertheless, Plaintiff has refused to respond to this request, asserting attorney-client privilege and/or work product.

Plaintiff is wrong to argue that the *date* she first received a draft of the complaint is privileged. Attorney-client privilege "does not [] extend to facts that would not reveal legal strategy or to information such as the dates and duration of meetings with attorneys." *Rodriguez v. Seabreeze Jetlev LLC*, 620 F. Supp. 3d 1009, 1021 (N.D. Cal. 2022). Because the date of communications regarding certain subject matters is exactly the type of information required to be disclosed about any documents or communications included on a party's privilege log, disclosing that information here is not privileged. *See Waymo LLC v. Uber Techs., Inc.*, 319 F.R.D. 284, 287 (N.D. Cal. 2017) (requiring that privilege logs identify "the date of the communication" and "the subject matter of the communication"). Indeed, in order to properly log the communication attaching the draft complaint, Plaintiff would have to disclose (1) the date the communication was sent; (2) a description of the privilege (*i.e.,* disclosing it was a communication about the lawsuit); and (3) the title of the attachment, which would disclose it was the draft complaint. This is exactly the type of non-privileged information Meta seeks here. *See id*.

Contrary to Plaintiff's assertion, district courts in the Ninth Circuit routinely require parties to log

communications with counsel pre-dating the filing of a complaint. *See*, *e.g., Guillory v. EHM Prods.*, 2023 U.S. Dist. LEXIS 129685, *11 (C.D. Cal. July 25, 2023); *Ritchie v. Sempra Energy*, 2014 WL 12638874, *2–3 (S.D. Cal. Aug. 4, 2014). In addition, what other courts have held on logging obligations is irrelevant given that the parties here negotiated a privilege protocol that carves out logging obligations solely for *post*-complaint communications with counsel: "[c]ommunications or work product involving or prepared at the direction of counsel that post-date the filing of the complaint need not be placed on a privilege log." Stipulated Privilege Log Protocol at § II.B. Moreover, because Meta's discovery request seeks only the date when she was first provided a draft of the complaint, Plaintiff cannot credibly claim undue burden to circumvent her obligations. *See, e.g.*, *Mon Cheri Bridals, LLC v. Cloudflare, Inc.*, 2021 WL 1222492, at *3 (N.D. Cal. Apr. 1, 2021); *Vasudevan Software, Inc. v. Int'l Bus. Machs. Corp.*, 2010 WL 3629830, at *5 (N.D. Cal. Sept. 14, 2010). And Meta is not even asking Plaintiff to create a log, but rather to simply state the date, which Plaintiff refuses to do.

Finally, Plaintiff herself has taken inconsistent positions on whether dates regarding disclosed subject matters are privileged, as demonstrated through her own response to Meta's Interrogatory No. 8. *See* Ex. A, at No. 8 (disclosing "January 6, 2026" as the date Plaintiff executed a BIPA release consenting that Dr. Singh run experiments on Plaintiff's Facebook and Messenger audio and video recordings ("Release"), which Plaintiff asserts is a privileged conversation). Plaintiff does not credibly explain how or why disclosing the date in connection with Interrogatory No. 12 is privileged while the date in response to Interrogatory No. 8 is not.

**BIPA Release (Interrogatory No. 8).** Meta's Interrogatory No. 8 seeks, in part, highly relevant and non-privileged information regarding the Release that Plaintiff signed to purportedly consent to Dr. Singh running experiments on Plaintiff's Facebook and Messenger audio and video recordings in connection with her rebuttal expert report. In particular, Interrogatory No. 8 asks Plaintiff to state whether she executed or provided the Release prior to Dr. Singh's January 16, 2026 rebuttal report and, if so, specifically requests: (a) the date of execution; (b) the identity of the person who presented the Release to Plaintiff; (c) the terms of the Release; and (d) all related documents and communications. Ex. A, at No. 8. In her interrogatory response, Plaintiff confirmed that she executed a Release on January 6, 2026 and communicated with her counsel about that Release; however, she maintains her relevance and privilege objections over the terms of the Release and all related documents and communications. *Id.* Plaintiff should be compelled to respond in full to Interrogatory No. 8 because it seeks information relevant to the allegations underlying her claims and is not privileged.

***Relevance.*** As an initial matter, the Release should have already been disclosed and produced under Rule 26(a)(2)(B) as among the materials Dr. Singh relied upon or considered in connection with her rebuttal report because "matters considered by a testifying expert in formulating [her] testimony [are] automatically discoverable," "including attorney opinion." *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, 257 F.R.D. 607, 612, 615 (E.D. Cal. 2009); *see also Republic of Ecuador v. Mackay*, 742 F.3d 860, 870 (9th Cir. 2014) (with respect to expert discovery, "materials containing factual ingredients are discoverable" (internal quotation omitted)). Plaintiff argues that Dr. Singh did not consider or rely upon the Release in forming, summarizing, or supporting her expert opinions—and was therefore not required to produce the Release under Rule 26(a)(2)(B). But Dr. Singh relied upon the *existence* of the Release when conducting the tests her opinions are based upon—tests that, under Plaintiff's theory of the case,

would violate BIPA absent the Release. Any communication Dr. Singh so much as "reflected upon" must be disclosed, even if the documents did not ultimately affect her analysis. *United States v. Sierra Pac. Indus.*, 2011 WL 2119078, at *11 (E.D. Cal. May 26, 2011) (holding that all documents "generated, s[een], read, reviewed, and/or reflected upon" by an expert must be disclosed, "regardless of whether the documents ultimately affected their analysis"); *see also Yuba*, 257 F.R.D. at 614 ("documents considered by an expert are not only those documents providing the factual basis for h[er] opinion," but also those "germane to an expert's testimony"). In addition, because Plaintiff's claims turn, in part, on the adequacy of consent under BIPA, Meta is entitled to discovery into what she contends would constitute valid consent. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.").

***Privilege.*** Plaintiff's assertion that the Release is protected by attorney-client privilege and/or work product fails. *First*, the Release is a statutory release containing only facts—Plaintiff's release for Dr. Singh to use her recordings—and is not a request for, or a response to a request for, legal advice. The attorney-client privilege is narrow, "protect[ing] only a communication between an attorney and a client, not the facts that are communicated." *Murdoch v. Castro*, 609 F.3d 983, 995 (9th Cir. 2010). *Second*, the Release is not afforded work-product protection because it does not convey the "theories or mental impressions of counsel," and expert disclosure obligations are "interpreted broadly to encompass *any material considered by the expert, from whatever source*, that contains factual ingredients." *Mackay*, 742 F.3d at 869 (internal citations omitted) (emphasis added). Regardless, Plaintiff has already forfeited her right to object on the basis of privilege given that "work product and privilege are waived as to information disclosed to an expert witness." *Fajardo v. Pierce Cnty.*, 2009 WL 1765756, at *3 (W.D. Wash. June 19, 2009).

**PLAINTIFF'S POSITION:** "[V]oluntarily disclosing privileged documents to third parties will generally destroy the privilege. . . . [C]ourts have no role in encouraging or forcing the disclosure—they merely recognize the waiver after it has occurred." *United States v. Sanmina Corp. & Subs.*, 968 F.3d 1107, 1117 (9th Cir. 2020); *see also Apple Inc. v. Samsung Elecs. Co.*, 2015 LX 69711, *73 (N.D. Cal. June 19, 2015) (waiver when party "characterized the nature and intent of its communications . . ., discussing what, factually, was communicated and opining about the intent of the authors at the time the communications occurred"). Meta's requests do not seek neutral facts. They cross the line by seeking content of specific attorney-client communications.

**Interrogatory No. 8** asks Plaintiff to describe in detail the substance of a BIPA release between Plaintiff and counsel and all related documents and communications.

***Relevance.*** Rule 26(a)(2)(B) does not require disclosure of the BIPA release. Meta's interpretation of Rule 26 would erase the protections of Rule 26(b)(4)(C), as all communications or drafts would become "material considered." Indeed, Dr. Traynor did not disclose the release Plaintiff provided to Meta's counsel prior to his work as material considered for his report—because neither expert opined about a BIPA release. Nor would its presence, absence, or content constitute a "factual ingredient" of an opinion. *Republic of Ecuador v. Mackay*, 742 F.3d 860, 869 (9th Cir. 2014).

But the Court need not even address where the "materials considered" line falls because here, Dr. Singh did not receive the BIPA release; rather, Delgado's counsel obtained it. Authorized agents may receive BIPA notices and consents (to the extent BIPA applies to people rather than "private

entities”). *See* Dkt. 157 at 20 n.8. But whether Meta, a private entity with no agency relationship to Plaintiff, complied with BIPA is a question of law and fact turning on what *Meta* did. Counsel’s contemporaneous view of what a sufficient release should contain, reflected in a document counsel drafted for a different purpose, sheds no light on whether Meta’s disclosures to its customers were adequate under the law. The release is thus irrelevant to the claims and defenses at issue; Meta’s discovery request functions only to probe *counsel’s* mental impressions about BIPA—precisely what work product exists to protect. And even if the release revealed Plaintiff’s beliefs on the appropriateness of a BIPA release (it would not), her beliefs are irrelevant to whether Meta complied with the law. Meta itself recognized as much when it stipulated that Delgado’s release for Dr. Traynor’s testing “may not be used by either party to support any claim or defense.”

***Privilege.*** Describing in detail the substance of a disclosure and consent between Plaintiff and counsel, and describing all related documents and communications, reveals content of attorney-client communications about Plaintiff’s rights and counsel’s thoughts about work done in the case. These items and communications were made “for the purpose of facilitating the rendition of professional legal services” for this litigation, *In re Grand Jury*, 23 F.4th 1088, 1092 (9th Cir. 2022), and are thus protected by the attorney-client privilege. They are also subject to work product protection. The disclosures were prepared by counsel in the course of this litigation to advise Plaintiff and for purposes of this litigation—that is, they were “prepared because of ongoing litigation and the prospect of future litigation.” *ACLU of N. Cal. v. DOJ*, 2015 U.S. Dist. LEXIS 79340, *18 (N.D. Cal. June 17, 2015). Further, the disclosures and communications between counsel and client reveal counsel’s mental impressions and theories related to this action, thus constituting opinion work product protected from disclosure by Rule 26(b)(3)(B). They also reveal information about counsel’s “‘tactical and strategic’ thoughts about actual or anticipated litigation.” *Carlson v. U.S. Postal Service*, 2017 U.S. Dist. LEXIS 132599, *64 (N.D. Cal. Aug. 18, 2017) (citation omitted). Finally, Plaintiff has not forfeited work product and privilege as to records disclosed where no such records were provided to the expert.

Meta says this is a “statutory release,” but BIPA does not prescribe a form release and this was not between private entity and customer. Rather, the release involves Delgado’s rights, discussed between client and counsel. *See United States v. Torf (In re Grand Jury Subpoena)*, 357 F.3d 900, 908, 910 (9th Cir. 2003) (rejecting argument that documents would have been created in substantially similar form to comply with an Information Request and Consent Order and finding work product protection applied because, “taking into account the facts surrounding their creation, their litigation purpose so permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole”); *City & Cnty. of Honolulu v. U.S. EPA*, 2009 U.S. Dist. LEXIS 25621, *22 (D. Haw. Mar. 27, 2009) (“[I]t is immaterial whether or when the litigation actually begins.”). Plaintiff properly disclosed the date she signed the document. Describing the terms and communications in detail invades the privilege.

**Interrogatory No. 12** requests the date counsel first provided Plaintiff with a draft of the Complaint. Plaintiff disputes Meta’s claims about Plaintiff’s conduct set forth above. As will be shown in Plaintiff’s forthcoming class certification motion, Plaintiff’s use of Meta’s products in August 2023 did not “bolster” her claims—she had already used the relevant voice features during the Class Period several times prior to 2023; her counsel would not even meet Dr. Singh until 2025 (who only used the data for an analysis in her *rebuttal* report in January 2026); and BIPA liability and damages do not turn on Plaintiff’s knowledge, number of uses, or a failure to stop using voice

features. *See, e.g.*, *Doe v. Apple Inc.*, 2026 U.S. Dist. LEXIS 125406, *16-18, 33-34 (S.D. Ill. June 5, 2026) (finding no unique defenses regarding plaintiffs who continued using photo app after BIPA lawsuit filed and further explaining amount of damages "depends on the defendant's state of mind" and [w]hether a putative class member knows how the technology works is irrelevant"). Thus, Plaintiff questions the relevance of the date a draft complaint was first provided by counsel.

But the question is problematic for other reasons. Meta contends that it seeks the date and "not the substance" of the communication between attorney and client. That is incorrect. Answering necessarily discloses the substance of a specific communication. Tellingly, Meta would not accept as a compromise Plaintiff's offer to provide the dates of all pre-filing communications between Delgado and counsel, presumably because that would not reveal *what those communications involved*. This is precisely why this question crosses the line from date to substance and invades the attorney-client privilege. Thus, unlike in *Waymo*, Meta seeks more than the disclosure of the "subject matter" of a communication. 319 F.R.D. at 287. This is the difference between "I communicated with the client on DATE" and "I sent the client a draft of X on DATE and a draft of Y on DATE." As discussed above, the latter also intrudes on counsel's work-product, as it reveals counsel's timing and tactical and strategic thoughts about actual or anticipated litigation.[1]

Meta's cases and privilege log discussion also miss the mark. The interrogatory does not require a logged entry on its face. Plaintiff complied with Rule 26(b)(5)(A) by expressly asserting privilege. And Meta does not need more information to assess if privilege has attached. It clearly has. *See also Mon Cheri*, 2021 LX 96562 at *10, 11 (N.D. Cal. Apr. 1, 2021) ("Courts in this circuit have held that 'correspondence generated prior to the filing of [an] action, but in direct connection with preparation for the litigation need not be logged,'" and communications with counsel for lawsuit "are so overwhelmingly likely to be privileged and work product that requiring Plaintiffs to log them all is a pointless waste of time."); *Gaby's Bags, LLC v. Mercari, Inc.*, 2020 U.S. Dist. LEXIS 215041, *10 (N.D. Cal. Nov. 17, 2020) (same and "[b]ecause the communications . . . did not have to be logged at all, the log's failure to satisfy the standards of Rule 26(b)(5)(A) or paragraph 24 of Judge Alsup's Standing Supplemental Order does not support a finding of waiver").

Plaintiff's position is not inconsistent with her answer to Interrogatory 8, which provided dates a party executed a document and identified counsel as party to a communication. That general information can be used to assess privilege. And Plaintiff agrees that dates of communications, without disclosing content, are not privileged—which is why she offered the compromise Meta rejected. But none of that discloses dates of *specific* communications tied to identifiable content, which is what Meta seeks here. Under Meta's theory, no privilege would likewise attach to the dates Meta and its counsel first exchanged, *inter alia*, drafts of Meta's answer, amended answer, motions, discovery responses, or documents in response to document requests. When Plaintiff twice requested Meta to confirm as much, Meta refused, instead branding the requests as a "long email asking irrelevant questions." Meta's refusal to answer highlights that Meta's Interrogatories do not seek neutral dates. Disclosure reveals confidential attorney-client communications and counsel's litigation timing and strategy, invading both privilege and work-product protection.

---

[1] Plaintiff also objected because the interrogatory defined "Plaintiff" to include Delgado's attorneys, so it also sought the dates of attorney-attorney communications, presumably, the date when Plaintiff's attorneys internally first exchanged a draft of the complaint. Meta indicated on August 18, 2026 that it did not mean to include that.

Respectfully submitted,

By: /s/ Gary S. Feinerman
Gary S. Feinerman

**LATHAM & WATKINS LLP**
SEAN M. BERKOWITZ (admitted *pro hac vice*)
GARY S. FEINERMAN (admitted *pro hac vice*)
KATHRYN K. GEORGE (admitted *pro hac vice*)
330 N. Wabash Ave., Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
sean.berkowitz@lw.com
gary.feinerman@lw.com
katie.george@lw.com

By: /s/ Diana M. Feinstein
Diana M. Feinstein

**GIBSON, DUNN & CRUTCHER LLP**
CHRISTOPHER CHORBA, 216692
DIANA FEINSTEIN, 302626
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7396
Facsimile: (213) 229-6396
cchorba@gibsondunn.com
dfeinstein@gibsondunn.com

LAUREN R. GOLDMAN (admitted *pro hac vice*)
MICHAEL BRANDON (admitted *pro hac vice*)
200 Park Avenue, New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
lgoldman@gibsondunn.com
mbrandon@gibsondunn.com

AMANDA STERLING (admitted *pro hac vice*)
1700 M Street, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500

By: /s/ Kevin P. Green
Kevin P. Green

**GOLDENBERG HELLER & ANTOGNOLI, P.C.**
THOMAS P. ROSENFELD (*admitted pro hac vice)*
KEVIN P. GREEN (*admitted pro hac vice*)
THOMAS C. HORSCROFT (*admitted pro hac vice*)
DANIEL LEVY (admitted pro hac vice)
2227 South State Route 157
Edwardsville, IL 62025
Telephone: (618) 656-5150
Facsimile: (618) 656-6230
tom@ghalaw.com
kevin@ghalaw.com
thorscroftAghalaw.com
daniel@ghalaw.com

**ARIAS SANGUINETTI WANG & TEAM LLP**
MIKE M. ARIAS, 115385
ELISE ROCHELLE SANGUINETTI, 191389
ARNOLD C. WANG, 204431
CRAIG SHUNJI MOMITA, 163347
MICHAEL ANTHONY JENKINS, 171958
6701 Center Drive West
Suite 1400
Los Angeles, CA 90045
Telephone: (310) 844-9696
Facsimile: (310) 861-0168
mike@aswtlawyers.com
elise@aswtlawyers.com
arnold@aswtlawyers.com
craig@aswtlawyers.com
anthony@aswtlawyers.com

*Attorneys for Plaintiff Natalie Delgado*

Facsimile: (202) 467-0539
asterling@gibsondunn.com

*Attorneys for Meta Platforms, Inc.*

**ATTESTATION**

I, Gary S. Feinerman, am the ECF User whose identification and password are being used to file the foregoing Joint Letter Brief. Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that all other signatories have concurred in the filing of this document.

Dated: August 19, 2026

LATHAM & WATKINS LLP

By: */s/ Gary S. Feinerman*
Gary S. Feinerman

*Attorney for Meta Platforms, Inc.*

Cc: Counsel of record via CM/ECF